UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE PACKAGED ICE ANTITRUST LITIGATION | Case Number: 08-MD-01952 Honorable Paul D. Borman |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER ACTIONS | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT JURY TRIAL DEMANDED |

The Direct Purchaser Plaintiffs bring this action under the federal antitrust laws for damages and injunctive relief and allege as follows:

NATURE OF THE ACTION

1. This case involves a contract, combination or conspiracy among the three largest companies in the United States that manufacture and distribute Packaged Ice -- and which have a combined market share of nearly 70% -- not to compete with each other in violation of the federal antitrust laws. "Packaged Ice" refers to ice that is sold by the defendants packaged in bags and sold as ice in blocks. The purpose and effect of this conspiracy has been to fix, raise, maintain or stabilize prices paid by direct purchasers of Packaged Ice from the Defendants, the Plaintiffs and the Direct Purchaser Class members herein. The existence of the unlawful agreements and conspiracy is evidenced, *inter alia,* by admissions made by Defendants' officers and employees who directly participated in or witnessed acts in furtherance of the conspiracy, by a United States Department of Justice Criminal Information and guilty plea, as well as by the structure of the market and supporting economic data. As alleged below, Defendants conspired and agreed to not compete in each others' respective geographic territories, thereby allocating customers among them, to reduce or eliminate price competition in their respective territories

and throughout the United States. During the Class period defined below, the conspiracy was effective in fixing, raising, maintaining or stabilizing prices for Packaged Ice.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

3.      Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391 (b), (c) and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

4.      The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on the interstate commerce of the United States.

## PLAINTIFFS

5.      Plaintiff Alvin's Enterprises, Inc. d/b/a/ Party King is located in Macomb County, Michigan. Plaintiff Suzie's Investments, Inc. d/b/a Checker Drugs and Food is located in Detroit, Michigan. During the Class Period these Plaintiffs purchased Packaged Ice directly from the Arctic Glacier Defendants.

6.      Plaintiffs Arkansas Garden Center West, LLC and Arkansas Garden Center North, LLC are businesses under common ownership in Little Rock, Arkansas, with their addresses at 15603 Cantrell Road, Little Rock, Arkansas and 9511 Highway 107, Sherwood,

Arkansas, respectively. During the Class Period these Plaintiffs purchased Packaged Ice directly from the Reddy Ice Defendants.

7.      Plaintiff Chi-Mar Enterprises, Inc. owns and operates a gasoline station at 13190 SW 8th Street, Miami, Florida. During the Class Period it purchased Packaged Ice directly from the Reddy Ice Defendants.

8.      Plaintiff Kingsway Enterprises owns and operates 18 convenience stores in North Carolina. Its principal address is 901 North Marietta Street, Gastonia, North Carolina. During the Class Period Kingsway purchased Packaged Ice directly from the Reddy Ice Defendants.

9.      Plaintiff Polly's Food Service, Inc., is a family owned grocery store chain in Michigan, with its principal address at 1821 Spring Arbor Road, Jackson, Michigan. In 2007, it acquired another chain of family grocery stores, Plaintiff Kenco, Inc., which now has its principal address at 1821 Spring Arbor Road, Jackson, Michigan. During the Class Period both Polly's Food and Kenco purchased Packaged Ice directly from the Home City Defendant.

10.     Plaintiff Thomas Beverages Co., Inc. d/b/a Thomas Liquors is a wine, beer and spirits retail shop located at 1941 Grand Avenue, Saint Paul, Minnesota. During the Class Period it purchased Packaged Ice directly from the Arctic Glacier Defendants.

DEFENDANTS

11.     The "Reddy Ice" Defendants are related companies consisting of: Defendant Reddy Ice Holdings, Inc., a Delaware corporation with its principal place of business located at 8750 North Central Expressway, Suite 1800, Dallas, Texas 75231; and Defendant Reddy Ice Corporation, a wholly-owned subsidiary of Reddy Ice Holdings, a Delaware corporation with its principal place of business at 8750 North Central Expressway, Suite 1800, Dallas, Texas 75231. Reddy Ice is in the business of manufacturing and distributing Packaged Ice in the United States.

12. The "Arctic Glacier" Defendants are related companies consisting of: Defendant Arctic Glacier Income Fund ("Arctic Fund"), a mutual fund trust organized under the laws of Alberta, Canada, with its principal place of business located at 625 Henry Avenue, Winnipeg, Manitoba, Canada; Defendant Arctic Glacier, Inc., a wholly-owned subsidiary of Arctic Fund, organized under the laws of Alberta, Canada, with its principal place of business located at 625 Henry Avenue, Winnipeg, Manitoba, Canada; and Defendant Arctic Glacier International Inc., a wholly-owned subsidiary of Arctic Glacier, Inc. that serves as its operating and holding subsidiary in the United States, and which is a Delaware corporation with its principal place of business located at 1654 Marthaler Lane, West St. Paul, Minnesota. Arctic Glacier is in the business of manufacturing and distributing Packaged Ice in the United States.

13. Defendant The Home City Ice Company ("Home City") is a privately-held Ohio corporation located at 6045 Bridgetown Road, Cincinnati, Ohio. Home City is in the business of manufacturing and distributing Packaged Ice in the United States.

CLASS ACTION ALLEGATIONS

14. Plaintiffs bring this action on behalf of themselves and, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), as the representatives of a Class defined as follows:

> All purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates at any time during the period from January 1, 2001 to March 6, 2008.

15. Members of the Class are so numerous and geographically dispersed across the United States that joinder is impracticable. While the exact number of Class members is unknown to Plaintiffs, it is believed to be in the tens of thousands. Furthermore, the Class is readily identifiable from information and records in possession of the Defendants.

16. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class were damaged by the same wrongful conduct by the Defendants, *i.e.*, they have paid artificially inflated prices for Packaged Ice as a result of Defendants' anticompetitive and unlawful conduct.

17. Plaintiffs will fairly and adequately protect and represent the interests of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class.

18. Plaintiffs are represented by counsel experienced and competent in the prosecution of class action antitrust litigation.

19. Questions of law and fact common to members of the Class predominate over questions, if any, that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in Defendants' anticompetitive and unlawful conduct.

20. Questions of law and fact common to the Class include, but are not limited to:

   a. Whether the Defendants contracted, combined, or conspired to allocate territories and customers to fix, raise, maintain, or stabilize Packaged Ice prices;

   b. The existence and duration of the contract, combination, or conspiracy alleged herein;

   c. Whether the contract, combination, or conspiracy caused Packaged Ice prices to be higher than they would have been in the absence of Defendants' conduct;

   d. Whether Defendants' conduct caused injury to the business or property of Plaintiffs and members of the Class;

      e.      Whether Defendants' conduct violates Section 1 of the Sherman Antitrust Act; and

      f.      The appropriate measure of the amount of damages suffered by the Class.

21.      A class is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all Class members is impractical. The damages suffered by the individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and the court system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale, and comprehensive supervision in a single court.

## STATEMENT OF FACTS

### A.    Anti-Competitive Conduct

22.      During the class period, Defendants, who in a competitive market would be horizontal competitors, have engaged in a conspiracy to allocate territories and customers to raise, fix, maintain, or stabilize Packaged Ice prices. As a result of their unlawful conduct, the Defendants do not compete with one another in any region of the United States, but enjoy territories and customers insulated from competition from the other Defendants.

23.      Mr. McNulty, a former vice president of Party Time Ice who became a salesman for Arctic Glacier after it acquired Party Time Ice in 2004, has stated that the conspiracy to

allocate territories and/or customers in the United States involved Arctic Glacier, Reddy Ice, Home City, and smaller Packaged Ice manufacturers such as Party Time Ice.

24. Both Charles Knowlton, the owner of Party Time Ice, and his son, Charles Knowlton, admitted that Home City and Party Time Ice had an agreement to allocate customers and territories, and not to compete with respect to those customers.

25. In or about 2004, after Party Time Ice had been acquired by Arctic Glacier, Keith Corbin, Arctic Glacier's Vice President of Sales, admitted that Arctic Glacier did not and would not compete with Home City for the business of a major customer. Mr. Corbin stated that Arctic Glacier and Home City would not be competing with each other. Mr. Corbin explained that Arctic Glacier had agreed with both Home City and Reddy Ice to geographically divide the United States market for the sale and delivery of Packaged Ice, in order to keep prices high in their respective territories.

26. Representatives of Arctic Glacier and Home City met in Cincinnati as part of the monitoring of the ongoing conspiracy to address specific customer allocations and to reinforce their agreement to allocate customers and territories.

27. An example of the operation of the conspiracy, according to Mr. Corbin, Arctic Glacier had "backed away" from buying an ice company in Nevada so that Arctic Glacier and Reddy Ice would avoid competition. Mr. Corbin explained that Arctic Glacier's agreement not to enter the South and Southwest (Reddy Ice's territories) enabled Reddy Ice to increase prices, and Reddy Ice's agreement to stay out of the Midwest and Canada enabled Arctic Glacier to do the same in its territories.

28. Further, as examples of the implementation of the anti-competitive agreement, Reddy Ice and Arctic Glacier agreed that Reddy Ice would not compete in California and that Arctic Glacier would not compete in Arizona and Nevada.

29. Reddy Ice formerly had a significant presence in California with five facilities, with 10% of its revenue generated there, had stated that California was a significant market, and had operations in contiguous states. As a result of the anti-competitive and unlawful agreement, however, Reddy Ice curtailed selling its Packaged Ice in California, a lucrative market, and now states that California is "licensed for Ice Factory Sales Only." In the absence of the illegal agreement, Reddy Ice would have continued to sell and compete in the lucrative California market.

30. Similarly, as part of their agreement, Arctic Glacier withdrew from competing in Oklahoma and New Mexico, while retaining production and distribution facilities in the bordering states of Kansas and Texas. Reddy Ice now has manufacturing facilities in Oklahoma and New Mexico, without any competition from Arctic Glacier. In the absence of the illegal customer and territory allocation scheme, Arctic Glacier would have continued to operate in the Oklahoma and New Mexico markets in competition with Reddy Ice.

31. On November 5, 2007, the U.S. Department of Justice filed under seal in the United States District Court for the Southern District of Ohio a Criminal Information against Home City alleging a conspiracy to restrain trade during the period from January 1, 2001 to July 17, 2007.

32. On June 17, 2008, Thomas Sedler, President and CEO of Home City, agreed to prosecution by the Criminal Information filed on November 5, 2007. Mr. Sedler, on behalf of

Home City, then pleaded guilty to violating Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by participating in a conspiracy to restrain trade in the Packaged Ice industry.

33. Reddy Ice acknowledged that, on March 5, 2008, officials from the Antitrust Division of the U.S. DOJ executed a search warrant at the company's corporate office in Dallas, Texas. A federal search warrant can only be issued when a judicial officer finds there is probable cause to find a criminal violation of law, in this case U.S. antitrust law.

34. Thereafter, Reddy Ice formed a Special Committee of its Board of Directors to conduct an internal investigation into Reddy Ice's antitrust violations in the Packaged Ice industry.

35. On September 15, 2008, Reddy Ice announced that it had suspended Ben D. Key, the Company's Executive Vice President - Sales & Marketing, because the Special Committee of the Company's Board had "found that Mr. Key has likely violated Company policies and is associated with matters that are under investigation." Key had been a member of Reddy Ice's Executive Committee. To replace Key, a team of senior executives was appointed to direct Reddy Ice's sales and marketing efforts.

36. Arctic Glacier also commenced an internal investigation into allegations that it was involved in an antitrust conspiracy. As a result, Frank Larson, Arctic Glacier's Executive Vice President, Operations, has been suspended by Arctic Glacier.

37. Also as a result of Arctic Glacier's internal investigation, Arctic Glacier suspended Carl Cooley, Vice President, Sales at the same time as it suspended Frank Larson.

B.      Market Structure

38.     Packaged Ice is commonly sold in supermarkets, convenience stores, beverage stores, drug stores, gas stations, and other retail outlets. Packaged Ice is used primarily to cool beverages and food.

39.     There are no reasonable economic substitutes for Packaged Ice, and the demand is stable and inelastic.

40.     Packaged Ice is a commodity product, made of frozen water. Retail customers have little preference as to brands. In a competitive market, competition to select that brand would be based upon price among competing ice manufacturers.

41.     Historically, Packaged Ice was produced and distributed by local and regional firms. Defendants have fundamentally changed the nature of that market through the anti-competitive conduct alleged herein. As they increased their market power, they have reduced the ability of other Packaged Ice companies to compete for customers serviced by Defendants.

42.     The Defendants together control approximately two thirds of the sales of Packaged Ice in the United States, and have substantial market power. Their combined sales are more than $600 million annually. The remainder of the manufacturers and distributors of Packaged Ice are much smaller, local companies, a majority with less than $1 million in annual revenue.

43.     Although Defendants have aggressively expanded and acquired numerous smaller manufacturers they have, through their illegal agreement, allocated territories so that there is little or no overlap among the areas in which Reddy Ice, Arctic Glacier, and Home City compete.

44.     Reddy Ice is the largest manufacturer and distributor of Packaged Ice in the United States, with sales in 31 states and the District of Columbia to over 80,000 accounts. It

10

has over 2,000 employees. It sells approximately 1.9 million tons of ice per year, primarily packaged in seven- and ten-pound bags, sold principally to convenience stores and supermarkets. It had sales of $339 million in 2007, and holds the dominant market position in the United States.

45.     Arctic Glacier operates 37 manufacturing plants and distribution facilities principally in the northeast, central, and western United States, serving more than 70,000 retail accounts. Arctic Glacier is the second-largest producer and distributor of Packaged Ice in the United States, with total revenues of $249 million for 2007. Of these revenues, more than 80% come from its United States operations. It has the dominant market position in major eastern seaboard cities such as New York and Philadelphia, as well as in New England, California, and the Midwest.

46.     Home City sells ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland. Home City manufacturers 4,400 tons of ice per day in 28 manufacturing plants, with 36 distribution centers, and has a fleet of over 500 trucks.

47.     There are substantial barriers that preclude or reduce the ability of competitors to enter into the production and distribution of Packaged Ice. An ice plant, equipment, and trucks needed to manufacture and distribute large quantities of Packaged Ice require millions of dollars in investment. Further, Defendants typically install refrigeration units at their customers' locations for dispensing ice to retail consumers. This creates an "installed base," because to change suppliers requires removing and replacing these units.

48.     Reddy Ice, Arctic Glacier and Home City are the leaders in their respective territories because they only have to compete with small, local companies, not with each other.

49.     Arctic Glacier has stated that it services markets that are adjacent to markets served by the few large producers, but in general, does not compete directly with these companies.

### C.    Prices Not Justified by Costs

50.     Based upon publicly available data, beginning in or about January 1, 2001, the prices that customers have paid Defendants for Packaged Ice have increased at a rate that cannot be explained by the costs of manufacturing and distributing Packaged Ice to customers.

51.     This is consistent with, and indicative of, the anti-competitive conduct complained of herein.

### D.    Opportunities to Collude

52.     Defendants are members of several trade associations relating to the Packaged Ice industry. Defendants' respective executives have served on the boards of directors and various standing committees of these organizations. These trade associations hold regular meetings of their boards, committees, and members, which Defendants' representatives have attended, and which provide the opportunity for Defendants to meet and communicate with each other concerning the markets, customers, and prices of Packaged Ice.

53.     For example, Defendants are members of the International Packaged Ice Association ("IPIA"), headquartered in Tampa, Florida. Ben Key, Reddy Ice's now-suspended Executive Vice President of Sales and Marketing, recently served as the Chairman of the IPIA executive committee. The Board of Directors for IPIA includes the Director of Marketing for Reddy Ice, and the President and CEO of Arctic Glacier. IPIA's Marketing Committee has been comprised of these same individuals, along with Home City's Tommy Sedler, who recently pled guilty on behalf of Home City to antitrust violations.

54. The IPIA Board of Directors, along with its committees, hold regular meetings throughout the year in addition to its annual meeting.

55. Additionally, Defendants are members of regional trade associations affiliated with IPIA. Defendants' representatives have been members of the boards of directors and various committees within these regional trade associations. Like the IPIA, these regional trade associations hold regular meetings of their boards, committees, and members, which have been attended by Defendants' representatives.

### E. Injury to Plaintiffs and the Class

56. Defendants' anti-competitive conduct has had the following effects:

   a. price competition has been restrained, suppressed, or eliminated with respect to Packaged Ice;

   b. the price of Packaged Ice has been raised, fixed, maintained, or stabilized at supra-competitive levels; and

   c. direct purchasers of Packaged Ice have been deprived of free and open competition in the Packaged Ice market.

57. As a result of the contract, combination or conspiracy, Defendants charged Plaintiffs and Class members anticompetitive prices for Packaged Ice, and Plaintiffs and Class members have sustained injury to their businesses or property.

### F. Fraudulent Concealment

58. Defendants affirmatively concealed their anti-competitive conduct from Plaintiffs and Class members, thereby tolling the statute of limitations through at least March 6, 2008, when it became public that the U.S. DOJ's search warrants were executed.

59. Before March 2008, Defendants represented publicly, both to customers and otherwise, that their pricing activities were unilateral, rather than collusive, and based upon legitimate business purposes, such as increased costs. In making those false representations,

13

Defendants misled Plaintiffs and members of the Class as to the true, collusive, and coordinated nature of their territorial and customer allocation and other illegal anticompetitive activities.

60. Defendants engaged in the successful contract, combination or conspiracy to allocate markets and customers, to raise and fix prices, and to engage in other anticompetitive conduct, which had the effect of raising, fixing, maintaining or stabilizing prices at artificially high levels, and which by its nature was inherently self-concealing. Plaintiffs had no knowledge of Defendants' unlawful contract, combination or conspiracy. Even Reddy Ice claimed it was unaware of any conduct violative of the antitrust laws.

61. Defendants' wrongful conduct was carried out in part through means and methods that were designed to avoid detection, and which, in fact, successfully precluded detection.

62. Plaintiffs did not and could not have discovered Defendants' unlawful contract, combination or conspiracy at any earlier date. Defendants undertook affirmative acts of concealment of their contract, combination or conspiracy, including their attendance at secret meetings, and engaging in secret conversations concerning the allocation of markets and customers for Packaged Ice.

## COUNT I

### VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT

63. Plaintiffs incorporate by reference the allegations above and adopt same as though fully set forth herein.

64. Defendants entered into and engaged in a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of Section 1 of the Sherman Antitrust Act.

65.     The acts done by each of the Defendants as part of, and in furtherance of, the contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

66.     As a result of the contract, combination, or conspiracy among Defendants alleged herein, the prices charged to Plaintiffs and members of the Class for Packaged Ice were unlawfully raised, fixed, maintained, or stabilized in the United States.

67.     The contract, combination, or conspiracy has had the following effects:

   a.  Prices charged to Plaintiffs and members of the Class for Packaged Ice were raised, fixed, maintained, or stabilized at non-competitive levels;

   b.  Plaintiffs and members of the Class have been deprived of the benefits of free, open, and unrestricted competition in the market for Packaged Ice; and

   c.  Competition in the Packaged Ice market has been unlawfully restrained, suppressed, or eliminated.

68.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been damaged by paying supra-competitive prices that they would not have had to pay in the absence of the unlawful conduct of Defendants as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

A.      The Court determine that this action may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class;

B.      The unlawful contract, combination, or conspiracy alleged herein be adjudicated and decreed to have been in violation of Section 1 of the Sherman Antitrust Act;

      C.      Judgment be entered for Plaintiffs and the members of the Class against Defendants for three times the amount of damages sustained by Plaintiffs and the members of the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

      D.      Defendants be enjoined from continuing the unlawful contract, combination, or conspiracy alleged herein; and

      E.      Plaintiffs and the Class be granted such other, further, and different relief as the case may require or as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

Dated: September 15, 2009

*/s/ Joseph C. Kohn*
Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

*Interim Lead Counsel for the Direct Purchaser Class*

Harold Gurewitz (P14468)
GUREWITZ & RABEN, PLLC
333 West Fort Street, Suite 1100
Detroit, MI 48226
(313) 628-4733

*Interim Liaison Counsel for the Direct Purchaser Class*

Michael S. Cafferty (P36613)
CAFFERTY & CIRINO
333 West Fort Street, Suite 1100
Suite 1100
Detroit, MI 48226
(313) 628-4717

*Counsel for the Direct Purchaser Class*

CERTIFICATE OF SERVICE

      I hereby certify that on September 15, 2009, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following counsel for defendants:

    James R Nelson
    jr.nelson@dlapiper.com,vivian.jackson@dlapiper.com,eli.burriss@dlapiper.com,
    laurie.davis@dlapiper.com

    David H Bamberger
    david.bamberger@dlapiper.com,jessica.green-johnson@dlapiper.com

    Jarod Bona
    jarod.bona@dlapiper.com,dawn.solfield@dlapiper.com

    Melissa B. Hirst
    mbhirst@jonesday.com

    Paula W Render
    prender@jonesday.com

    Michael A Roberts
    mroberts@graydon.com

    John B. Pinney
    jpinney@graydon.com,tlewis@graydon.com

                                         /s/ Robert J. LaRocca
                                        Robert J. LaRocca
                                        KOHN, SWIFT & GRAF, P.C.
                                        One South Broad Street, Suite 2100
                                        Philadelphia, PA  19107
                                        (215) 238-1700