UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE PACKAGED ICE ANTITRUST
LITIGATION

Case No. 08-md-01952

Paul D. Borman
United States District Judge

INDIRECT PURCHASER ACTION

R. Steven Whalen
United States Magistrate Judge

_____

WAYNE STANFORD,

Case No. 10-cv-11689

         Plaintiff,

Paul D. Borman
United States District Judge

v.

R. Steven Whalen
United States Magistrate Judge

KEITH CORBIN, et al.,

         Defendants.
_____/

OPINION AND ORDER
(1) AFFIRMING, AFTER EVIDENTIARY HEARINGS BEFORE THE COURT, THE
MAGISTRATE JUDGE'S DECEMBER 13, 2010 OPINION AND ORDER DENYING THE
MOTION TO DISQUALIFY JONES DAY AND DYKEMA (DKT. NO. 39 IN CASE NO. 10-
CV-11689 AND DKT. NO. 304 IN CASE NO. 08-MD-1952) AND
(2) DENYING PLAINTIFFS' MOTION TO DISQUALIFY JONES DAY AND DYKEMA
(DKT. NO. 16 IN CASE NO. 10-cv-11689 AND DKT. NO. 264 IN CASE NO. 08-md-1952)

On December 13, 2010, Magistrate Judge Whalen issued an Opinion and Order Denying

Plaintiffs' Motion seeking to disqualify Jones Day and Dykema from representing Keith Corbin,

Gary Cooley and Frank Larson ("the individual Defendants") in *Stanford v. Corbin, et al.*, No. 10-

cv-11689 ("*Stanford*") and Arctic Glacier Inc., Arctic Glacier Income Fund, and Arctic Glacier

1

International, Inc. ("Arctic Glacier") in *In re Packaged Ice Litigation*, No. 08-md-1952 (the "MDL Litigation"). On January 10, 2011 the Court struck Plaintiffs' untimely objections to the Magistrate Judge's Opinion and Order and, *sua sponte* set a hearing on the propriety of representation of the individual Defendants and Arctic Glacier, by one set of attorneys from Jones Day and Dykema. (Dkt. No. 42 in *Stanford* and Dkt. No. 308 in the MDL Litigation.) In its January 10, 2011 Order, the Court required that each of the individual Defendants in the *Stanford* litigation be present in Court to respond to questions propounded by the Court regarding the individual Defendants' informed consent regarding the joint representation by Jones Day and Dykema. The Court also required in its January 10, 2011 Order that counsel for Defendants produce, in advance of the hearing, copies of their retainer agreements with the individual Defendants and with Arctic Glacier, and also produce complete copies of any indemnification agreements between any Arctic Glacier entity and any of the individual Defendants in the *Stanford* litigation.

On February 3, 2011, the Court held a hearing, having received and reviewed all of the requested documentation in advance of the hearing. The Court was able to fully voir dire both Messrs. Larson and Cooley regarding their understanding of the potential conflicts involved in Jones Day and Dykema's joint representation of each of the individual Defendants in the *Stanford* litigation, and its concurrent representation of Arctic Glacier in the MDL Litigation. The Court was able to directly question Mr. William Michael from the law firm of Dorsey and Whitney, whose firm represented Mr. Larson in the criminal antitrust proceedings and continues to represent Mr. Larson on a consulting basis in the *Stanford* litigation. The Court was able to directly question Mr. Stephen J. Butler, from the law firm of Thompson Hine, whose firm represented Mr. Cooley in the criminal antitrust proceedings and continues to represent Mr. Cooley on a consulting basis in the *Stanford*

litigation.  Mr. Corbin was unable to personally appear at the Detroit hearing for health-related reasons.  The Court traveled to Nashville Tennessee on February 11, 2011 to voir dire Mr. Corbin with respect to his understanding of the potential conflicts presented by the joint representation by Jones Day and Dykema, and to resolve his conflict/waiver issue.  Ms. Jennifer Mara of the Gibbons law firm, that had previously represented Mr. Corbin in the criminal antitrust matter, represented Mr. Corbin at the hearing in Nashville. The Court directly questioned Mr. Corbin and Ms. Mara at the Nashville proceeding.

For the reasons that follow, and for the reasons stated on the record at the February 3, 2011 hearing and the February 11, 2011 hearing, the Court AFFIRMS the conclusion reached by the Magistrate Judge in  his December 13, 2010 Opinion and Order and DENIES Plaintiffs' Motion to Disqualify Jones Day and Dykema.

## I.     INTRODUCTION

On April 26, 2010, Plaintiffs in *Stanford* filed a single-count Class Action Complaint against the individual Defendants seeking damages under the Michigan Antitrust Reform Act, based solely upon the crimes to which the individual Defendants pled guilty, i.e. market allocation conspiracy in Southeastern Michigan.  Plaintiffs in *Stanford* are represented by the Wild Law Firm who had been selected as interim class counsel in the Indirect Purchaser's Action in the MDL Litigation. Jones Day and Dykema represent the Arctic Glacier corporate Defendants in the MDL Litigation (in which none of the individual Defendants is named) and now also represent the individual Defendants in the *Stanford* action.  Plaintiffs now move to disqualify Jones Day and Dykema, arguing that they either have a nonconsentable conflict, or have not sufficiently demonstrated that their clients knowingly waived any potential conflict based upon informed consent.  Plaintiffs also

argue that by representing the individual Defendants thus far in the *Stanford* litigation, they have

obtained confidences that disqualify them from continuing to represent the corporate Defendants in

the MDL Litigation.

## II.      STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a) both provide that a

district judge must modify or set aside any portion of a magistrate judge's non-dispositive pretrial

order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P.

72(a). The United States Supreme Court and the Sixth Circuit Court of Appeals have stated that "a

finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on

the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (explaining the clearly erroneous

standard under Rule 52(a)); *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th

Cir.1992) (quoting *U.S. Gypsum Co.*, 333 U.S. at 395). *See also United States v. Mandycz*, 200

F.R.D. 353, 356 (E.D. Mich. 2001) (explaining the standard under Rule 72(a)).

This standard does not empower a reviewing court to reverse the Magistrate Judge's finding

because it would have decided the matter differently. *Anderson v. City of Bessemer City, N.C.*, 470

U.S. 564, 573 (1985) (interpreting the clearly erroneous standard in Rule 52(a)). The Sixth Circuit

has noted that: "[t]he question is not whether the finding is the best or only conclusion that can be

drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather,

the test is whether there is evidence in the record to support the lower court's finding, and whether

its construction of that evidence is a reasonable one." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*,

774 F.2d 135, 140 (6th Cir. 1985).

"The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard.... Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc* ., 162 F.R.D. 289, 291 (W.D. Mich.1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D.Ohio 1992)).

## III.   ANALYSIS

Where a district court faced with a disqualification motion is not presented with affidavit evidence sufficient to establish beyond question the nature and scope of the disclosure, the Court is well advised to conduct an evidentiary hearing. *Melamed v. ITT Continental Baking Co.*, 534 F.2d 82, 84-85 (6th Cir. 1976) (requiring a certain level of factual inquiry on a motion for disqualification and remanding for "a full evidentiary hearing on the issues posed by the motion to disqualify and the response thereto, which hearing should include the taking of testimony."). Although subsequent decisions of the Sixth Circuit have indicated that a full evidentiary hearing is not mandated in every case, *see, e.g. General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir. 1983), the Court concludes that the affidavits offered in support of the motion in the instant case did not provide sufficient factual content to permit the Magistrate Judge "to determine the operative and controlling facts on which a decision [can] appropriately be made whether or not the motion to disqualify should be sustained." *Melamed*, 534 F.2d at 85. Accordingly, this Court ordered and conducted full evidentiary hearings.

### A.   This Joint Representation Does Not Create a Non-Consentable Conflict

The Court finds that Jones Day and Dykema's representation of these individual Defendants in the *Stanford* litigation, and their continued representation of Arctic Glacier in the MDL Litigation

while at the same time representing these individual Defendants in *Stanford*, does not create a nonconsentable conflict under the Michigan Professional Rules of Conduct. *See* Mich. R. Prof. Conduct 1.7. The Court has carefully read the Sixth Circuit's opinion in *Centra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir. 2008) which supports the Court's ruling. Under the present circumstances of the case, and given counsel's representation that the interests of these individual Defendants and Arctic Glacier remain materially aligned at this point in the litigation, the Court finds that an objective, informed and disinterested attorney could conclude that this joint representation, with informed consent, is reasonable. Plaintiffs concede that the claims in *Stanford* are based solely on conduct to which each of the individual Defendants, as well as Arctic Glacier International, Inc., have pled guilty. Plaintiffs' conjecture as to testimony that they believe they may possibly elicit from one or more of the individual Defendants, either implicating another individual Defendant in *Stanford* or Arctic Glacier in the broader-scoped nationwide conspiracy claim in the MDL Litigation, cannot serve as the basis for finding a nonconsentable conflict. This conclusion is particularly compelling in light of the informed consent of all parties involved. Multiple representation of parties whose interests have an obvious potential to diverge at some future point is permissible where the client fully appreciates that such a potential exists and the Court and the parties remain vigilant in monitoring that potential throughout the litigation. *See Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir. 1986).

As discussed *infra*, the Court has extensively questioned Messrs. Corbin, Cooley and Larson and concludes that they each is fully aware of the potential conflicts which may arise as a result of Jones Day and Dykema's joint representation of the individual Defendants in *Stanford*, and Jones Day and Dykema's concurrent representation of Arctic Glacier in the MDL Litigation. Jones Day

and Dykema have represented to the Court that they will maintain a heightened sensitivity to issues of conflict.  Independent counsel, Messrs. Butler and Michael and Ms. Mara, who were also present at the hearings and questioned by the Court, stand ready to assist and to provide the individual Defendants with independent advice, as expressly contemplated and authorized in the governing indemnification agreements with Arctic Glacier.  In fact, the Court confirmed that independent counsel have already served an important role in presenting Plaintiffs' initial "settlement offer" to these individual Defendants, without Jones Day or Dykema's presence or input, and reporting back to Jones Day and Dykema that the individual Defendants' rejected that offer. There is no reason to presume that this framework will not continue to be fair and effective going forward.  The Court also will be readily accessible to the parties to address issues which may arise.   The Court finds that the joint representation does not create a nonconsentable conflict.

The Court also rejects Plaintiffs' argument that Arctic Glacier Inc.'s agreement to pay the individual Defendants' legal fees, and to indemnify them in the event of an adverse judgment pursuant to valid indemnification agreements, creates a nonconsentable conflict.  The individual Defendants have testified that they were made aware, at the time they chose Jones Day to represent them in *Stanford*, that the availability of indemnification was not conditioned on their choice of counsel.  They were aware that they could have chosen counsel other than Jones Day and Dykema and still have been entitled to seek indemnification and payment of their legal fees and expenses.

The individual Defendants were also aware of the possibility that, under the terms of their agreements with Arctic Glacier Inc., Arctic Glacier Inc.'s by-laws and applicable law, they may ultimately be denied indemnification and may be required to repay any legal fees that have been advanced.

The Court further rejects Plaintiffs' unsubstantiated assertion that Arctic Glacier lacks the financial capability of delivering on its promise to pay the individual Defendants' legal fees and to indemnify them in the event of an adverse judgment.  The Court was able to question Arctic Glacier's corporate secretary, Mr. Hugh Adams, who was present at the hearing on February 3, 2011, regarding the company's financial ability to fulfill its obligations under the various retainer and indemnification agreements.  Mr. Adams represented to the Court that Arctic Glacier has been able to pay all requested legal fees and intends to be able to continue to do so going forward, and has never requested repayment in any form of the fees advanced on behalf of any of the individual Defendants.   The Court concludes that Plaintiffs have not established the existence of a nonconsentable conflict.

B.      **Messrs. Corbin, Cooley and Larson Have Given Their Informed Consent to the Joint Representation**

The Michigan Rules of Professional Conduct provide that under certain circumstances a lawyer may represent a client notwithstanding the potential for a conflict of interest if "each client consents after consultation."  Mich. R. Prof. Conduct 1.7(a).  In *Centra v. Estrin*, 538 F.3d 402 (6th Cir. 2008), the Sixth Circuit drew upon several sources in determining the scope of this rule. Quoting from the Restatement Third § 122, the court noted:

> A lawyer may represent a client notwithstanding a conflict of interest prohibited by § 121 if each affected client or former client gives informed consent to the lawyer's representation.  Informed consent requires that the client or former client have reasonably adequate information about the material risks of such representation to that client or the former client.

*Centra*, 538 F.3d at 414 (quoting Restatement Third § 122).  Under this standard of "materiality," the Sixth Circuit determined, a client must receive enough information to fully "'reveal [the conflict's] scope and severity.'" 538 F.3d at 415 (quoting Restatement Third § 122 cmt.).  The court

observed that "providing anything less than full information runs the risk that the client is inadequately informed, thereby making any consent invalid," and concluded that "it is not sufficient to leave the client to infer the full nature of a conflict from only bits and pieces of actual or constructive knowledge." 538 F.3d at 415.  The Court quoted with approval the following language from the Ninth Circuit's opinion in *Unified Sewage Agency v. Jelco*, 646 F.2d 1339 (9th Cir. 1981):

> To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail that they can understand the reasons why it may be desirable for each to have independent counsel, with undivided loyalty to the interests of each of them.

*Centra*, 538 F.3d at 415-416 (quoting *Jelco*, 646 F.3d 1345-46) (emphasis omitted).

The Court concludes, having had the opportunity to fully voir dire Mssrs. Cooley and Larson at the February 3, 2011 hearing, and Mr. Corbin at the February 11, 2011 hearing, that each of the individual Defendants has given his informed consent to his joint representation in the *Stanford* litigation by Jones Day and Dykema, who also concurrently represent Arctic Glacier in the MDL Litigation.  The Court finds that these individual Defendants are fully aware of the scope and severity of the potential conflicts involved in this joint representation.  The Court has reviewed both the retainer agreements and the indemnification agreements with each of the individual Defendants and finds that each has been fully informed of and appreciates the risks involved in this joint representation.  They understand that they could have chosen other counsel and been entitled to seek the same indemnification of legal fees and judgments from Arctic Glacier that they have been promised with respect to their representation by Jones Day and Dykema.  They fully appreciate the fact that if a conflict does arise in the future which pits any one of them against the interests of Arctic Glacier, that Jones Day and Dykema will likely chose to continue to represent Arctic Glacier

and will no longer represent the individual Defendant.  They also understand that under applicable

law, Arctic Glacier's by-laws and their indemnification agreements, their statements or testimony

in the case may jeopardize their entitlement to indemnification or result in a clawback of any legal

fees advanced.

The Court concludes that Messrs. Corbin, Larson and Cooley, who have retained Ms. Mara,

Mr. Michael and Mr. Butler respectively, as counsel for purposes of legal consultation independent

of Jones Day and Dykema in the *Stanford* litigation, have been given "reasonably adequate

information about the material risks of such representation," and have been apprised of the reasons

"why it may be desirable for each to have independent counsel."  *Centra*, 538 F.3d at 414, 415-416.

Despite such knowledge, Messrs. Corbin, Cooley and Larson choose to continue to be represented

by Jones Day and Dykema at this stage in the proceedings.  The Court explained to each of the

individual Defendants that if at any point they decide that they wish to be represented by counsel

other than Jones Day and Dykema in the *Stanford* litigation, they can seek the Court's intervention

to assist them with retaining separate counsel.  In view of these facts, the Court will not impose the

extreme sanction of disqualification under these present circumstances.

**C.      Jones Day and Dykema May Continue to Represent Arctic Glacier in the MDL Litigation**

The Court also rejects Plaintiffs' argument that Jones Day and Dykema's representation of

the individual Defendants in *Stanford* disqualifies them from continuing to represent Arctic Glacier

in the MDL Litigation.  Plaintiffs argue that Jones Day and Dykema should be disqualified from

representing Arctic Glacier in the MDL Litigation because the individual Defendants in *Stanford*

"undoubtedly shared confidences with the Defense Firms."  (Dkt. No. 16 in *Stanford* and Dkt. No.

264 in the MDL Litigation, Pls.' Mot. 16-17.)  The retainer agreements signed by the individual

Defendants state, and the individual Defendants have confirmed their understanding, that the attorney client privilege has been waived as among all parties considered part of the joint representation, i.e. Arctic Glacier and Messrs. Corbin, Cooley and Larson.  The individual Defendants understand that any information they provide to Jones Day and Dykema can be shared with any of the other members of the joint representation group.  The individual Defendants also understand, as the retainer agreements state, that if a conflict should arise during the course of the joint representation which creates adversity of interest between Arctic Glacier and any of the individual Defendants, Jones Day will likely choose to represent Arctic Glacier, with whom the firm has a long standing relationship, and will discontinue their representation of the individual Defendant. The Court concludes that Jones Day and Dykema may continue to represent Arctic Glacier in the MDL Litigation.

## IV.    CONCLUSION

The Court AFFIRMS the conclusion reached by the Magistrate Judge in his December 13, 2010 Opinion and Order Denying Motion to Disqualify (Dkt. No. 39 in Case No. 10-11689 and Dkt. No. 304 in Case No. 08-1952) and DENIES Plaintiffs' Motion to Disqualify Jones Day and Dykema (Dkt. No. 16 in Case No. 10-11689 and Dkt. No. 264 in Case No. 08-1952).

**IT IS SO ORDERED.**                       S/Paul D. Borman
                                            PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE

Dated:  February 11, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 11, 2011.

S/Denise Goodine
Case Manager