UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE PACKAGED ICE ANTITRUST
LITIGATION                                          Case No. 08-MD-01952

                                                    Paul D. Borman
                                                    United States District Judge

DIRECT PURCHASERS ACTION

_____/

AMENDED[1] OPINION AND ORDER
(1) GRANTING DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH DEFENDANT
THE HOME CITY ICE COMPANY (DKT. NO. 309);
(2) GRANTING THE DIRECT PURCHASER PLAINTIFFS' MOTION FOR
AUTHORIZATION TO USE A PORTION OF THE HOME CITY SETTLEMENT FUNDS
FOR LITIGATION EXPENSES (DKT. NO. 310);
(3) GRANTING FINAL APPROVAL OF THE SETTLEMENT CLASS; AND
(4) GRANTING FINAL APPROVAL OF THE SETTLEMENT AGREEMENT WITH
DEFENDANT HOME CITY

　　　This matter is before the Court on the Direct Purchaser Plaintiffs' ("Plaintiffs") Motion for

Final Approval of Proposed Settlement with Defendant the Home City Ice Company (Dkt. No. 309)

and Plaintiffs' Motion for Authorization to Use a Portion of the Home City Ice Company Settlement

Funds for Litigation Expenses (Dkt. No. 310).

　　　The Court held a final fairness hearing on February 10, 2011 ("the Fairness Hearing"). After

careful consideration of the Plaintiffs' motions and briefs, as well as the comments of counsel for

Plaintiffs and Defendant Home City Ice Company ("Home City") at the Fairness Hearing, and

noting the absence of any objections to the proposed settlement with Home City, the Court

_____

[1] The only change in this Amended Order is the attachment of Exhibit A.

1

GRANTS Plaintiffs' motion for final approval of the settlement with Home City and GRANTS Plaintiffs' motion to use a portion of the settlement funds for litigation expenses.

## I.     BACKGROUND

The background of this multidistrict antitrust litigation is set forth in great detail in this Court's July 1, 2010 Opinion and Order denying the Reddy Ice and Arctic Glacier Defendants' motions to dismiss (Dkt. No. 260) and in this Court's August 2, 2010 Opinion and Order denying the Reddy Ice and Arctic Glacier Defendants' motion to stay preliminary approval of the Home City Settlement (Dkt. No. 274).  In summary, in 2008 the Department of Justice ("DOJ") criminal investigation into the packaged ice industry in the United States surfaced in the media. Thereafter, multiple civil antitrust actions were filed against the Reddy Ice Defendants, the Arctic Glacier Defendants and Defendant Home City. In June, 2008, the civil cases were transferred to this Court pursuant to the committee on multi-district litigation, and consolidated for all pretrial proceedings. The DOJ investigation resulted in guilty pleas by Arctic Glacier International, Inc., Home City Ice and three Arctic Glacier executives to conspiring to allocate territories in Southeastern Michigan. The DOJ has recently concluded its criminal investigation into the packaged ice industry without issuing further criminal indictments.

On June 1, 2009, this Court appointed Kohn, Swift & Graft, P.C. as interim lead counsel and Gurewitz & Raben, PLLC as liaison counsel for the proposed class of antitrust claims filed by Direct Purchasers (primarily gas stations and retail stores). (Dkt. No. 175.)  On September 15, 2009, the Plaintiffs filed their Consolidated Amended Class Action Complaint ("CAC"). (Dkt. No. 198.) On October 30, 2009, the Reddy Ice Defendants and the Arctic Glacier Defendants filed motions to dismiss the CAC. (Dkt. Nos. 202, 203.)  On July 1, 2010, this Court issued an Opinion and Order

Denying Defendants Reddy Ice and Arctic Glacier's Motions to Dismiss, finding that the CAC stated a plausible claim for relief as to both Reddy Ice and Arctic Glacier under section 1 of the Sherman Antitrust Act. (Dkt. No. 260).

On November 13, 2009, Plaintiffs filed a motion for preliminary approval of a settlement agreement dated October 30, 2009 between Plaintiffs and Defendant Home City ("the Settlement Agreement").  The motion sought preliminary approval of the Settlement Agreement and approval to disseminate notice to the proposed Settlement Class.  (Dkt. No. 206.)  On November 30, 2009, the Reddy Ice and Arctic Glacier Defendants (the "non-settling Defendants") filed a motion to stay preliminary approval of the proposed Home City Settlement Agreement.  (Dkt. No. 211.)  The Court denied the motion to stay on August 2, 2010.  (Dkt. No. 274.)

On August 26, 2010, the Court held a preliminary fairness hearing on the proposed Home City Settlement Agreement.  In an Opinion and Order dated September 2, 2010, the Court preliminarily approved the proposed Settlement Agreement, authorized Plaintiffs to disseminate notice, and set February 10, 2011 as the date for the Final Fairness Hearing on the proposed Settlement Agreement. (Dkt. No. 285.) The Court's September 2, 2010 Order also appointed Kohn, Swift & Graf, P.C. and Gurewitz & Raben, PLLC ("Class Counsel") as Class Counsel for the Settlement Class.

On February 10, 2011, the Court held the final fairness hearing ("the Fairness Hearing") as scheduled and heard argument from Class Counsel and counsel for Home City.  Counsel for the Reddy Ice Defendants, Mr. James Nelson, and counsel for the Arctic Glacier Defendants, Mr. Howard Iwrey, were present at the hearing; neither addressed the Court.  No objections were filed to the proposed Settlement Agreement and no objectors appeared at the Fairness Hearing.  Class

Counsel informed the Court at the Fairness Hearing that Plaintiffs had received 19 requests by potential class members to opt-out. Class Counsel provided the Court at the Fairness Hearing with a list of the opt-out entities. That list is attached to this Order as Exhibit A.

For the reasons that follow, the Court now provides final certification of the Settlement Class that it preliminarily approved in its September 2, 2010 Order ("the Settlement Class") and provides final approval of the Settlement Agreement, which the Court concludes is fair, reasonable and adequate. Further, the Court approves the request of Class Counsel for authorization to use a portion of the Settlement Funds for ongoing litigation expenses.

## II. ANALYSIS

### A. The Terms of the Settlement Agreement

The principal terms of the Settlement Agreement are as follows:

(1) <u>The Settlement Amount</u>. The Settlement Agreement provides that Home City will pay $13.5 million in settlement ("the Settlement Amount"). The Settlement Amount has been wired into the Settlement Fund which has been established as an escrow account pursuant to the terms of the Settlement Agreement. (Settlement Agreement ¶ 19.) Plaintiffs are not at this stage proposing a plan of allocation and distribution of the Settlement Amount if the settlement is approved. (Pls.' Mot. for Final Approval, 5.) Plaintiffs plan to propose an allocation plan at a future date, which will include the dissemination of additional notice and proof of claim forms to the Settlement Class Members and will require further Court approval. (*Id.*) Although the Notice sent to putative Settlement Class Members did not specify a plan for distribution, the Notice does indicate that Class Members who do not seek to be excluded will receive a second notice setting forth a proposed distribution plan and a claim form.

Class Counsel explained at the Fairness Hearing that the final plan of allocation was not included in the original Notice in part because of the potential for additional settlements with other Defendants which may affect the final plan of allocation.  (Transcript of February 10, 2011 Fairness Hearing, Dkt. No. 322, 13.)  Class Counsel also explained to the Court at the Fairness Hearing that, although the specifics of a final plan of allocation would be the subject of a formal motion at some future date, the broad outlines of the allocation are "no mystery."  The allocation would likely be based, as in many antitrust cases, on the respective volume of a class member's purchases compared to the total number of claims submitted.  (Fairness Hr'g Tr. 15.)  Class Counsel also confirmed that the final plan of allocation, as well as any request for incentive awards for the named Plaintiffs, or for legal fees and expenses for Class Counsel, will be the subject of additional notice to Class Members and additional opportunities for Class Members to object and be heard and further Court approval.  (Fairness Hr'g Tr. 15-16.)

(2)    <u>Right to Reduce the Settlement Amount</u>.  Paragraph 20 of the Settlement Agreement provides that Home City has the right to reduce the Settlement Amount, or to withdraw from the settlement altogether, if certain opt-out thresholds, calculated based upon the total dollar amount of sales of Packaged Ice made by Home City during the class period represented by class members who have timely exercised their right to be excluded from the Settlement Class, have been met.  At the time Plaintiffs filed their Motion for Final Approval on January 11, 2011, only 12 (twelve) Class Members had requested exclusion, none had objected and none of the contingencies provided for in Paragraph 20 had occurred.  Requests for exclusion were required to be submitted to Class Counsel on or before January 21, 2011.  Objections were required to be filed with the Court by January 21, 2011 and none has been filed to date.  Plaintiffs were required to provide Home City,

by January 26, 2011, a written list of all potential Settlement Class members who have timely exercised their right to be excluded from the Settlement Class so that the opt-out amounts could be calculated. (Settlement Agreement ¶20.)

At the Fairness Hearing, Class Counsel informed the Court that there have been no objections to the Settlement Agreement and the Plaintiffs have received 19 (nineteen) requests for exclusion from the Settlement Class. Class Counsel has provided the Court and Home City with a list of those 19 potential Class Members who have requested exclusion and represented to the Court that none was significant enough, nor were they collectively sufficient, to trigger any of the reduction provisions of paragraph 20 of the Settlement Agreement. (Fairness Hr'g Tr. 6-7, 15.) The list of those entities that exercised their right to opt-out is attached as Exhibit A to the Court's Final Order and Judgment.

Class Counsel informed the Court at the Fairness Hearing that Plaintiffs received inquiries regarding opt-outs and objections, including inquiries from a professional law firm known for representing major companies as opt-outs and objectors in antitrust cases, but that all those who inquired chose to remain in the class and none objected to the Settlement Agreement. (Fairness Hr'g Tr. 11-12.)

(3) <u>The Settlement Fund</u>. The Fund, into which the Settlement Amount has been paid (except for $225,000 deposited into a federally insured bank to cover expenses associated with providing notice to the proposed Settlement Class, administering the settlement, or related to taxation matters) has been invested in United States Government Treasury obligations and all interest earned on the Settlement Fund will become and remain a part of the Settlement Fund. (Settlement Agreement ¶¶ 21-22.)

(4)     <u>Cooperation</u>.  In addition to paying the $13.5 million into escrow, Home City is obligated under the terms of the Settlement Agreement to cooperate with Plaintiffs and Class Counsel in their continued prosecution of Plaintiffs' claims against the non-settling Defendants. Following the Court's September 2, 2010 Order preliminarily approving the Home City Settlement Agreement, Home City, per the Settlement Agreement, produced certain documents relating to the allegations of the Complaint and arranged a meeting between outside counsel for Home City and Class Counsel.  (Settlement Agreement ¶¶ 28, 29.)  Upon the Court's final approval of the Settlement Agreement, Home City has agreed to use its best and good faith efforts make present and former officers with knowledge of the alleged anticompetitive conduct available for interviews, depositions or trial testimony.  (Settlement Agreement ¶ 30.)

At the Fairness Hearing, Class Counsel informed the Court that Home City's cooperation to date has been beneficial and is moving the case forward.  (Fairness Hr'g Tr. 9.)  Class Counsel informed the Court that, among other things, Plaintiffs have issued a subpoena to the government with respect to certain specific conversations that Plaintiffs believe were recorded by the government based on information obtained from Home City. (*Id.*)

(5)     <u>Releases</u>.  Upon the occurrence of the Effective Date of the Settlement Agreement, as defined in paragraph 17 of the Settlement Agreement, the named Plaintiffs and the Settlement Class members (as defined in paragraph 7 of the Settlement Agreement) release all claims (as defined in paragraph 18 of the Settlement Agreement) against Home City (and additional "releasees" as defined in paragraph 6 of the Settlement Agreement).  Specifically excluded from the category of "releasees" are the non-settling Defendants, Reddy Ice Holdings, Inc., Arctic Glacier Income Fund, Arctic Glacier, Inc. and Arctic Glacier International, Inc.  (Settlement Agreement ¶ 6.)

Specifically excluded from the claims released are any claims made by indirect purchasers of packaged ice as to their indirect purchases, or any product defect or similar claim between the parties relating to packaged ice.  (Settlement Agreement ¶ 18.)

(6)    <u>Sales by Home City Remain in the Case Against the Non-Settling Defendants</u>.  Home City sales amounts will remain in the case as a basis for damage claims and the non-settling Defendants remain jointly and severally liable for damages on those sales.  (Settlement Agreement ¶ 32.)

(7)    <u>Most Favored Nation Status Granted to Home City</u>.  If Plaintiffs enter into any Qualifying Settlement, as defined in paragraph 34(a) of the Settlement Agreement, which is finally approved by the Court, and if the Settlement Ratio, as defined in paragraph 34(b) of the Settlement Agreement, for such settling Defendants is less than the Settlement Ratio paid by Home City under the Settlement Agreement, then Home City shall be entitled to a refund ("the MFN Refund") sufficient to bring the Home City Settlement Ratio down to an amount equal to the Settlement Ratio for the Qualifying Settlement.  (Settlement Agreement ¶ 34(b) and (c).)  Any MFN Refund shall be paid solely from the funds recovered in the Qualifying Settlement, not from the amount paid under the Home City Settlement Agreement.

(8)    <u>Stipulation to Class Certification</u>.  The parties to the Settlement Agreement have stipulated that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) have been satisfied and have stipulated to certification of the following Settlement Class, for purposes of settlement with Home City only:

> All purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates (including all predecessors thereof) at any time during the period from January 1, 2001 to March 6, 2008.  Excluded from the Settlement class are governmental entities and

Defendants, including their parents, subsidiaries, predecessors or successors, and Defendants' co-conspirators.

**B.    Notice to the Settlement Class Was The Best and Most Practicable Notice Under the Circumstances**

As required by the Court's preliminary order of approval, the Defendants provided to Plaintiffs in electronic format their complete list of customers to whom they had sold packaged ice during the proposed class period and this list was utilized by the mailing house that issued the Class Notice.  (Fairness Hr'g Tr. 5.)  Plaintiffs, in compliance with the Notice provisions of this Court's September 2, 2010 Preliminary Approval Order, mailed 264,762 notices to these potential Class Members and also published a Summary Notice in the National Edition of the Wall Street Journal ("Notice").  The Notice, Settlement Agreement and a copy of the CAC were also made available at www.kohnswift.com.  (Dkt. No. 316, Notice of Filing Mailing and Published Notice Affidavits in Connection with the Proposed Settlement with the Home City Ice Company.)

The Court finds that the method, form and content of the Notice by mail and publication approved by the Court on September 2, 2010 (Dkt. No. 285, Preliminary Approval Order), mailed to the Class Members by Smith Edwards-Dunlap Printing Company first class U.S. Mail on November 2, 2010 and published in the Wall Street Journal on November 12, 2010, satisfied Rule 23(e)(1) notice requirements.  "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing."  3 Newberg on Class Actions, § 8.32 (4th ed. 2010).  Plaintiffs obtained the names and addresses of potential Class Members from customer lists provided by the Defendants, and the Notice explained the litigation and the terms of the Settlement Agreement in

detail and also provided the Class Members access to the relevant documents, i.e. the Settlement Agreement and the CAC, via the Kohn Swift website. The Notice explained in detail, and highlighted in bold print, the process for requesting exclusion and for filing objections with the Court and also informed Class Members of their right to attend the hearing upon proper notice to the Court.   The Court concludes that the Notice was the best notice practicable under the circumstances and was "reasonably calculated, under all the circumstances, to apprise [the Class Members] of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) (citations omitted).

### C.     Certification of the Settlement Class Solely for Purposes of the Home City Settlement is Appropriate

Certification of a class must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Federal Rule of Civil Procedure 23(b).  *Int'l Union v. Ford Motor Co.*, No. 06-10331, 2006 WL 1984363, at * 18 (E.D. Mich. July 13, 2006) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  For the reasons that follow, the Court approves the following Settlement Class ("the Settlement Class"):

> All purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates (including all predecessors thereof) at any time during the period from January 1, 2001 to March 6, 2008.  Excluded from the Settlement Class are governmental entities and Defendants, including their parents, subsidiaries, predecessors or successors, and Defendants' co-conspirators.

The Court concludes that the requirements of Fed. R. Civ. P. 23(a) with respect to the Settlement Class have been met:

(1) The numerosity requirement of Rule 23(a)(1) is met because over 260,000 putative Class Members received Notice.  *See Ford Motor*, 2006 WL 1984363 at * 19 (holding that class of over

10

170,000 satisfied the numerosity requirement);

(2)   "The requirement of commonality requires only a common question of law or fact." *Ford Motor*, 2006 WL 1984363 at * 19 (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997)).  There exist common questions of law and fact to satisfy Rule 23(a)(2), i.e. whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members;

(3) The claims of the Class Representatives are typical of the Settlement Class in satisfaction of Rule 23(a)(3).  "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members."  *Ford Motor*, 2006 WL 1984363 at * 19.  Because all Class Members' claims arise from the same course of conduct, i.e. a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met.

(4)   The named Plaintiffs will fairly and adequately represent the interests of the Settlement Class Members in satisfaction of Rule 23(a)(4).  "The two criteria for determining whether class representatives are adequate are '(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Ford Motor*, 2006 WL 1984363 at * 19 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).  Plaintiffs' interests are aligned with the Class Members because they all possess the same interests and have suffered the same type of injury and the class is represented by competent and experienced Class Counsel. There is no indication that the named Plaintiffs' interests are unjustifiably advanced at the expense of unnamed

11

Class Members or that the named Plaintiffs' interests conflict in any way with those of the Class Members. *Lessard v. Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2007) ("In determining fairness, a court should consider whether the interests of counsel and the named plaintiffs are 'unjustifiably advanced at the expense of unnamed class members.'") (quoting *Williams v. Vukovich*, 720 F.2d 909, 921-923 (6th Cir. 1983)).  To date, there has been no request for an incentive award for the named Plaintiffs and any such request would be subject to further notice and an opportunity to object by the Class Members.

Finally, the Court concludes that the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because for purposes of this Settlement Agreement "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  "'Predominance is a test readily met in certain cases alleging ... violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case.'"  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (quoting *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)) (finding that allegations of price fixing and market allocation will not vary among the class members).  The allegations of market and customer allocation will not vary among the class members and issues regarding the amount of damages do not destroy predominance. *In re Scrap Metal*, 527 F.3d at 535-536.  The evidence that will prove a violation as to one member will be sufficient to prove it as to all - the anticompetitive conduct is not dependent on the separate conduct of the individual Class Members. *Meijer Inc. v 3M*, No. 04-5871, 2006 WL 2382718 at * 8 (E.D. Pa. Aug. 14, 2006).  Class Counsel represents that the superiority requirement is met because

12

no Class Members have exhibited an interest in individually pursuing separate actions.  (Pls. Mot. for Final Approval, 19.)

As the Court noted in its Opinion and Order denying the non-settling Defendants' motion to stay preliminary approval of the Home City Settlement Agreement, the ability of the non-settling Defendants to contest certification of a litigation class will be unimpaired by the certification of a Home City settlement-only class.  (Dkt. No. 274, Order Denying Mot. to Stay, 8-9).  The Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant other than Home City to contest certification of any other class proposed by Plaintiffs.  The Court's findings in this Final Approval Order will have no effect on the Court's ruling on any motion to certify any class in this litigation and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify such a class.

**D.      The Settlement Agreement With Home City is Fair, Reasonable and Adequate**

The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.  *UAW*, 497 F.3d at 631 (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions").  This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete.  *See In re Beef Ind. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979) (finding nothing in the cases or the commentaries to suggest that approval of a pre-certification settlement is dependent upon the settlement being complete as to all parties); *Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) (affirming approval of partial settlement where class certified for settlement purposes only).

13

The evaluation and approval of a class settlement is committed to the sound discretion of the district court and the district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA*, 238 F.R.D. at 593. "In exercising that discretion, the Court may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Id*. at 594 (internal quotation marks and citations omitted). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 594 (internal quotation marks and citations omitted). In evaluating a proposed settlement, the district court judge "must respect the parties' compromise and may not substitute his or her judgment for that of the litigants and their counsel." *Id*. (internal quotation marks and citation omitted). "Settlement embodies a bargained give and take between the litigants that is presumptively valid about which the Court should not substitute its judgment for that of the parties." *Ford*, 2006 WL 1984363 at * 21 (internal quotation marks and citation omitted). In evaluating the fairness of a proposed settlement, the Court must remain mindful of its primary role as guardian of the interests of the absent class members in its evaluation of the Rule 23 requirements. *Amchem*, 521 U.S. at 620.

The Sixth Circuit has identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: "(1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount

of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest." *UAW*, 497 F.3d at 631. "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Ford*, 2006 WL 1984363 at * 22.

Consideration of the factors relevant to the Home City Settlement Agreement leads the Court to conclude that, given the complexity of the litigation, the multitude of factual and legal hurdles which remain in this case which is still at an early stage, the potential for significant cooperation from the settling Defendant in Plaintiffs' continued prosecution of its claims against the non-settling Defendants and the financial struggles of all of the Defendants, the Settlement Agreement falls within the range of reasonableness, fairness and adequacy required under Fed. R. Civ. P. 23.

**1.      The likelihood of Plaintiffs' success on the merits weighed against the amount and form of relief offered in the settlement supports approval.**

In determining whether the relief offered in a settlement outweighs the plaintiffs' chances of ultimate success on the merits, the Court "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion." *IUE-CWE*, 238 F.R.D. at 594. The Court "is not to decide whether one side is right or even whether one side has a better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute." *UAW*, 497 F.3d at 632.

The Court concludes that the Settlement Agreement with Home City seeks to resolve a legitimate legal and factual dispute over the alleged nationwide allocation of markets in the packaged ice industry. Plaintiffs state that they remain optimistic about their ultimate chance of success but acknowledge that there is always a risk that Defendants could prevail with respect certain legal or factual issues. Plaintiffs point out, and the Court notes, that the Department of

Justice has closed its investigation of the Packaged Ice industry and, while certainly not dispositive of Plaintiffs' claims, this is a factor which favors settlement. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("Risks of establishing liability and damages are substantial. . . . [and] the criminal investigation that likely instigated this antitrust litigation was concluded without the issuance of any indictments."); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (finding that district court did not abuse its discretion in considering that "there were no government coattails for the class to ride"). Plaintiffs also note that their case alleges a nationwide conspiracy, while certain Defendants have pled guilty only to antitrust violations in Southeastern Michigan. Plaintiffs also state that the November 15-17, 2010 deposition of Keith Corbin, a retired Arctic Glacier executive who features prominently in the allegations of the CAC, did not change their analysis of their chances of success.

Weighing against these potential weaknesses is the immediate availability of a $13.5 million cash settlement, which represents approximately 2.5% of the total commerce of Home City throughout all of their territories in the Settlement Class Period. (Fairness Hr'g Tr. 8.) As a percentage of sales allegedly affected by Home City's conduct, the Settlement Amount is on par with other antitrust class action settlements that have been approved by other courts. *See, e.g. In re Labelstock Antitrust Litig.*, 584 F. Supp. 2d at 702 ($8.25 million settlement equal to 1.5% of settling defendant's sales during the class period); *Meijer*, 2006 WL 2382718 at * 20 ($28.9 million settlement represented 2% of settling defendant's sales to class members); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) ($34 million and $92.5 million represented 2.0% and 1.62% of settling defendants' sales); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ($48 million settlement represented 2% of

16

sales).  Class Counsel also represented at the Fairness Hearing that negotiations of the Settlement

Agreement with Home City were vigorous, arm's length and conducted in good faith with counsel

on all sides who were well informed, including discussions with Mr. Sanford Litvack, a former head

of the antitrust division of the United States Department of Justice.  (Fairness Hr'g Tr. 11.)

Also of significant value is the fact that the Settlement Agreement with Home City can serve

as an "ice-breaker" settlement and includes the promise of cooperation from Home City which, as

discussed above, has already been beneficial to the Plaintiffs in their continued prosecution of their

claims against the non-settling Defendants.  With the Court's Final Approval Order today, that

cooperation enters its next phase, per the terms of the Settlement Agreement, under which Home

City will now be obligated to provide actual witnesses and continued document production.

(Fairness Hr'g Tr. 9.)  *See In re Linerboard Antitrust Litig*., 321 F. Supp. 2d at 643 (finding that the

provision of such cooperation provides "a substantial benefit to the classes and strongly militates

toward approval of the Settlement Agreement"); *In re Labelstock Antitrust Litig*., 584 F. Supp. 2d

at 702 ("the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact

that they would be able to withstand a larger judgment.").

"As is true in any case, the proposed Settlement represents a compromise in which the

highest hopes for recovery are yielded in exchange for certainty and resolution."  *Ford*, 2006 WL

1984363 at * 23 (internal quotation marks and citation omitted).  Class Counsel indicated to the

Court at the Fairness Hearing that, while still confident in the claims asserted in the CAC, the risk

and uncertainty of litigating those claims cannot be understated.  Of note, as Class Counsel

acknowledged, is the fact that the government has closed its investigation into the packaged ice

industry without filing further criminal charges against any of the Defendants.  (Fairness Hr'g Tr.

17

10.)  Class Counsel also noted that an important witness from Home City recently passed away and that other witnesses can move away, be lost or meet a similar fate.  (Fairness Hr'g Tr. 11.)  Also significant in this case are questions surrounding the continued financial health of the Defendants and the specter of possible bankruptcies.  (*Id*.)  The Court concludes that consideration of this factor weighs in favor of final approval of the Settlement Agreement.

### 2.    The complexity, expense and likely duration of the litigation favor approval.

"[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."  *In Re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 523 (E.D. Mich. 2003). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *Id*.  Although reluctant to disclose their analysis of the risks of litigation because of their pending action against the remaining non-settling Defendants, Plaintiffs concede that an antitrust litigation of this scope has great complexity and undeniable inherent risks, such as whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages.  These risks are wholly eliminated with respect to a recovery from Home City and the Settlement Agreement provides Plaintiffs with a sum certain recovery and cooperation against the non-settling Defendants which could bear substantial fruit.

Plaintiffs also point to the fact that risk of the Settlement Class receiving little or nothing if the litigation continues and trial expenses mount, due to the financial health of all of the Defendants, including Home City, is a significant consideration.  Plaintiffs point out that Home City has paid $22.5 million as a result of the antitrust claims, including the $13.5 million settlement amount paid

into escrow.  This amount does not include the costs of its criminal and civil counsel and any settlements or judgments that might result from the pending litigations.  Plaintiffs also note that Arctic Glacier and Reddy Ice face financial hurdles, with high debt and significantly decreased stock prices since the inception of the Packaged Ice investigations and litigation.  (Pls.' Mot. for Final Approval, 11 n. 5.)

This factor weighs in favor of final approval, given the real possibility that Plaintiffs could ultimately be left with nothing at all.  *Sheick v. Automotive Component Carrier, LLC.*, No. 09-14429, 2010 WL 4136958 at *18 (E.D. Mich. Oct. 18, 2010) (finding that the potential that a full blown trial might leave plaintiffs with "absolutely nothing" was a significant factor favoring final approval).

### 3.    The opinions of class counsel and class representatives.

The Court appointed Kohn, Swift & Graf, P.C. as Interim Lead counsel and Gurewitz & Raben, PLLC as interim liaison counsel after thorough review of the credentials and abilities which are discussed in greater detail in the Court's June 1, 2009 Opinion and Order Appointing Interim Class Counsel and also appointed both firms as Class Counsel in its Opinion and Order preliminarily approving the Home City Settlement Class.  (Dkt. Nos. 175, 285.)  Class Counsel's judgment that settlement is in the best interests of the class "is entitled to significant weight, and supports the fairness of the class settlement."  *Sheick*, 2010 WL 4136958 at * 18 (citation omitted).  Class Counsel represents to the Court that they have negotiated this deal with Home City's counsel at arm's length over a number of months.  Class Counsel believes that the Settlement Agreement constitutes an excellent result.  Class Counsel base their analysis of the fairness of the Settlement Agreement on information provided by Home City counsel, consultation with damage experts, the

guilty pleas by Arctic Glacier and its officers, and the document discovery provided both by Home City and the non-settling Defendants incident to the November, 2010 deposition of Keith Corbin, and the deposition of Mr. Corbin itself.

4.       **The amount of discovery conducted to date in the multi-district litigation.**

The Settlement Agreement with Home City comes at an early stage of the multi-district antitrust litigation, in fact before class certification and before the initiation of discovery in earnest. While the parties have proceeded with document discovery, written discovery and depositions were stayed by the Court pending class certification.  (Dkt. No. 296, Case Management Order No. 2.) However, as the Court noted in its Opinion and Order preliminarily approving the Home City settlement, "the contours of this litigation are not a mystery and are informed by government investigations, internal corporate investigations that have been made public, state attorney general investigations, the related securities and whistleblower cases and importantly Plaintiffs' counsels' discussions with Home City's counsel in the course of their arms length negotiations."  *In re Packaged Ice Antitrust Litig.*, No. 08-01962, 2010 WL 3070161, at * 6 (E.D. Mich. Aug. 2, 2010) (citing *Newby v. Enron Corp.*, 394 F.3d 296, 306 (6th Cir. 2004) ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.")).  *See also Sheick*, 2010 WL 4136958 at * 19 n. 3 (noting that "courts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions.") (quoting *Newby*, 394 F.3d at 306 ("Formal discovery [is not] a necessary ticket to the bargaining table")).  Moreover, Plaintiffs have now had the opportunity to depose Keith Corbin, an alleged major player in the market allocation scheme, and to examine documents that were produced in advance of Mr. Corbin's

deposition.  Class Counsel represents that their evaluation of the reasonableness of the Settlement

Agreement with Home City has not changed as a result of that deposition.

Class Counsel has been provided information by Home City's attorneys in the process of

negotiations and in consultation with outside experts that have led Class Counsel to the conclusion

that this settlement is in the best interests of the Settlement Class.  Particularly where, as here, there

is the potential for a significant benefit to the Settlement Class in the form of cooperation on the part

of the settling Defendant, the absence of extensive discovery does not weigh against final approval

of the Settlement Agreement.

### 5. The reaction of absent Class Members.

A distribution plan for the $13.5 million settlement amount has not been finalized but Class

Counsel anticipate that the Settlement Funds will be distributed among the Settlement Class

Members pro-rata, based on the dollar amount of their purchases of Packaged Ice during the

Settlement Class Period.  The reaction of the Settlement Class members weighs in favor of final

approval.  Only 19 (nineteen) of the 264,762 Settlement Class Members who were sent notice have

requested exclusion and none of the Settlement Class Members has filed an objection.  According

to Class Counsel, the opt-out percentage is minuscule.  (Pls.' Mot. for Final Approval, 13.)

"[U]nanimous approval of the proposed settlement [] by the class members is entitled to nearly

dispositive weight in the court's evaluation of the proposed settlement."  *Linerboard*, 321 F. Supp.

2d at 629.

The Court recognizes that in certain circumstances, the absence of objections can speak more

to the lack of sophistication of the class members than to the fairness of the settlement.  However,

Class Counsel informed the Court at the Fairness Hearing that while the Settlement Class includes

a number of smaller entities, it also includes a number of fairly large entities (some "Fortune 100, 50 and 20" companies -- including large retail chains, large energy companies) all of whom opted to remain in the Settlement Class and did not object to the Settlement Agreement.  (Fairness Hr'g Tr. 7-8.)

>        **6.      The risk of fraud or collusion.**

"Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."  *Ford*, 2006 WL 1984363 at * 26.  There is no evidence or even an allegation in this case of any collusion between Class Counsel on the one hand and the Graydon Head law firm or any of the parties to the negotiations and all are presumed to have acted in good faith.   This factor weighs in favor of final approval.

>        **7.      The public interest.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem*, 219 F.R.D. at 530.  There do not appear to the Court to be any countervailing public interests that would suggest that the Court should disapprove the Settlement Agreement and significantly no one has come forward to suggest one to the Court.  This factor weighs in favor of final approval.

>        **E.      The Court Authorizes the Expenditure of Up To $750,000 of the Settlement Fund for Costs and Expenses Reasonably Incurred in Continued Prosecution of this Litigation**

As set forth in their Motion for Preliminary Approval of the Home City Settlement, and as explained in the Notice to Class Members, Plaintiffs have moved the Court to authorize Class Counsel to utilize up to $750,000 of the Settlement Fund to pay expenses incurred in the litigation

going forward. (Dkt. No. 310.) The Settlement Agreement provides that Class Counsel intends to seek an order from the Court permitting the expenditure of up to $750,000 from the Settlement Fund for costs and expenses incurred in prosecuting the claims against the remaining non-settling Defendants. (Settlement Agreement ¶ 26.) Significantly, it appears that none of the Class Members has objected to this, or any other, provision of the Settlement Agreement. Such requests are not unusual, as evidence by a number of cases collected by Plaintiffs in their motion for approval of the use of Settlement Funds. (Dkt. No. 310.) *See In re Linerboard Antitrust Litig*., 292 F. Supp. 2d at 643 (noting that a partial settlement "provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *In re Corrugated Container Antitrust Litig*., 556 F. Supp. 1117, 1146 (S.D. Tex. 1982) ("the non-refundable amount of $187,500 made available to plaintiffs by this settlement provided a substantial sum to help defray plaintiffs' expenses at a time when their trial preparation costs were mounting rapidly"); *In re M.D.C. Holdings Sec. Litig*., No. CV89-0090, 1990 WL 454747 at * 10 n. 10 (S.D. Cal. Aug. 30, 1990) (noting that the establishment in the stipulated settlement of a $1 million fund to pay expenses likely to be incurred in prosecuting the action against the non-settling defendants insures adequate funding "for the vigorous prosecution of the case for the class" and is "of obvious benefit to the class"); *Newby,* 394 F.3d at 302-303 (affirming an order providing for establishment of a $15 million litigation expense fund form the proceeds of a partial settlement); *In re Brand Name Prescription Drugs Antitrust Litig*., No. 94 cv 897, MDL 997 (N.D. Ill. Feb. 18, 1998) (authorizing disbursement of $6 million from settlement funds to pay anticipated trial preparation expenses of class counsel) (Pls.' Mot. for Funds, Ex. 3); *In re WorldCom, Inc. Sec. Litig*., No. 02-CIV-3288, 2004 WL 2591402, at * 22 (S.D.N.Y. Nov. 12, 2004) (authorizing a $5 million fund for continuation of the

litigation against non-settling defendants); *In re Microcrystalline Cellulose Antitrust Litig.*, No. 01-cv-111, MDL No. 1402 (E.D. Pa. June 15, 2005) (granting class counsel's request to use up to $2.5 million of a settlement fund to pay litigation expenses against remaining defendant) (Pls.' Mot. for Funds, Ex. 4); *In re Plastics Additives Antitrust Litig.*, No. 03-cv-2038 (E.D. Pa. Feb. 17, 2006) (permitting lead counsel to withdraw $750,000 of the settlement proceeds for use in paying litigation expenses incurred in further prosecution of the class action) (Pls.' Mot. for Funds, Ex. 5); *High Fructose Corn Syrup Antitrust Litig.*, No. 95-1477, MDL No. 1087 (C.D. Ill. Feb. 15, 1997) (authorizing class counsel to use $500,000 of settlement proceeds for payment of future litigation expenses on behalf of the class) (Pls.' Mot. for Funds, Ex. 6); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426 (E.D. Pa. Oct. 13, 2004) (ordering that $1 million be set aside for payment of expenses incurred in continued prosecution of the claims and administrative expenses of the settlement fund) (Pls.' Mot. for Funds, Ex. 7); *In re Graphite Electrodes Antitrust Litig.*, No. 97-cv-4182 (E.D. Pa. Nov. 20, 2002) (permitting class counsel to use $450,000 from proceeds of partial settlement for future pretrial and trial expenses) (Pls.' Mot. for Funds, Ex. 8).

In addition to the above-cited authorities, the Court notes that there has been no opposition to the request to utilize a portion of the Settlement Funds for ongoing litigation expenses by any party to the litigation or by any Settlement Class Member. Thus, the facts of this case – that the two non-settling Defendants will continue to be in litigation – provides particular support for this request.

The Court, therefore, will authorize Plaintiffs' request for authorization to use up to $750,000 of the $13.5 million Settlement Amount to pay the reasonable expenses incurred in continued prosecution of this action against the non-settling Defendants. The Court imposes on Class Counsel

the obligation to submit to the Court *in camera* every 90 (ninety) days, beginning on the date that Class Counsel establishes a separate escrow account for these funds, an accounting of Settlement Funds withdrawn and expenses incurred, including a detailed explanation of the utilization of the funds withdrawn.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that the Settlement Class meets the certification requirements of Federal Rule of Civil Procedure 23 and the Court finally certifies the Settlement Class for purposes of the Home City Settlement only.  The Court also concludes that the Settlement Agreement is fair, adequate and reasonable and finally approves the terms of the Settlement Agreement.  The Court therefore **GRANTS** Plaintiffs' Motion for Final Approval of Proposed Settlement With Defendant the Home City Ice Company. (Dkt. No. 309.)

The Court further **GRANTS** Plaintiffs' Motion for Authorization to Use a Portion of the Home City Ice Company as Settlement Funds for Litigation Expenses and authorizes Plaintiffs to utilize up to $750,000 of the Settlement Funds for this purpose.  (Dkt. No. 310.)  This authorization of funds is subject to periodic reporting by Class Counsel to the Court *in camera*, beginning on the date that an escrow account for this purpose is created, and continuing every 90 (ninety) days thereafter, of the funds so utilized.

The Court's Final Order and Judgment follow.

### Rule 54(b) Final Order and Judgment as to The Home City Ice Company

The Court, having considered Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendant the Home City Ice Company ("Home City") and having held a final Fairness Hearing on February 10, 2011, and for the reasons stated more fully in the preceding

Opinion and Order, IT IS ORDERED THAT:

1.      The Court has jurisdiction over the subject matter of this action, which Plaintiffs bring under section 1 of the Sherman Act, 15 U.S.C. § 1, pursuant to 15 U.S.C. §§ 15 and 26 and 28 U.S.C. §§ 1331 and 1337.

2.      Terms used in this Final Order and Judgment that are defined in the Settlement Agreement between the Plaintiffs and the Settlement Class on the one hand and Home City on the other dated October 30, 2009, unless otherwise defined herein, have the same meanings in this Final Order and Judgment as in the Settlement Agreement.

3.      The Court finds, as more thoroughly discussed in the preceding Opinion, that the Settlement Agreement was attained following an extensive investigation of the facts and assessment of damages.  It resulted from vigorous arm's-length negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions.

4.      The Court finds, as more thoroughly discussed in the preceding Opinion, that due and adequate notice was provided pursuant to Rule 23 of the Federal Rules of Civil Procedure to all members of the Settlement Class certified in this Final Order and Judgment.  The Notice advised the proposed Settlement Class Members of the pendency of this action and the proposed Settlement Agreement with Home City.  The Notice provided was the best notice practicable under the circumstances and included individual notice by first class mail to all members of the Settlement Class who could be identified through reasonable effort as well as notice published in the national edition of the Wall Street Journal and on the Internet.  The Notice fully complied in all respects with the requirements of Federal Rule of Civil Procedure 23.

5.      The Court finds that notice of the Settlement Agreement was properly provided to

all persons entitled to receive such notice, including the federal and state attorneys general, in full

compliance with the Class Action Fairness Act.

6.     The Court certifies the following Settlement Class (the "Settlement Class"):

> All purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates (including all predecessors thereof) at any time during the period from January 1, 2001 to March 6, 2008. Excluded from the Settlement Class are governmental entities and Defendants, including their parents, subsidiaries, predecessors or successors, and Defendants' co-conspirators.

7.     The Court finds, as discussed more thoroughly in the preceding Opinion, that

certification of the Settlement Class is appropriate because:

> a.     The Settlement Class is so numerous that joinder of all members is impracticable, satisfying the requirement of Rule 23(a)(1);

> b.     There are questions of law or fact common to the Settlement Class, satisfying the requirement of Rule 23(a)(2);

> c.     Alvin's Enterprises, Inc. d/b/a Party King, Suzie's Investments, Inc. d/b/a Checker Drugs and Food, Arkansas Garden Center West, LLC, Arkansas Garden Center North, LLC, Chi-Mar Enterprises, Inc., Kingsway Enterprises, Polly's Food Service, Inc., Kenco, Inc. and Thomas Beverages Co., Inc. d/b/a Thomas Liquors ("Plaintiffs") are appointed Class Representatives for the Settlement Class. Plaintiffs' claims are typical of the claims of the Settlement Class, satisfying the requirement of Rule 23(a)(3);

> d.     The Plaintiffs will fairly and adequately protect the interests of the Settlement Class, satisfying the requirements of Rule 23(a)(4);

> e.     For purposes of settlement only, questions of law or fact common to the members of the Settlement Class predominate over questions affecting only individual members and a class action is superior to other methods available for the fair and efficient adjudication of the controversy, satisfying the

requirements of Rule 23(b)(3).

8.      The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of, the rights of any Defendant other than Home City to contest certification of any other class proposed by Plaintiffs.  The Court's findings in this Final Order and Judgment shall have no effect on the Court's ruling on any motion to certify any class in this litigation and no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify such class.

9.      The court finds that the persons and entities on the schedule attached hereto as Exhibit "A," and no others, have timely requested to be excluded from the Settlement Class and accordingly are not included in or bound by the Final Judgment being entered pursuant to this Order.

10.     The Court finds, as more thoroughly discussed in the preceding Opinion, that the Settlement Agreement is fair, reasonable and adequate and the Settlement Agreement with Home City is hereby approved pursuant to Federal Rule of Civil Procedure 23(e).

11.     All Released Claims (as defined in the Settlement Agreement) of Plaintiffs and the Settlement Class that were asserted against Home City and the other Releasees (as defined in the Settlement Agreement) in the Consolidated Amended Class Action Complaint are dismissed with prejudice, and, except as provided for in the Settlement Agreement, without costs.

12.     Upon the occurrence of the Effective Date of the Settlement Agreement, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, damages, liabilities of any nature, including costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise in nature, that Releasors, or any one of them, ever had, now has, or hereafter can, shall or may have directly,

representatively, derivatively or in any other capacity against the Releasees or any of them, whether known or unknown, suspected or unsuspected, in law or equity, on account of or arising out of or resulting from the purchase of Packaged Ice in the United States during the Class Period or from conduct that occurred prior to the Effective Date of this Settlement Agreement concerning the sale of Packaged Ice in the United States, based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Consolidated Amended Class Action Complaint filed in this Action (including any allegations of collusion among Defendants and/or any other manufacturers of Packaged Ice in the United States relating to the sale of Packaged Ice in the United States), and which arise under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* (the "Released Claims"); provided, however, that nothing herein shall release any claims made by indirect purchasers of Packaged Ice as to their indirect purchases, or any product defect or similar claim between the parties relating to Packaged Ice.

13.     Each member of the Settlement Class shall not, after the Effective Date of the Settlement Agreement, seek to institute, maintain, prosecute or continue or prosecute any suit or action, or collect from or proceed against the Releasees based on the Released Claims.

14.     Home City shall have no obligation for attorneys' fees, costs or expenses, including, but not limited to, expenses of administering and distributing the Settlement fund, which expenses are to be paid out of the Settlement Fund subject to further order of this Court.

15.     This Final Order and Judgment does not settle or compromise any claims by Plaintiffs or the Settlement Class against any other Defendant or person or entity other than the Releasees, and

all rights against any other Defendant or other person or entity are specifically reserved. The sales of packaged ice to members of the Settlement Class by Home City shall remain in this action and shall be part of any joint and several liability against any non-settling Defendant or other person or entity other than the Releasees.

16.     Nothing in this Final Order and Judgment or the Settlement Agreement and no aspect of the Settlement Agreement or negotiation thereof is or shall be deemed or construed to be an admission or concession of any violation of any statute or law or of any liability or wrongdoing by Home City or of the truth of any of the claims or allegations in any of the complaints in the Action or any other pleading, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, other than to enforce the terms of this Final Order and Judgment, or the Settlement Agreement.

17.     The Court further finds that the escrow account described in the Settlement Agreement is a qualified settlement fund ("QSF") pursuant to the Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

18.     The Court authorizes Class Counsel to create a separate escrow account, to which up to $750,000 of the Settlement Funds may be transferred to pay expenses reasonably incurred in the continued prosecution of this litigation. Class Counsel shall inform the Court when such an account has been established and shall submit to the Court *in camera* periodic reports (every 90 (ninety) days beginning on the day on which the account is established) disclosing the amount of any funds transferred to the account and detailing the expenses paid with the funds transferred.

19.     Without affecting the finality of this Final Order and Judgment, the Court retains jurisdiction for the purposes of, among other things, implementing and enforcing the Settlement

Agreement, entering any Orders or conducting any hearings in connection with any final plan of distribution or claims submission process, overseeing and receiving periodic reporting on the utilization of Settlement Funds by Class Counsel for expenses reasonably incurred in the prosecution of this litigation as authorized in this Final Order and Judgment and any other matters that may arise in connection with the effectuation of the Settlement Agreement.

20.   The court expressly finds, pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and expressly directs entry of Final Judgment as to Home City.

IT IS SO ORDERED.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 22, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 22, 2011.


S/Denise Goodine
Case Manager

EXHIBIT A

RD Supermarket

Blue River Inn

Ice House Inc.

Midwest Laboratories, Inc.

American Business Women's Association

Veronica Gibbons

Midlake Trading Posts

The Harbor Club at Teet's Landing

Margaret Rowley

Aldo's Deli and Supermarket

Carniceria El Tio, LLC

LLB Liquors, Inc.

Koch Engineering Company, Inc.

Koch-Glitsch, Inc.

KGI, Inc.

KG Holding, LLC

F.A. Sims Oil Co.

Conocco Phillips

Sunshine Acres Family Farm