# Exhibit B

# KOHN, SWIFT & GRAF, P.C.

ONE SOUTH BROAD STREET, SUITE 2100
PHILADELPHIA, PENNSYLVANIA 19107-3304

JOSEPH C. KOHN
ROBERT A. SWIFT
GEORGE W. CRONER
ROBERT J. LAROCCA
DENIS F. SHEILS †◊
DOUGLAS A. ABRAHAMS ▲
WILLIAM E. HOESE
STEVEN M. STEINGARD ✦
STEPHEN H. SCHWARTZ †
CRAIG W. HILLWIG
ELKAN M. KATZ
CHRISTINA D. SALER ▲
NEIL L. GLAZER †
JARED G. SOLOMON
BARBARA L. MOYER †

(215) 238-1700
TELECOPIER (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
WEB SITE: www.kohnswift.com

E-MAIL: RLAROCCA@KOHNSWIFT.COM

HAROLD E. KOHN
1914-1999

OF COUNSEL
MERLE A. WOLFSON
LISA PALFY KOHN

† ALSO ADMITTED IN NEW YORK
◊ ALSO ADMITTED IN NEVADA
▲ ALSO ADMITTED IN NEW JERSEY

January 24, 2011

*Via Federal Express*

John J. Powers, III
Antitrust Division, Appellate Section
U.S. Department of Justice
Main Justice Building
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001
(202)-514-2414

RE:   In re Packaged Ice Antitrust Litigation, 08-MD-1952 (E.D. Mich. Borman, J.)

Dear Mr. Powers,

Enclosed please find a subpoena for recordings and verbatim transcripts thereof relating to the packaged ice industry. I am told that you are the person at D.O.J. who will be responding to this subpoena.[1]

---

[1] As a threshold matter, this subpoena is being served out of the Eastern District of Michigan, and is returnable in Detroit. The subpoena seeks tapes and transcripts which I believe are located at the DOJ office in Cleveland, Ohio. The straight-line or "as the crow flies" distance from Cleveland to Detroit is approximately 90 miles. *See* http://www.timeanddate.com/worldclock/distances.html?n=77. Courts use this straight line method for purposes of F.R.Civ.P. 45's "100 mile" subpoena range. *See* 9A Wright & Miller, *Fed. Prac. & Proc. Civ. § 2461 (3d ed.)*("Subpoena for Hearing or Trial"), cases at note 5. The Sixth Circuit recently cited this line of cases with approval in *Senzarin v. Abbott Severance Pay Plan for Employees of KOS*, 361 Fed.Appx. 636 n. 3 (6th Cir. Jan. 11, 2010), stating that: "Straight line earth-arc distance provides a reasoned method for calculating the miles between Plaintiff's workload center and her principal residence."

73422

| KOHN, SWIFT & GRAF, P.C. | CONTINUATION SHEET NO. 2 | JOHN J. POWERS III, ESQ.<br>JANUARY 24, 2011 |
|---|---|---|

By way of background, our firm was appointed by Judge Borman as lead counsel for the direct-purchaser plaintiffs ("plaintiffs") in the above-captioned civil antitrust lawsuit, by Order entered June 1, 2009. In that lawsuit, we have alleged collusion among Home City, Arctic Glacier and Reddy Ice to divide territories, allocate customers, and fix prices in the packaged ice industry throughout the United States. (A copy of our operative complaint is enclosed). Judge Borman denied the defendants' motions to dismiss. (A copy of his opinion and order are enclosed). The case is in the discovery phase.

This is an appropriate juncture for plaintiffs to subpoena, and for the United States to produce, certain specified tape recordings sought by the subpoena, and any verbatim transcripts of those recordings in your possession, custody or control, because the D.O.J. criminal investigation has concluded. The case law, as discussed below, holds that in these circumstances the tape recordings should be made available to civil plaintiffs.

### A. Relevance of The Subpoened Recordings and Transcriptions

The subpoenaed recordings are relevant to prove anti-competitive conduct. We have sued, to date, Home City, Arctic Glacier, and Reddy Ice, and under the antitrust laws, each is jointly and severally liable for any combination or conspiracy in which it participated. Evidence of any anti-competitive conduct between or among any of these three defendants will be relevant at that trial. To play for the jury actual telephone calls that were made by, or which mention, officers or employees of these three companies is among the best, most probative, and most persuasive, form of evidence. Many of these tape recordings appear to contain admissions under F.R.Evid. 801.

Second, these tape recordings will assist in proving the geographical scope of the collusion among or between Home City, Arctic Glacier, and/or Reddy Ice. Our complaint alleges that their conduct extends well beyond the geographical areas to which Home City and Arctic entered guilty pleas.

Third, the tape recordings are relevant to forthcoming depositions. We will be deposing individuals who were parties to or mentioned in these recorded conversations, and will use these tape recordings to refresh recollections and as substantive evidence in these depositions.

Fourth, the tape recordings are relevant for impeachment purposes. For example, Mr. Corbin---the only witness deposed to date--- has denied under oath that he ever had the conversation which is described in Ex. A to the subpoena, III A(1).

Fifth, these tape recordings are relevant evidence under F.R.Evid. 404(b).

73422

KOHN, SWIFT & GRAF, P.C.                CONTINUATION SHEET NO. 3                JOHN J. POWERS III, ESQ.
                                                                                                                                                                JANUARY 24, 2011

### B. Support for the DOJ Production

Support for the present production of these recordings and tapes is found in both the internal Department of Justice ("Department") guidelines,[2] and the Department's prior practice as to the lysine, citric acid and high fructose corn syrup tape recordings.

### (1) DOJ Internal Guidelines

With respect to the Department's internal guidelines, 28 U.S.C. §16.26(b), none of the applicable factors favors withholding these recordings. Disclosure of these tape recordings violates no statute or regulation. 28 C.F.R. § 16.26(b)(1, 2). There is no "classified information" on these tapes. 28 C.F.R. § 16.26(b)(3). Disclosure will not reveal a confidential source or informant, 28 C.F.R. §16.26(b)(4), because, as is clear from the attached subpoena, plaintiffs are already aware of the sources. Moreover, the identities of the informants who made certain of the recordings are a matter of public record. Mr. McNulty and Mr. Mowery voluntarily described tape recordings they made for the DOJ in open court at the criminal sentencing of Arctic Glacier. *See U.S. v. Arctic Glacier International, Inc.*, Criminal No. 1:09-cr-149 (S.D. Ohio), February 11, 2010, pp. 35-40. Even the subject matter and content of certain recordings were discussed during the hearing. There will be no interference with enforcement proceedings, 28 C.F.R. §16.26(b)(5), as the DOJ criminal investigation in the packaged ice industry is completed. Nor will production of the tapes "disclose investigative techniques and procedures" as to "impair[]" the "effectiveness" of the techniques and procedures by which the tapes were made. 28 C.F.R. § 16.26(b)(5). Finally, disclosure of the tapes will not reveal trade secrets. 28 C.F.R. § 16.26(b)(6).

Even if there were any concerns (and there is not) under 28 C.F.R. 16.26(b)(1-6), those concerns would be outweighed here by the factors identified in 28 C.F.R. § 16.26(c). The violation is serious. 28 C.F.R. § 16.26(c)(1). It is a felony, carrying a maximum penalty of 10 years imprisonment. *See* 15 U.S.C. § 1. Arctic Glacier and Home City both admitted to criminal violations of the antitrust laws for an extensive past period of time. 28 C.F.R. §16.26(c)(2). The relief sought and the issues presented in the *Packaged Ice* action are important. 28 C.F.R. § 16.26(c)(3, 4). *In re Packaged Ice Antitrust* is a private civil action that is brought under section 4 of the Clayton Act, 15 U.S.C. § 15, which authorizes those injured by antitrust violations to seek redress from antitrust violators since 1914. Courts have often recognized the importance of these private actions to enforcing United States antitrust laws. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969) (the "purpose of giving private parties treble-damages and injunctive remedies was not merely to provide private relief, but to serve as well the high purpose of enforcing the antitrust laws").

The catchall factor (28 C.F.R. § 16.26(c)(5)) also favors disclosure here. The requesting parties who seek production of these recordings are the victims of the *Packaged Ice* defendants' anticompetitive and unlawful conduct. It is the requestors' interests that are protected by the

---

[2] Plaintiffs recognize that the regulations at 28 C.F.R. § 16.21 et seq. are only meant as guidance for the Department and do not confer substantive rights on any party. *See* 28 C.F.R. § 16.21(d).

73422

antitrust laws that form the basis for both the Department's investigation and Plaintiffs' claims. Plaintiffs are seeking to recover as a result of injuries inflicted by these antitrust violations. Evidence of that unlawful conduct is captured on the subject recordings. The Department has ably prosecuted its case, yielding guilty pleas from two corporate defendants and four individuals. That investigation, civil plaintiffs understand, is now over and no further prosecutions will be brought. It is thus time for the private plaintiffs to play their role in enforcing the antitrust laws and recovering for the violation.

### (2) Fructose, Citric Acid and Lysine CaseLaw

The present facts are on all fours with those in *In re High Fructose Corn Syrup Antitrust Litigation*, MDL 1087, Master File No. 95-1477 (C.D. Ill.). In that case, an informant, Mark Whitacre, recorded conversations relating to price fixing at Archer Daniels Midland Company ("ADM") concerning lysine, citric acid and high fructose corn syrup ("HFCS"). On October 28, 1996, the HFCS plaintiffs subpoenaed the government's tapes and transcripts. On February 26, 1997, on Plaintiffs' motion to compel production, the district court (Michael M. Mihm, C.J.) ordered the Department to produce (1) recordings relating exclusively to lysine and (2) those recordings that had been given to ADM or its counsel (the ADM-select tapes). With respect to the remaining tapes, Judge Mihm held that they were "not to be turned over at this time."

At the time this occurred, the criminal investigation was still on-going as to HFCS. The Department sought and received appellate review under the collateral order doctrine, on the grounds that production while the criminal proceeding was ongoing would violate the governmental "investigatory privilege." The United States Court of Appeals for the Seventh Circuit by Richard Posner, J., reversed the district court's ruling as to the ADM-select tapes and forbore production until after the Department's criminal investigation closed, on the basis of the "investigatory privilege." *See Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997).

Subsequently, the Department confirmed to Plaintiffs that its criminal investigations with respect to citric acid and HFCS had concluded. As a result, on November 24, 1998, Plaintiffs served a new subpoena on the Department. On January 22, 1999, the Department agreed to produce all of the tape recordings. Approximately 200 tapes were produced. This time, Archer Daniels and one of its former employees, intervenor James Randall, attempted to halt plaintiffs' access to the tape recordings (Randall on the basis that the tapes contained embarrassing and irrelevant materials). Judge Posner forcefully rejected these efforts, and held that private antitrust plaintiffs were now entitled to all relevant portions of all tape recordings, for use in discovery and trial:

> [W]e think the plaintiffs are entitled to all the recordings, to use as they see fit except insofar as the district judge may exercise his power under the Federal Rules of Civil Procedure to limit, by protective order or otherwise, such disclosure of the contents of the recordings as may infringe the privacy of parties to the recorded

73422

KOHN, SWIFT & GRAF, P.C.　　　CONTINUATION SHEET NO. 5　　　JOHN J. POWERS III, ESQ.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JANUARY 24, 2011

conversations beyond what the plaintiffs require to prosecute their antitrust case effectively.

*In re High Fructose Corn Syrup Antitrust Litigation,* 216 F.3d 621, 624 (7th Cir. 2000).

Please telephone, email, or write if you have any questions concerning this subpoena.

Sincerely,

Robert J. LaRocca

Cc:　Harold Gurewitz, Esq. (co-counsel for direct action plaintiffs) (with subpoena enclosed)
　　　David H. Bamberger, Esq. (counsel for Reddy Ice) (with subpoena enclosed)
　　　James R. Nelson, Esq. (counsel for Reddy Ice) (with subpoena enclosed)
　　　Paula W. Render, Esq. (counsel for Arctic Glacier) (with subpoena enclosed)
　　　John M. Majoras, Esq. (counsel for Arctic Glacier) (with subpoena enclosed)
　　　Michael A. Roberts, Esq. (counsel for Home City) (with subpoena enclosed)
　　　Kevin C. Culum, Esq. (DOJ antitrust criminal division) (with enclosures)

73422

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

| Eastern | DISTRICT OF | Michigan |
|---|---|---|

| In Re Packaged Ice Antitrust Litigation | **SUBPOENA IN A CIVIL CASE** |
|---|---|
| This document relates to All Direct Purchaser Actions | Case Number:[1] 08-MD-01952 |

TO: John J. Powers, III, Antitrust Division
U.S. Department of Justice, Main Justice Building
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Those documents set forth in Exhibit A hereto.

| PLACE | DATE AND TIME |
|---|---|
| GUREWITZ & RABEN, PLLC, 333 West Fort Street, Suite 1100, Detroit, MI 48226 | 2/23/2011 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Robert LaRocca* | 1/24/2011 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert J. LaRocca, Kohn, Swift & Graf, P.C., One S. Broad St., Ste. 2100, Philadelphia, PA 19107, (215) 238-1700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

# EXHIBIT A

## I. Definitions:

"**Recordings of conversations**" means any electronic storage of a conversation or communication between two or more persons, as more specifically detailed below, whether, at the time of the conversation or communication they were speaking on land-line telephones, mobile cellphones, computers, or in person, and regardless the means and medium used to electronically record and preserve the communication.

"**Verbatim Transcription**" means any written transcription of any "Recording of Conversation" as defined above.

"**Home City**" refers to Home City Ice Company, a privately-held Ohio corporation that makes and sells packaged ice located at 6045 Bridgetown Rd., Cincinnati, Ohio.

"**Arctic Glacier**" refers to related companies: "Arctic Glacier Income Fund", a mutual fund trust under Canadian law located at 625 Henry Ave., Winnipeg, Manitoba, Canada; "Arctic Glacier, Inc." a wholly owned subsidiary of Arctic Glacier Income Fund, at the same address; "Arctic Glacier International, Inc.", a wholly-owned subsidiary of Arctic Glacier, Inc., which is a Delaware Corporation with its principal place of business at 1654 Marthaler Lane, West St. Paul, Minnesota. "Arctic Glacier" makes and sells packaged ice.

"**Reddy Ice**" refers to related companies: "Reddy Ice Holdings, Inc.", a Delaware corporation with its principal place of business at 8750 North Central Expressway, Suite 1800, Dallas, TX, 75231; and Reddy Ice Corporation, a wholly-owned subsidiary of Holdings, at the same address. "Reddy Ice" makes and sells packaged ice.

"**Affiliated with**" means being an officer, director, employee, or agent.

73426

II. Instructions:

For each recording and transcription described below, the entire recording and transcription is sought by this subpoena.

III. Description of Recordings of Conversations, and any verbatim transcriptions thereof, sought by this subpoena:

A. The following recordings of conversations in which a present or former officer, director, or employee of Home City Ice was one of the participants:

1. The recording of 9/25/07 between Keith Corbin of Arctic Glacier and Ted Sedler of Home City in which, inter alia, they discussed settling issues with Ben Key of Reddy Ice and discussed dividing territories with Reddy Ice in Texas, Kansas or Oklahoma.

2. The recording of 8/17/07 in which Greg Cooley of Arctic Glacier said that Arctic Glacier and Reddy Ice have worked together and co-existed in Texas.

3. The recording of 11/17/07 in which Greg Snyder of Arctic Glacier explained that he and Ben Key had traded customers in Kansas and that Arctic Glacier and Reddy had allocated territories after acquisition of Shepards.

4. The recording of 11/5/07 between Greg Geiser of Home City and Ray Torteriesse in which they confirmed prior meetings with Lou McGuire; indicated that Bob Nagy of Arctic Glacier had pricing conversations with Kerry Chamberlin of Happy Ice; stated that Happy Ice had been causing problems, and that Arctic worked with Holiday Ice to broker peace.

73426

5. The recording of 11/5/07 between Ben Key of Reddy Ice and Ted Sedler of Home City regarding Roanoke, VA.

6. The recording of 12/11/07 between Ted Sedler of Home City and Greg Cooley of Arctic Glacier regarding Lubbock, TX, Carlisle, PA, and Phoenix.

7. The 3 recordings of 2/20/08, 2/22/08 and 2/26/08 between Ted Sedler of Home City and Ben Key of Reddy Ice regarding Tennessee and Kentucky.

8. The recording of 8/24/07 in which Greg Cooley of Arctic Glacier confirmed past practices with Home City's Lou McGuire.

9. The recording of 8/24/07 in which Frank Larson confirms that Arctic Glacier wants to continue working with Home City.

B. Any recording of conversation to which Mr. Martin G. McNulty was one of the parties, and which: (a) the other party to the conversation was at the time, had been, or subsequently became, affiliated with Home City Ice, Arctic Glacier, or Reddy Ice; or (b) the conversation mentioned a person who was at the time, had been, or subsequently became, affiliated with Home City Ice, Arctic Glacier, or Reddy Ice.

C. Any recording of conversation to which Mr. Gary Mowery was a party, and which: (a) the other party to the conversation was at the time, had been, or subsequently became, affiliated with Home City Ice, Arctic Glacier, or Reddy Ice; or (b) the conversation mentioned a person who was at the time, had been, or subsequently became, affiliated with Home City Ice, Arctic Glacier, or Reddy Ice.

73426