UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE PACKAGED ICE ANTITRUST
LITIGATION                                    Case No. 08-md-01952

                                              Paul D. Borman
                                              United States District Judge

INDIRECT PURCHASER ACTION

---

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS THE INDIRECT PURCHASER COMPLAINT

This matter is before the Court on Defendants Reddy Ice Holdings, Inc. and Reddy Ice

Corporation's ("Reddy Ice") Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated

Amended Complaint (Dkt. No. 207) and the joint motion of Defendants The Home City Ice

Company ("Home City") and Arctic Glacier Income Fund, Arctic Glacier Inc. and Arctic Glacier

International, Inc. ("Arctic Glacier") to Dismiss the Indirect Purchaser Plaintiffs' Amended Class

Action Complaint (Dkt. No. 208).  The Indirect Purchaser Plaintiffs filed a joint brief in opposition

to both motions to dismiss.  (Dkt. No. 222.)  Both Reddy Ice (Dkt. No. 230) and Home City and

Arctic Glacier (Dkt. No. 231) filed replies.  The Court held a hearing on March 8, 2011.  For the

reasons that follow, the Court GRANTS IN PART and DENIES IN PART the Defendants' motions

to dismiss.

I.      BACKGROUND

This action is the lead case in the consolidated class action *In Re Packaged Ice Antitrust*

*Litig.*, No. 08-MD-01952.  In this multidistrict litigation involving 68 consolidated actions, Plaintiffs

are both direct purchasers (retail stores and gas stations who purchased from Defendants) and

indirect purchasers (individuals who purchased from retail stores and gas stations) of packaged ice from Defendants in the United States.  In this Opinion and Order, the Court addresses Defendants' motions to dismiss the Indirect Purchasers' Amended Class Action Complaint ("ACAC").

The Indirect Purchaser Plaintiffs ("IP Plaintiffs") allege that Defendants Reddy Ice, Arctic Glacier and Home City conspired to allocate customers and markets throughout the United States, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  The IP Plaintiffs' ACAC seeks injunctive relief under the Clayton Act, 15 U.S.C. § 16, and also seeks compensatory damages (trebled where permitted) as well as punitive, exemplary and statutory damages under the antitrust and consumer protection laws of 30 (thirty) different states, a disgorgement of profits and costs and attorneys' fees.  The IP Plaintiffs also seek class certification pursuant to Federal Rule of Civil Procedure 23.

The Reddy Ice Defendants, and the Arctic Glacier and Home City Defendants now move to dismiss the IP Plaintiffs' ACAC under Federal Rule of Civil Procedure 12(b)(6). Arctic Glacier Income Fund and Arctic Glacier Inc. additionally move for dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

### A.    Procedural Background - The Multidistrict Litigation

In 2008, a Department of Justice ("DOJ") criminal antitrust investigation into the packaged ice industry in the United States surfaced via a search warrant execution and prosecutions.  Multiple civil antitrust actions were subsequently filed against Reddy Ice, Arctic Glacier and Home City**.**  On June 5, 2008, Pursuant to 28 U.S.C. § 1407, the United States Judicial Panel on Multidistrict Litigation ("MDL") transferred all pending and subsequent related civil actions to this District, and ordered that they be assigned to this Court for coordinated or consolidated pretrial proceedings.

(Transfer Order, Dkt. No. 1.)   A total of 68 cases have been transferred and consolidated in accordance with the MDL Order.  (Transfer Order, Conditional Transfer Orders 1-4, Dkt. Nos. 1, 9, 47, 70, 85.)

Of the total cases filed and consolidated, the majority are direct purchaser actions filed by retail stores and gas stations. On July 1, 2010, this Court issued an Opinion and Order denying the Arctic Glacier and Reddy Ice Defendants' motions to dismiss the direct purchaser class action, finding that the complaint stated a plausible claim for relief. *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E. D. Mich. 2010).  On February 22, 2011, this Court granted Final Approval of a Class Action Settlement Agreement between Home City and the direct purchaser plaintiffs.  (Dkt. No. 328.)   A smaller percentage of the MDL cases, indirect purchaser actions, were filed by individuals who purchased packaged ice from retail stores and gas stations.

On March 16, 2009, this Court held a hearing on motions to appoint interim lead counsel for both the direct (eleven motions) and indirect purchaser plaintiffs (two motions). On June 1, 2009, this Court appointed a group comprised of Levitt and Kaiser, the Law Offices of Max Wild and The Perrin Law Firm as co-lead interim class counsel for the proposed Indirect Purchaser class. (Dkt. No. 175.)   On July 17, 2009, the Court entered Case Management Order No. 1, directing the IP Plaintiffs to file a Consolidated Amended Complaint, setting forth deadlines for answering, moving or otherwise responding to the Consolidated Amended Complaint and for responding to any motions. (Dkt. No. 185.) On September 15, 2009, the IP Plaintiffs filed their ACAC. (Dkt. No. 199.) On November 23, 2009 the Reddy Ice Defendants ("Reddy Ice Mot./Br.") and the Arctic Glacier and Home City Defendants ("AG Mot./Br.") filed their motions to dismiss the ACAC.  (Dkt. Nos. 207, 208.)  On December 23, 2009, the IP Plaintiffs filed their combined response in opposition to

the motions to dismiss. (Dkt. No. 222.) On January 22, 2010, Reddy Ice and Arctic Glacier and Home City filed their replies. (Dkt. Nos. 230, 231.)

**B. Factual Allegations**

**1. The Parties and the Claims**

Taking as true for purposes of this motion to dismiss the well-pleaded allegations of the IP Plaintiffs' September 15, 2009 ACAC, the following factual matters are established.[1] The named IP Plaintiffs and their state citizenship are: Linda Desmond and James Feeney (CA); Ron Miastkowski (FL); Perry Peka (IN); Lawrence J. Acker, Patrick Simasko and Wayne Stanford (MI); Brian W. Buttars (NY); Ainello Mancusi (a resident alien). The ACAC was filed approximately 18 months ago.

The ACAC alleges the following claims: Count I - Section 1 of the Sherman Act (for injunctive relief only); Count II - Violation of State Statutes (Various Antitrust and Consumer Protection/Deceptive Practices Acts/Consumer Fraud Statutes of 30 states): AZ (Antitrust & Consumer Protection Act); AK (Consumer Protection); CA (Cartwright Act-Antitrust/Restraint of

---

[1] The Defendants state that they adopt by reference, where applicable, and "to spare the Court unnecessary repetition," the arguments made by the Reddy Ice and Arctic Glacier Defendants in their motions to dismiss the direct purchaser complaint. The direct purchaser plaintiffs, in their responsive briefs, referred to related packaged ice litigation before this Court, as do the IP Plaintiffs in their response to the instant motions to dismiss.

In analyzing the allegations in the IP Plaintiffs' ACAC for purposes of this motion to dismiss, the Court takes judicial notice of allegations made in the Complaints filed in this Court in two related actions: *McNulty v. Reddy Ice Holdings, Inc.*, No. 08-13178 (a whistleblower complaint) and *Chamberlain v. Reddy Ice Holdings, Inc., et al.*, No. 08-13451 (a securities class action complaint). *See Hinds County, Mississippi v. Wachovia Bank, et al.*, 700 F. Supp. 2d 378, 395-396 (S.D.N.Y. March 25, 2010) (court in lead action in multidistrict antitrust litigation taking judicial notice of first amended complaint filed in a related action, recognizing the court's inherent power to rely on matters of public record in deciding a motion to dismiss, citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) and *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000)). The Court notes only that such complaints have been filed and that such allegations have been made.

Trade); DC (Antitrust and Consumer Protection); FL (Consumer Protection); ID (Consumer Protection Act); IA (Antitrust/Competition Law); KS (Antitrust and Consumer Protection); ME (Antitrust And Consumer Protection); MI (Antitrust and Consumer Protection); MN (Antitrust); MS (Antitrust); MT (Antitrust/Unfair Trade Practices and Consumer Protection); NE (Junkin Act-Antitrust, Consumer Protection Act); NV (Antitrust/Unfair Trade Practices); NH (Antitrust, Consumer Protection); NJ (Consumer Fraud); NM (Antitrust and Unfair Trade Practices); NY (Donnelly Act-Antitrust and Consumer Protection/Deceptive Practices); NC (Antitrust and Unfair and Deceptive Practices); ND (Antitrust and Fraud/Misrepresentation Deceptive Practices); PA (Consumer Protection); RI (Consumer Protection); SD (Antitrust and Consumer Protection);TN (Antitrust); UT (Consumer Protection); VT (Consumer Protection); WV (Antitrust); WI (Antitrust) WY (Antitrust);  Count III - Unjust Enrichment nationwide (no state statutes specified).[2]

---

[2] On February 28, 2011, more than a year after the IP Plaintiffs filed their response to Defendants' motions to dismiss, less than ten (10) days prior to the hearing on this matter, and after the Defendants and the Court had spent countless hours analyzing the IP Plaintiffs' claims under each of the states' laws under which claims were asserted in the ACAC, the IP Plaintiffs filed a "Notice of Withdrawal of Certain Claims," seeking to "withdraw without prejudice" several of their state law statutory claims. (Dkt. No. 330.)  The Court finds that the IP Plaintiffs' tactic of withdrawing these claims at this late stage borders on sanctionable conduct as vexatious litigation in violation of 28 U.S.C. § 1927 and Fed. R. Civ. P. 11(b) and (c).  The Court will not permit the IP Plaintiffs to withdraw those claims which the Court concludes that IP Plaintiffs have standing to bring but that the Court concludes do not sufficiently state a claim on which relief can be granted, i.e. the Michigan and New York consumer protection act claims.  These claims are dismissed with prejudice for the reasons discussed *infra* at pp. 32 to 36.  The Court will permit the IP Plaintiffs to withdraw other claims.

Similarly unacceptable were IP Plaintiffs' counsel's efforts at the hearing on March 8, 2011 to "on the fly" in effect attempt to amend the ACAC by withdrawing "any consumer protection act claim where deception is an element," and to limit IP Plaintiffs' unjust enrichment claims to those states "where they have asserted a statutory claim."  This Court is ruling on the two motions to dismiss the ACAC that are fully briefed and properly before the Court, and dismissing the majority of the IP Plaintiffs' state law claims – claims as to which the named IP Plaintiffs have no standing to assert.  The Court will not indulge IP Plaintiffs' counsel's improper backdoor attempt to cabin the claims of the ACAC at oral argument; attempting to concede legal issues and ostensibly limit

The ACAC alleges that Reddy Ice is the largest manufacturer and distributor of packaged ice in the United States. According to the ACAC, Reddy Ice has over 80% of its packaged ice sales in territories where it is the leading manufacturer. ACAC ¶ 14. The ACAC alleges that Arctic Glacier is the second largest manufacturer and distributor of packaged ice in the United States. Arctic Glacier is and has been the leading manufacturer and distributor of packaged ice in the territories in which it operates. ACAC ¶ 15. The ACAC alleges that Home City is third largest manufacturer and distributor of packaged ice in the United States with sales that have grown to more than $80 million per year. ACAC ¶ 16.

The IP Plaintiffs define the following proposed class of indirect purchasers: "All persons or other legal entities (excluding governmental entities, defendants, their officers, directors, subsidiaries or affiliates), who purchased packaged ice indirectly in the continental United States (except for the State of Ohio) and the District of Columbia between January 1, 2001 through March 6, 2008." ACAC ¶ 18. The class is believed to number in the millions and the class members complain that they purchased packaged ice at artificially inflated prices because of Defendants' wrongful conduct. ACAC ¶¶ 19-20.

### 2.      The Structure of the Packaged Ice Industry

The structural characteristics of the packaged ice industry are alleged in ¶¶ 24-32 of ACAC. The ACAC complains that direct customers of packaged ice, retailers such as supermarkets, mass merchants and convenience stores, are in a fiercely competitive industry and operate on slim margins with the ability to change prices to their customers frequently and cheaply. They cannot afford to

---

claims, matters which should have been addressed in writing months ago. Instead, the Court and Defendants' counsel were subjected to this clearly improper "meandering" at oral argument.

absorb price increases and remain profitable.  Therefore, they typically pass on entire price increases to their customers, such as the IP Plaintiffs and the class, rapidly after they receive them from manufacturers.  ACAC ¶ 33.

### 3.    Allegations as to the Illegal Market Behavior of the Defendants

According to the ACAC, on June 7, 2008, Thomas E. Sedler, President and Chief Executive Officer of Home City, on behalf of Home City, pled guilty to violating Section 1 of the Sherman Act and swore under oath, before the Honorable Herman J. Weber, United States District Judge of the United States District Court for the Southern District of Ohio (Western Division) that:

> [S]ince 2001, [defendant] participated in a conspiracy among packaged ice producers, the primary purpose of which was to allocate customers and territories of packaged ice sold in southeastern Michigan and the Detroit, Michigan metropolitan area.  In furtherance of the conspiratorial activity, the defendant, through its officers and employees, primarily through its deceased vice president of sales and marketing, engaged in discussions and attended meetings with representatives of other packaged ice producers.  During these discussions and meetings, agreements were reached to allocate customers and territories of packaged ice to be sold in southeastern Michigan and the Detroit, Michigan metropolitan area. ACAC ¶ 34.

The ACAC further alleges that on or about March 4, 2008, a United States Magistrate Judge of the United States District Court for the Northern District of Texas issued a warrant authorizing the Federal Bureau of Investigation to search Reddy Ice's headquarters in Dallas, Texas.  On September 15, 2008, Reddy Ice announced that it had suspended Ben D. Key, the company's executive vice-president of sales and marketing, because the board found that Mr. Key "ha[d] likely violated Company policies and is associated with matters under investigation."  ACAC ¶¶ 35-36. The ACAC also alleges that Arctic Glacier  initiated an internal investigation into allegations regarding an alleged antitrust conspiracy and suspended Frank Larson, Arctic Glacier's Executive Vice President, Operations, and Gary Cooley, Arctic Glacier's Vice President, Sales. ACAC ¶ 37.

The ACAC alleges that in August 2008, Martin G. McNulty filed an action against his former employer, Arctic Glacier, claiming he was fired because he had refused to participate in an antitrust conspiracy among manufacturers of packaged ice. McNulty had been Vice President of Sales at Party Time Ice, which was acquired by Arctic Glacier in late 2004. ACAC ¶ 38. McNulty claims that while employed by Party Time he heard that Party Time and other packaged ice manufacturers were conspiring to allocate markets and fix prices. McNulty's boss at Arctic Glacier, Keith Corbin, told him in January 2005 that Arctic Glacier was conspiring with Reddy Ice and Home City. McNulty claims in his complaint that Geoff Lewandowski - a former colleague of McNulty's - told McNulty that he had spoken to an Arctic Glacier executive and that Arctic Glacier would rehire McNulty if he stopped cooperating with authorities. McNulty further claims that Joseph Riley, President of Tropic Ice (which was later acquired by Arctic Glacier) told him that Arctic Glacier, Home City and Reddy Ice had agreed that none of them would hire him. McNulty claims that Corbin told him that Arctic Glacier had a market allocation agreement with Home City and with Reddy Ice to geographically divide the United States. ACAC ¶¶ 38-41. Following his termination from Arctic Glacier, McNulty informed the federal government of the collusion in the packaged ice industry and began working with the DOJ and the FBI. When McNulty began looking for work in 2005, he was unable to find employment because, he was informed by Joseph Riley, he had been blackballed in the industry. ACAC ¶¶ 42-43.

With regard to the business practices of the Defendants, the ACAC alleges that over the last several years, Arctic Glacier, Reddy Ice and Home City have grown through acquisitions and in doing so have agreed not to compete in their areas of expansion. According to the allegations of the ACAC, Arctic Glacier initially began entry into Reddy Ice and Home City territories in 1997 and

shortly thereafter agreed that the three would not compete with each other in certain agreed upon territories.  According to the ACAC, Reddy Ice agreed that Arctic Glacier could have California and that Reddy Ice could have Nevada.  However, the ACAC alleges, in 2001 Reddy Ice withdrew from California, a market that had been profitable for it, and Arctic Glacier acquired six companies and expanded fully into California. By 2002 Arctic Glacier, who had a significant presence in Oklahoma and New Mexico, stopped competing in these two markets although it retained a production and distribution facility in the bordering states of Kansas and Texas.  According the ACAC, the Defendants do not sell packaged ice in overlapping territories to this day, which would only be economically rational behavior if the firms had agreed to not compete throughout the country. ACAC ¶¶ 44-51.

The ACAC alleges that beginning in about January 1, 2001, the prices that direct purchasers have paid defendants for packaged ice have increased each year at a rate that cannot be explained by increased manufacturing costs.  Reddy Ice has conceded that it EBITDA (earnings before interest, taxes, depreciation and amortization) has grown "substantially faster than revenue."  The ACAC alleges that Defendants obtained significant excess capacity during the class period and were able to increase prices greater than their marginal costs because of the conspiracy and agreements not to compete. ACAC ¶¶ 52-53.

The ACAC also alleges that Defendants memberships in several trade associations, in particular the International Packaged Ice Association ("IPIA") of which Ben Key served as chairman of the executive committee, facilitated opportunities to conspire.  The board for the IPIA included executives from Reddy Ice and Arctic Glacier and Thomas Sedler of Home City sat on the IPIA's marketing committee.  The IPIA holds regular meetings throughout the year.  ACAC ¶¶ 54-55.

4.      **Allegations of Injury to the Class**

The ACAC alleges that price competition has been restrained, suppressed or eliminated in every state in the continental United States and the District of Columbia, the price of packaged ice has been raised, fixed, maintained or stabilized at supra-competitive levels in each and every state and the District of Columbia, indirect purchasers of packaged ice have been deprived of free and open competition for the sale of packaged ice in each and every state and the District of Columbia. The ACAC alleges that the IP Plaintiffs paid more for packaged ice than they would have paid absent a conspiracy.  ACAC ¶¶56-57.

The ACAC also alleges that Defendants' conspiracy was inherently self-concealing and that Defendants also undertook affirmative acts of concealment including attending secret meetings and engaging in secret conversations.  The ACAC alleges that the Defendants issued or caused to be issued public statements which falsely attributed the price increases for packaged ice to factors other than the illegal market allocation scheme among the Defendants. These statements were directed to consumers (including plaintiffs and the class) in each and every state in the United States and the District of Columbia.  The ACAC alleges that this information could not have been discovered before news of the search warrant execution on Reddy Ice became publicly known on or about March 5, 2008.

The IP Plaintiffs request the following relief:  (1) Class Certification; (2) an Injunction preventing Defendants from continuing to implement their unlawful agreement; (3) Compensatory Damages under state statutes, trebled where permitted; (4) Punitive, exemplary, statutory under state statutes as permitted; (5) Disgorgement of profits; (6) Pre and post judgment interest; (7) Reasonable costs and attorneys fees.

## II.      STANDARDS OF REVIEW

### A.      Federal Rule of Civil Procedure 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state

a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6),

a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations

as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487

F.3d 471, 476 (6th Cir. 2007).   But the court "need not accept as true legal conclusions or

unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir.

2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State*

*of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that

"a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 555

(internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient

factual allegations that make the asserted claim plausible on its face.  *Id*. at 570.  The Supreme Court

clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic
> Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The
> plausibility standard is not akin to a "probability requirement," but it asks for more
> than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
> *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50.  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965).  Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted).

### B.      Federal Rule of Civil Procedure 12(b)(2)

Plaintiffs bear the burden of establishing that personal jurisdiction exists.  *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002).  The Court has discretion to make a determination as to the existence of personal jurisdiction without an evidentiary hearing but plaintiff must, by affidavit, set forth specific facts demonstrating that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458-1459 (6th Cir. 1991).   A court must consider the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff.  *Id.* at 1458.  Where there has been no evidentiary hearing, the plaintiff need only present a *prima facie* case in support

of jurisdiction.  *Id.* at 1458.

## III.    ANALYSIS

The Reddy Ice Defendants move to dismiss the IP Plaintiffs' ACAC arguing that: (1) the IP

Plaintiffs' fail to plead their claims of a nationwide conspiracy with the specificity required by *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007); (2) the IP Plaintiffs lack standing to sue under

the laws of states where no named Plaintiff resides; (3) the IP Plaintiffs' state law antitrust,

consumer protection and unjust enrichment claims are barred by or fail to state a claim under the

laws of those jurisdictions.  Arctic Glacier and Home City, in their joint motion to dismiss, make

these same three arguments and Arctic Glacier makes the additional argument that the Court lacks

personal jurisdiction over the Canadian Arctic Glacier Defendants.

### A.    The Threshold Question of Standing

Both Reddy Ice in their motion and Arctic Glacier and Home City in their joint motion argue

that the named IP Plaintiffs lack standing to bring suit under the laws of those states in which they

do not reside.  The named IP Plaintiffs reside in California, Florida, Indiana, Michigan and New

York but bring claims under the antitrust and consumer protection statutes of thirty states, twenty

five in addition to those in which they reside.  The standing inquiry involves two issues: (1) whether

the Court should address the standing issue at this stage of the proceedings or should defer its ruling

on standing issues until after class certification; and (2) if the Court decides to address the standing

issue now, whether the named IP Plaintiffs have standing to assert claims brought under the laws

of states in which they do not reside.

### 1.    The timing of the standing analysis.

Article III standing is a threshold question in every federal case and "determin[es] the power

of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The fact that the IP Plaintiffs seek to proceed with their claims on a class basis does not change the fundamental requirement of standing.  "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20, quoting *Warth*, 422 U.S. at 502).  "It is well settled that, at the outset of litigation, class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer."  *Rosen v. Tennessee Comm'r of Fin. and Admin*., 288 F.3d 918, 928 (6th Cir. 2002) (citing *Warth*, 422 U.S. at 501).

The IP Plaintiffs do not deny their burden of establishing Article III standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The IP Plaintiffs argue, however, that the Court should defer its decision on this important question in the instant case until after the Court has certified a class.  (Pls.' Resp. 10.)  Recognizing that there is a split of authority on the timing of the Article III inquiry in the class action context, the IP Plaintiffs urge the Court to adopt the view of those courts that have held that the issue of class certification is necessarily a "logical antecedent" to the issue of standing.  The Court rejects the IP Plaintiffs' argument and concludes that deferring the standing issue is not always or necessarily "logically antecedent" to the issue of class certification.

Federal courts are split on this issue.  *See generally* Linda S. Mullenix, *Standing and Other Dispositive Motions After Amchem and Ortiz: The Problem of "Logically Antecedent" Inquiries*,

14

2004 Mich. St. L. Rev. 703, 729 (2004).  The United States Court of Appeals for the Sixth Circuit has not ruled on the issue.  Within this district, courts have issued conflicting opinions on the subject.  *Compare Hoving v. Transnation Title Ins. Co*., 545 F. Supp. 2d 662, 668 (E.D. Mich. 2008) (Lawson, J.) (finding that the decision as to class certification is logically antecedent to, and must be decided before, the determination of standing) *with Smith v. Lawyers Title Ins. Co*., No. 07-12124, 2009 WL 514210 at * 3 (E.D. Mich. March 2, 2009) (Murphy, J.) (construing the "logically antecedent" language to permit consideration of standing issues prior to class certification).

Two Supreme Court opinions, *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 831 (1999) and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) are at the heart of the issue.  In *Ortiz*, the Court addressed arguments regarding the Article III standing of members of a global settlement class who petitioners argued had not suffered an injury in fact.  527 U.S. at 831.  The Court determined, in that case, to address class certification issues before addressing questions relating to Article III standing, explaining:

> Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).  But the class certification issues are, as they were in *Amchem*, "logically antecedent" to Article III concerns, 521 U.S., at 612, 117 S. Ct. 2231, and themselves pertain to statutory standing, which may properly be treated before Article III standing, *see Steel Co.*, *supra*, at 92, 118 S. Ct. 1003. Thus the issue about Rule 23 certification should be treated first, "mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints...." *Amchem, supra*, at 612-613, 117 S. Ct. 2231.

527 U.S. at 531.  In *Amchem*, the Court addressed the interplay between Federal Rule of Civil Procedure 23 and class settlements.  The Court also, however, agreed with the Third Circuit's decision not to address challenges to the plaintiffs' Article III standing to assert their claims, finding the class certification issues "dispositive" and therefore "logically antecedent" to issues of standing

in that case.

This Court concludes, as the Ninth Circuit recognized in *Easter v. American West Financial*, 381 F.3d 948 (9th Cir. 1999), that neither *Ortiz* nor *Amchem requires* that Article III standing issues be deferred until a class has been certified.  In *Easter*, the court held that the district court had properly entertained a challenge to class plaintiffs' standing prior to deciding the issue of class certification:

> The district court correctly addressed the issue of standing before it addressed the issue of class certification. Borrowers contend that *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) requires courts to consider class certification before addressing standing issues. Although the court in *Fibreboard* examined class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class.  *Fibreboard* does not require courts to consider class certification before standing. *See id.* at 831, 119 S. Ct. 2295 (noting that a "court must be sure of its own jurisdiction before getting to the merits").

*Easter*, 381 F.3d at 962.

In *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152-156 (E.D. Pa. 2009), the court discussed the Article III standing issue presented in *Amchem* and *Ortiz* in the context of a class action in which, like the case *sub judice*, the named plaintiffs sought to bring claims under the laws of states where no named plaintiffs were located.   The court distinguished both *Amchem* and *Ortiz* as cases involving simultaneous issues of class certification and standing in the context of global settlements and noted that both cases dealt with the standing of absent class members, not the named plaintiffs.  260 F.R.D. at 153-154.  Noting a split among the federal courts on the issue, the court concluded:

> In the midst of this circuit split and the divergence of opinion among district courts as to the application of *Ortiz*, no court explicitly states that *Warth* or *Lewis* has been overturned with respect to named plaintiffs' standing requirements. Those earlier precedents, combined with the constricting language of *Ortiz* and *Amchem* and the

16

unique posture of those global settlement cases, demonstrate that a standing analysis should not be deferred in this case. Every circuit to address the question has agreed that a named plaintiff must have individual standing to pursue a class action claim, including the *Payton* Court. A ruling as to the named plaintiffs' standing depends in no way upon the standing of proposed class members. Thus, the named plaintiffs' standing is not "logically antecedent" to the issue of class certification. By its terms, the *Ortiz* method of avoiding the adjudication of constitutional questions does not apply to this case.

The alternative proposed by the plaintiffs would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union. At the conclusion of that discovery, the plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share. That would present the precise problem that the limitations of standing seek to avoid. The Court will not indulge in the prolonged and expensive implications of the plaintiffs' position only to be faced with the same problem months down the road.

260 F.R.D. at 155.  *In accord*, *In re Checking Account Overdraft Antitrust Litig*., 694 F. Supp. 2d

1302, 1324-1325 (S.D. Fla. 2010) (holding that "there must be a named plaintiff with constitutional

standing to assert each particular claim," and that therefore "Plaintiffs may only assert a state

statutory claim if a named plaintiff resides in that state.");  *In re Potash Antitrust Litig*., 667 F. Supp.

2d 907, 920-923 (N.D. Ill. 2009) (providing a thoughtful discussion of *Amchem* and *Ortiz* and

concluding that neither compelled the court to "postpone an inquiry into the threshold issue of

justiciability," proceeding with a standing analysis and concluding that plaintiffs lacked Article III

standing to assert claims under the laws of states in which no named plaintiff resided); *In re*

*Graphics Processing Units Antitrust Litig*., 527 F. Supp. 2d 1011, 1026-1027 (N.D. Cal 2007) ("*In*

*re GPU*") (finding that *Ortiz* does not require consideration of class certification before standing and

holding that no named plaintiff has standing to bring antitrust claims in those states where no

plaintiff resides); *Ford v. NYLCare Health Plans of the Gulf Coast,* Inc., 301 F.3d 329, 333 n. 2 (5th

Cir. 2002) (noting the limited exception enunciated in *Ortiz* and holding that Article III standing

determination must proceed class certification issues); *Temple v. Circuit City Stores, Inc.*, Nos. 06CVa5303 and 06CV5304, 2007 WL 2790154 at * 8 (E.D.N.Y. Sept. 25, 2007) (declining to postpone the Article III standing issue in an antitrust consumer class action, rejecting plaintiffs' attempt to analogize the case to "the mass-tort global asbestos settlements at issue in *Amchem* and *Ortiz*"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-1107 (N.D. Cal. 2007) (rejecting plaintiffs argument that *Ortiz* required the court to defer ruling on plaintiffs' standing to bring claims in states where they did not reside and finding no Article III standing under the laws of those states); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (addressing Article III standing issues at the pleading stage and noting that "named plaintiffs cannot rely on unidentified persons within those states [in which they do not reside] to state a claim for relief"); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 418-419 (E.D. Pa. 2009) (addressing standing at the pleading stage, prior to a decision on class certification, and concluding that named plaintiffs had standing only in states where they were located); *Smith,* 2009 WL 514210 at * 3 (construing the "logically antecedent" language to permit consideration of standing issues prior to class certification).

The IP Plaintiffs cite a string of cases holding that the issue of class certification may be addressed prior to the threshold issue of standing.[3]  None of these cases is from the Sixth Circuit and

---

[3] *See, e.g. In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579-580 (M.D. Pa. 2009) (holding that *Ortiz* allows a court to defer ruling on Article III standing issues when they are circumscribed by the act of certifying a class and finding postponement of the standing issue appropriate because "the standing issue arises from plaintiffs' attempts to represent the proposed class"); *In re Aftermarket Filters Antitrust Litig.*, MDL 1957, 2009 WL 3754041 at * 5 (N.D. Ill. Nov. 5, 2009) (reading *Ortiz* broadly and finding that "*Ortiz* created an exception, limited to class actions, to the general rule that courts address standing as a threshold matter" and deferring ruling on standing of named plaintiffs to bring claims in states where they do not reside pending class certification); *In re Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*, No. 07-5295, 2008 WL

none is binding on this Court.  This Court chooses to follow what it finds to be the better-reasoned opinions on this issue which recognize and refuse to abandon the fundamental prudential standing requirements of Article III.  *See, e.g.*,  *Easter* and *Wellbutrin*.  The Court concludes that many of those courts that have adopted the "but for" approach, and put off for another day this fundamental inquiry, ignore the limited context in which *Ortiz* and *Amchem* permit the Article III standing analysis to be deferred.  As in *Wellbutrin*, "[t]his case does not present an issue that is "logically antecedent" to a standing inquiry. The standing issue in *Ortiz* and *Amchem* related to proposed class members, i.e., persons who were not yet parties to the case. It would be illogical to find that a non-party lacks standing to pursue a claim precisely because they are not pursuing a claim. Thus, the question of whether the proposed class members could become parties to the case was logically antecedent to the question of whether they had standing to make claims against the defendants in those cases. In this case, however, the Court reviews the standing of actual, not proposed, plaintiffs." *Wellbutrin*, 260 F.3d at 154. In cases such as the instant case, where the putative plaintiffs' injury

---

3833577 at * 8-9 (D.N.J. Aug. 13, 2008) (holding that the *Ortiz* exception applied because "the issue of whether SMW, the class action plaintiff, could pursue various state law antitrust claims on behalf of the putative class would not exist but for the fact that SMW has filed these claims on behalf the class"); *In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730, 2007 WL 1959225 at * 15 (D.N.J. June 29, 2007) (declining to rule on defendants' claim that plaintiffs lacked standing to assert claims in states in which they do not reside or do business, finding that the issue would not arise unless certification was granted and therefore applying the *Ortiz* exception);  *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267-270 (D. Mass. 2004) (applying the "more nuanced approach" favored by the Fifth and Seventh Circuits and holding that the *Ortiz* "logically antecedent" exception applies where class certification creates the jurisdictional issue and deferring the standing challenge as to named plaintiffs' ability to sue under the laws of states in which they do not reside until after class certification, reasoning that defendant only challenged plaintiffs' standing to represent a class of indirect purchasers in 16 different jurisdictions) (citing *Rivera v. Wyeth-Ayerst Labortories*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) and *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2001)); *Hoving*, 545 F. Supp. 2d at 668 (finding that the decision as to class certification is "logically antecedent" to, and must be decided before, the determination of standing).

is in doubt, Article III standing issues should be resolved in the first instance.

> **2.** **The Named IP Plaintiffs Lack Standing to Assert Claims Under the Laws of States in Which They Do Not Reside**

The named IP Plaintiffs in the instant case reside in California, Florida, Indiana, Michigan and New York, yet they assert claims in 26 additional states in which admittedly none of them resides.  To demonstrate standing, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis*, 518 U.S. at 347.  As held in the many cases discussed above in which courts have chosen to address the standing issue prior to class certification, named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.  *See, e.g. Wellbutrin XL*, 260 F.R.D. at 156; *In re Checking Account Overdraft*, 694 F. Supp. 2d at 1325; *In re Potash*, 667 F. Supp. 2d at 923; *In re GPU*, 527 F. Supp. 2d at 1027; *In re Ditropan*, 529 F. Supp. 2d at 1107; *In re Terazosin*, 160 F. Supp. 2d at 1371; *In re Flonase*, 610 F. Supp. 2d at 419; *Temple*, 2007 WL 2790154 at * 8; *Smith*, 2009 WL 514210 at * 3. *See also Cornelius v. Fidelity Nat'l Title Co*., No. 08-754, 2009 WL 596585 at * 9 (D. Wash. March 9, 2009) (holding that plaintiffs who do not allege that they suffered the invasion of a legally protected interest under the laws of any state other than Washington did not have standing to represent unnamed out-of-state plaintiffs: "The 'out of state [Consumer Protection Act]' claims of this Complaint do little more than name the preserve on which Plaintiffs intend to hunt.") (internal quotation marks and citation omitted); *In re Actimmune Marketing Litig*., No. 08-02376, 2009 WL 3740648 at * 17 (N.D. Cal. Nov. 6, 2009) (dismissing plaintiffs' claims brought under the consumer protection statutes in states where they do not have a representative plaintiff residing); *In re Flash Memory Antitrust Litig*., 643 F. Supp. 2d 1133, 1163-

1164 (N.D. Cal. 2009) (where representative plaintiff lacking from a state, claims based on that state's laws must be dismissed); *In re GPU*, 527 F. Supp. 2d at 1027 (same).

The IP Plaintiffs do not appear to seriously contest the injury requirement (although they urge the Court to defer ruling on it, along with Article III standing, until after class certification) but attempt to distinguish these cases by arguing that the ACAC does in fact assert injury in each and every state whose laws they seek to invoke with the following single paragraph in their Complaint: "Plaintiffs purchased packaged ice indirectly from one or more of the defendants at retail establishments throughout the United States, including but not limited to their home states." (Compl. ¶ 13; Pls.' Resp. 10).

The Court concludes that this sole allegation, stated in a conclusory manner in paragraph 13 of the ACAC, cannot withstand a *Twombly* challenge to the sufficiency of the allegations of injury suffered by these IP Plaintiffs in states other than their home states. These named IP Plaintiffs apparently would have the Court infer that they roved the United States during the class period, purchasing packaged ice along the way, covering among them each of the 30 states whose laws they seek to invoke in their claims. This is simply not plausible. The allegation on which they rely – "including but not limited to their home states" – gives no suggestion in which of the states, other than their home states, they might have made such purchases. There simply is not enough factual matter asserted regarding injury allegedly suffered by these IP Plaintiffs in their non-home states to plausibly suggest a viable claim in those states.

In the absence of such an allegation as to each and every state whose laws they seek to invoke, the IP Plaintiffs lack standing in states other than their "home states." In *In re Wellbutrin*, the court addressed this issue, concluding that plaintiffs residing in one state may not, absent

allegations of individual injury in those states, assert the rights of unidentified plaintiffs in other

states:

> The allegations of injury are described above. These allegations present no facts that would connect injuries specific to the plaintiffs, as opposed to injuries against competitors and purchasers nationwide, to any cause arising in states where no named plaintiff is located and where no member of a named plaintiff purchased Wellbutrin XL. The amended complaint, therefore, provides no facts on which to find a connection between an alleged injury and some wrongful conduct that would implicate the laws of those states in which no plaintiff, or any of their reimbursed members, resides.

> Despite this lack of facts demonstrating injury, causation and redressability, the plaintiffs argue that they may properly assert claims of proposed class members who were injured in those states regardless of their own standing to assert the same claims. This is essentially a recasting of the argument that the Court need not make a determination of the parties' standing at this stage of the litigation.

260 F.R.D. at 157.

The IP Plaintiffs simply cannot establish the necessary "connection" through the conclusory allegation that they purchased ice in a number of non-specified states in which admittedly they do not reside.  This allegation fails to "nudge" their claims of injury in the states in which they do not reside from "conceivable" to "plausible."  *Twombly*, 550 U.S. at 570.  The Court agrees with Defendants that this "oblique suggestion" is "formulaic" and insufficient to plausibly suggest that the named IP Plaintiffs suffered injuries in those states.  (AG Br. at 8.)  The IP Plaintiffs' claims under the antitrust and consumer protection act claims of states in which they do not reside do "little more than name the preserve on which they intend to hunt."   *Cornelius*, 2009 WL 596585 at * 10.  While their reference to injury suffered "in their home states" may be sufficient as to the states in which they reside, appending the phrase "not limited to" does not win them the day as to the remaining 26 states, none of which the IP Plaintiffs mention by name in their injury allegations in the ACAC.  The ACAC simply fails to name plaintiffs who have suffered the injuries giving rise to

claims under the laws of any of the states in which the named Plaintiffs do not reside.  The current Plaintiffs have no standing to bring those claims.

The IP Plaintiffs' claims under the laws of the states of Arizona, Arkansas, District of Columbia, Idaho, Iowa, Kansas, Maine, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin and Wyoming are dismissed.

**B.     The IP Plaintiffs Have Plausibly Plead a Nationwide Conspiracy Under *Twombly***

The Arctic Glacier and Reddy Ice Defendants make the same arguments in the instant motions that they made in their motions to dismiss the direct purchasers' complaint and in fact incorporate their briefs in support of those motions by reference.  For the same reasons that the Court rejected those arguments in denying the motions to dismiss the direct purchaser complaint, it rejects them here and concludes that the IP Plaintiffs have plausibly pled a nationwide conspiracy under *Twombly* and that the indirect purchasers' claims are not subject to dismissal on this basis. *See In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d at 1003-1014 (discussing at length the plausibility, under the pleading requirements of *Twombly,* of the claims of a nationwide conspiracy among the Defendants).

Defendants argue, however, that "much has changed" since this Court denied the Defendants' motions to dismiss the direct purchaser's Complaint on this basis, referring principally to the decision of the Department of Justice to close its investigation into the packaged ice industry without further indictments.  However, the DOJ investigation was but one consideration of many which led this Court to conclude that the direct purchasers had stated a plausible claim of a nationwide conspiracy.  The government's decision not to pursue further criminal charges against

23

any of the Defendants does not substantially alter this Court's conclusion that the civil claims in these related cases are supported by a plausibly pled theory of a nationwide conspiracy. The Court denies Defendants' motions to dismiss the IP Plaintiffs' claims for failure to allege a plausible nationwide conspiracy.

C.    **The Implications of *Shady Grove* on the IP Plaintiffs' Claims in Those States That Prohibit Class Actions Under Their Antitrust and/or Consumer Protection Laws**

Defendants argued in their motions to dismiss that class actions are prohibited under the antitrust laws of Mississippi and New York (Reddy Ice Br. at 6) and under the consumer protection laws of Idaho, Kansas, Montana and Utah (AG Br. at 14). Subsequent to the parties' filing of their original briefs, the Supreme Court decided *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010), and addressed the issue of whether Federal Rule of Civil Procedure 23, which governs class actions, conflicted with N.Y. Civ. P. Law § 901(b), which precludes class actions that seek "penalties" or statutory minimum damages. Plaintiffs in *Shady Grove* filed a putative class action in federal district court to recover statutory interest under New York insurance laws that would have been barred in New York state courts by operation of § 901(b).

Justice Scalia authored an opinion in which Justices Roberts, Thomas and Sotamayor joined. Justice Ginsburg filed the dissenting opinion, in which Justices Kennedy, Breyer and Alito joined. Justice Stevens concurred in the opinion of Justice Scalia thereby creating a 5 Justice majority, but not a majority opinion. Justice Stevens wrote separately to express his opinion that the plurality opinion had erred in focusing solely on the issue of whether § 901(b) regulated procedure. "Justice Scalia believes that the sole Enabling Act question is whether the federal rule 'really regulates procedure,' which means, apparently, whether it regulates 'the manner and the means by which the

litigants' rights are enforced.'  I respectfully disagree."  *Id*. at 1452 (internal citations omitted).

Justice Stevens urged a different approach which would instruct courts to consider whether the federal rule would work to displace a state law that while procedural in title "is so intertwined" with the right or remedy that it defines the scope of the right.  Justice Stevens agreed with the dissent that there are some state procedural rules "that federal courts must apply in diversity cases because they function as part of the State's definition of substantive rights and remedies."  130 S. Ct. at 1445.  Justice Stevens concluded that "an application of a federal rule that effectively abridges, enlarges, or modifies a state-created right or remedy violates" the Rules Enabling Act.  *Id*. at 1451.  Justice Stevens wrote that a federal rule "cannot govern a particular case in which the rule would displace a state right or remedy that is procedural in the ordinary sense of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."  *Id*. at 1452.  "When a state chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice."  *Id*. at 1450.  Justice Stevens agreed, under his suggested analysis, that § 901(b), which appears in New York's procedural code and applies to class actions brought under numerous sources of substantive law, was not so intertwined with a state-created right as to prohibit the application of Fed. R. Civ. P. 23.  *Id*. at 1448.  "The mere fact that a state law is designed as a procedural rule suggests that it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies."  *Id*. at 1457.  Justice Stevens found that the text of § 901(b) "expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State."  *Id*.  Both factors compelled the conclusion that application of Federal Rule of Civil Procedure 23 did not violate the Rules Enabling

Act.

Courts interpreting the *Shady Grove* decision, and searching for guidance on this issue, have concluded that Justice Stevens' concurrence is the controlling opinion by which interpreting courts are bound.  *See McKinney v. Bayer Corp.*, __ F. Supp. 2d __, 2010 WL 3834327 at * 10-11 (N.D. Ohio Sept. 30, 2010) (finding that Justice Stevens' opinion was controlling on the "narrowest grounds rule" which instructs that when no single rule explaining the Court's result obtains the approval of five Justices, the opinion of the Court is that taken by those members who concurred on the narrowest grounds) (citing *Marks v. United States*, 430 U.S. 188, 193 (1977));  *In re Wellbutrin XL Antitrust Litig.*, __ F. Supp. 2d __, 2010 WL 5186052 at * 5 (E.D. Pa. Dec. 22, 2010) (same); *Bearden v. Honeywell Int'l, Inc.*, No. 09-1035, 2010 WL 3239285 at * 10 (M.D. Tenn. Aug. 16, 2010) (same); *In re Whirlpool Corp. Front Loading Washer Prods. Liab. Litig.*, No. 08-65000, 2010 WL 2756947 at * 1-3 (N.D. Ohio July 12, 2010) (same).  *Cf. United States v. Cundiff*, 555 F.3d 200, 208 (6th Cir. 2009) ("the narrowest opinion refers to the one which relies on the least doctrinally far-reaching-common ground among the Justices in the majority: it is the concurring opinion that offers the least change to the law.")).

Thus, after *Shady Grove*, state laws that categorically prohibit the maintenance of class action lawsuits no longer will be an effective bar to such suits if the state law that prohibits them is procedural in nature and is not "so intertwined" with the right or remedy that it defines the scope of the right.  Because the Court has dismissed on standing grounds the IP Plaintiffs' claims in five of the six states in which Defendants claim class actions are barred, i.e. Idaho, Kansas, Mississippi, Montana and Utah, the Court examines only Defendants' claim that class actions are prohibited under New York law.

The IP Plaintiffs claim that Defendants have violated the New York antitrust laws, N.Y. Gen. Bus. Law § 340(1)(A), ("the Donnelly Act").   Defendants respond that New York Civil Practice Rule § 901(b), which prohibits class actions in suits seeking penalties or statutory minimum damages, bars a private litigant from maintaining a class action under the Donnelly Act.  *Cox v. Microsoft Corp.*, 290 A.D.2d 206 (N.Y. App. Div. 2002) (so holding).  Nor, Defendants argue, can the IP Plaintiffs waive the treble damages provision under the Donnelly Act to escape application of the § 901(b) bar.  *Asher v. Abbott Labs.*, 290 A.D.2d 208, 208-209 (1st Dep't 2002) (holding that "private persons cannot bring a class action under the Donnelly Act because the treble damages remedy provided in General Business Law § 340 is a 'penalty' within the meaning of CPLR 901(b), the recovery of which in a class action is not specifically authorized and the imposition of which cannot be waived.").

While Defendants' argument was well taken when their brief was filed, it has since been undermined by the Supreme Court's decision in *Shady Grove*.  Under a *Shady Grove* analysis, the IP Plaintiffs' class action claim asserted in federal court under the New York antitrust laws is no longer barred by § 901(b).  *See In re Wellbutrin*, 2010 WL 5186052 at * 9 (finding that § 901(b) does not survive *Shady Grove* as applied to a class action antitrust claim); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-01819, 2010 WL 3069329 at * 1-3 (N.D. Cal. Aug. 3, 2010) (allowing an amendment after *Shady Grove* to assert a class action claim under the Donnelly Act); *Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline, PLC*, No. 04-5898, 2010 WL 3527601 at * 11 (E.D. Pa. Sept. 7, 2010) (recognizing this and permitting

amendment to add such a claim which it had earlier dismissed).[4]

**D.    The IP Plaintiffs' Florida, Michigan and New York State Law Antitrust and Consumer Protection Claims**

The IP Plaintiffs assert claims under numerous states' antitrust and consumer protection/deceptive trade practices laws.[5]  The Court has dismissed a majority of those claims on the grounds that the named IP Plaintiffs lack Article III standing to assert claims under the laws of those states in which they do not reside or in which they have not plausibly alleged an injury.  *See supra* discussion at pp. 20 to 23.  The Court will address the IP Plaintiffs' state antitrust and consumer protection act claims in those states where named Plaintiffs reside and are plausibly

---

[4] Applying Justice Stevens' approach, several courts have distinguished § 901(b) and have concluded that statutory restrictions on class actions which appear in the very statutes that define the substantive rights at issue survive *Shady Grove* and should continue to be enforced.  *See Bearden,* 2010 WL 3239285 at * 30 (holding that the class-action limitation contained in the Texas Consumer Protection Act is "so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights," distinguishing *Shady Grove* where the limitation was a separate procedural rule); *In re Whirlpool*, 2010 WL 2756947 at * 6-8 (holding that the class action restriction in the Ohio Consumer Protection Act, O.R.C. § 1345.09(B) "is intimately interwoven with the substantive remedies available under the OCSPA" and "[u]nlike the New York rule at issue in *Shady Grove*, [] is not a pan-substantive rule that applies to federal claims or to claims based on other states' laws.").  Although the Court has dismissed the IP Plaintiffs' claims under the laws of Idaho, Kansas and Montana, the Court notes that after *Shady Grove*, class actions would likely continue to be barred in federal court under the statutes at issue in those states.  *See* Kan. Stat. Ann. § 50-634(b) (consumer aggrieved by a violation of the act may recover but not in a class action); Idaho Code § 48-108(2) (indirect purchaser actions may be brought by the attorney general and § 48-113 (limiting private causes of action to persons injured directly or threatened with direct injury)); Mont. Code Ann. § 30-14-133(1).  As these  restrictions on class actions appear in the substantive statutes under which the IP Plaintiffs would claim relief, they are sufficiently "intertwined" with the substantive rights defined in those statutes to survive under a *Shady Grove* analysis.

[5] Both IP Plaintiffs and Defendants group all state consumer protection act claims and deceptive or unfair trade practices claims under the heading of "consumer protection claims."  The Court will do the same.  (Pls.' Resp. 15 n. 9.)

alleged to have suffered injury, i.e. California, Florida, Michigan and New York.[6]

### 1.      The IP Plaintiffs' State Law Antitrust Claims

The IP Plaintiffs have pled state antitrust violations only in California, Michigan and New York (the ACAC does not allege state law antitrust violations in Florida or Indiana, the only other states in which named IP Plaintiffs reside).

### *California*

The IP Plaintiffs allege that Defendants have violated the California antitrust laws, Cal. Bus & Prof. Code §§ 16722 & 16726 ("the Cartwright Act").  Defendants challenge the IP Plaintiffs' Cartwright Act claim only on the grounds (1) that the allegations fail to meet the pleading standards of *Twombly*, and (2) that the claims are barred by the applicable statute of limitations.  Defendants' argument that the state law antitrust claims fail under *Twombly* is an extension of the argument that the ACAC fails to plead the "who, what, when and where" of a plausible antitrust claim.  The Court has already rejected this argument, *see* discussion *supra* at 23-24, and reaches the same conclusion, for the same reasons, with respect to the antitrust claims asserted under the Cartwright Act.  In addition to pleading sufficient facts to plausibly allege a nationwide conspiracy, the ACAC alleges that IP Plaintiff Desmond resides in and purchased packaged ice in California, that as a result of the nationwide conspiracy each of the IP Plaintiffs has suffered injury in that they have paid more for packaged ice than they would have paid absent the conspiracy and that they have thereby suffered an injury.  These facts are sufficient under *Twombly* to sustain the IP Plaintiffs' burden at the pleading stage to plausibly suggest a claim under the Cartwright Act.

---

[6] Named Plaintiff Perry Peka is alleged to be a citizen of the State of Indiana but the IP Plaintiffs have not alleged any claims under the laws of Indiana.

The Court also rejects Defendants' claim that the IP Plaintiffs' Cartwright Act claim is barred by the applicable statute of limitations. *See* discussion *infra* at 41-42. The Court therefore denies Defendants' motions to dismiss the IP Plaintiffs' claims under the Cartwright Act.

### *Michigan*

The IP Plaintiffs allege that Defendants have violated the Michigan Antitrust Reform Act, Mich. Comp. Laws Ann. § 445.772 ("MARA"). Defendants challenge the IP Plaintiffs' MARA claim only on the grounds (1) that the allegations fail to meet the pleading standards of *Twombly*, and (2) that the claims are barred by the applicable statute of limitations. Defendants' argument that the state law antitrust claims fail under *Twombly* is an extension of the argument that the ACAC fails to plead the "who, what, when and where" of a plausible nationwide antitrust claim. The Court has already rejected this argument, *see* discussion *supra* at 23-24, and reaches the same conclusion, for the same reasons, with respect to the antitrust claims asserted under MARA. In addition to pleading sufficient facts to plausibly allege a nationwide conspiracy, the ACAC alleges that IP Plaintiffs Acker, Simasko and Stanford reside in and purchased packaged ice in Michigan, that certain of the individual Defendants pleaded guilty to conspiracy to allocate customers in Southeastern Michigan, that as a result of the nationwide conspiracy each of the IP Plaintiffs have suffered injury in that they have paid more for packaged ice than they would have paid absent the conspiracy and that they have thereby suffered an injury. These facts are sufficient under *Twombly* to sustain the IP Plaintiffs' burden at the pleading stage to plausibly suggest a claim under MARA.

The Court also rejects Defendants' claim that the IP Plaintiffs' MARA claim is barred by the applicable statute of limitations. *See* discussion *infra* at 41-42. The Court therefore denies Defendants' motions to dismiss the IP Plaintiffs' claims under MARA.

### *New York*

The IP Plaintiffs allege that Defendants have violated the New York antitrust laws, N.Y. Gen. Bus. Law § 340(1) ("the Donnelly Act").  Defendants challenge the IP Plaintiffs' Donnelly Act claim on the grounds (1) that the allegations fail to meet the pleading standards of *Twombly*, and (2) that the claims are barred by the applicable statute of limitations.  Defendants' argument that the state law antitrust claims fail under *Twombly* is an extension of the argument that the ACAC fails to plead the "who, what, when and where" of a plausible nationwide antitrust claim.  The Court has already rejected this argument, *see* discussion *supra* at 23-24, and reaches the same conclusion, for the same reasons, with respect to the antitrust claims asserted under the Donnelly Act.  In addition to pleading sufficient facts to plausibly allege a nationwide conspiracy, the ACAC alleges that IP Plaintiff Buttars resides in and purchased packaged ice in New York, that as a result of the nationwide conspiracy each of the IP Plaintiffs has suffered injury in that they have paid more for packaged ice than they would have paid absent the conspiracy and that they have thereby suffered an injury.  These facts are sufficient under *Twombly* to sustain the IP Plaintiffs' burden at the pleading stage to plausibly suggest a claim under the Donnelly Act.

The Court also rejects Defendants' claim that the IP Plaintiffs' Donnelly Act claim is barred by the applicable statute of limitations.  *See* discussion *infra* at 41-42.  The Court therefore denies Defendants' motions to dismiss the IP Plaintiffs' Donnelly Act claim on these bases.

Defendants also argue that the IP Plaintiffs' claim under the Donnelly Act fails to adequately allege intrastate effects.  Several courts have found that the "intrastate effects" requirement is met at the pleading stage by allegations, like those in the instant case, claiming that the anticompetitive conduct caused supracompetitive price effects nationwide.  *See Sheet Metal Workers,* 2010 WL

31

3527601 at * 15 (holding that defendants' lack of intrastate commerce argument was "weak" where plaintiffs alleged that defendants' conduct caused consumers in each named state, including Arizona, to pay more for Wellbutrin and that such allegations were sufficient at the pleading stage to show effect in Arizona); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 412 (D. Del. 2007) (noting that the Delaware act requires plaintiff to allege a connection with the state, but finding this element satisfied by allegations that the putative class members were injured by Intel's alleged conduct throughout the United States and in the District of Columbia and denying defendant's motion to dismiss on this basis); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000)(holding that intrastate effect sufficiently alleged where anticompetitive conduct may have occurred outside the state but the product affected by the anticompetitive conduct came to rest in Tennessee causing injury to citizens who purchased the product at artificially inflated prices as a result of defendant's conduct); *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 196-97 (D. Me. 2004))(holding that allegations that defendants concerted behavior which resulted in increased price of vehicles and which conduct allegedly affected retail prices throughout the country and in every state necessarily had substantial effects in Tennessee where it was reasonable to infer that defendants wholesaled their vehicles to dealers who sold them in Tennessee); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 581 (M.D. Pa. 2009) (alleging a nationwide price fixing scheme that resulted in price increases in Nevada and elsewhere sufficiently alleged intrastate effects). The court in *In re Chocolate*, distinguished *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007), where plaintiffs alleged merely that defendants' activities had "a substantial effect on foreign and interstate commerce" without describing the effects in South Dakota. In *In re Chocolate*, by contrast, the plaintiffs alleged

32

that defendants sold products in South Dakota, suppressed competition in the indirect purchaser states, including South Dakota, and maintained prices at noncompetitive levels throughout the United States, including the indirect purchaser states.  Therefore, the court concluded, the complaint adequately alleged anticompetitive effects in South Dakota.  602 F. Supp. 2d at 581.  The ACAC sets forth facts sufficient at the pleading stage, identifying the state of New York as well as the effect on competition in each of the named Plaintiffs' states, to allege the requisite intrastate effects under the Donnelly Act.  Defendants' intrastate effects argument is not well taken at the pleading stage.  Therefore, the Court denies Defendants' motion to dismiss the IP Plaintiffs' Donnelly Act.

### 2. The IP Plaintiffs' Consumer Protection/Unfair Trade Practices Claims

In essence, Defendants' objections to all of the IP Plaintiffs' consumer protection claims are based on the premise that these consumer-oriented acts seek to prohibit unfair practices aimed directly at consumers in the context of a true consumer transaction, where buyer and seller interact and the seller somehow takes advantage of, or misleads, the buyer through deceptive conduct.  Consequently, Defendants argue, these statutes should not be read to apply to an indirect purchaser claim, where admittedly the purchaser's seller made no such misrepresentations to him in the sale transaction, based upon inflated prices passed on by his seller resulting from some type of underlying antitrust conspiracy.  *Nakajima All Co. v. SL Ventures Corp.*, No. 00C6594, 2001 WL 641415, at * 4 (N. D. Ill. June 4, 2001).  Of the five states where the IP Plaintiffs have standing to sue, they have pled consumer protection claims only in Florida, Michigan and New York.  (The IP Plaintiffs do not allege consumer protection claims under the laws of Indiana or California).

### *Florida*

Defendants argue that to state a claim under the Florida Deceptive and Unfair Trade Practices

Act ("FDUTPA"), Fla. Stat. § 501.204, the allegations must be pled with the particularity required

under Rule 9(b). Defendants rely on *Sunoptic Technologies, LLC v. Integra Luxtec, Inc*., No. 08-cv-

878, 2009 WL 722320 at * 4 (M.D. Fla. Mar. 18, 2009) which dismissed plaintiff's FDUTPA claim

holding that "[l]ike fraud, a claim pursuant to the FDUTPA . . . must meet the heightened pleading

standard under Rule 9(b), Federal Rules of Civil Procedure." *Id*. at * 2 (citing *Wrestlereunion, LLC*

*v. Live Nation Television Holdings, Inc*., 2008 WL 3048859 *3 (M.D. Fla. Aug.4, 2008) (requiring

FDUTPA claims to meet the heightened pleading requirements of Rule 9(b)) and *Fla. Digital*

*Network, Inc. v. N. Telecom, Inc*., 2006 WL 2523163 *5 (M.D. Fla. Aug.30, 2006) (claims pursuant

to FDUTPA must be plead with particularity)). "Particularity requires identifying the representation

of fact and how the representation is false." *Sunoptic*,  2009 WL 722320 at * 3.

While indirect purchasers may sue under the FDUTPA, *see, e.g. Mack v. Bristol-Myers*

*Squibb Co*., 673 So. 2d 100, 102 (Fla. Dist. Ct. App. 1996) and *In re Florida Microsoft Antitrust*

*Litig*., No. 99-27340, 2002 WL 31423620 at * 2-3 (Fla. Cir. Ct. Aug. 26, 2002), nothing relieves an

indirect purchaser suing under the act from the burden of pleading the claim with particularity. In

the instant case, the IP Plaintiffs have pled no facts which would meet the more stringent

requirements of Rule 9(b). The "public statements" are not identified with particularity, nor are they

attributed to any specific Defendant nor does the ACAC allege how the claimed representations were

deceptive and none of the alleged representations are specifically claimed to have occurred in Florida.

The Court dismisses the IP Plaintiffs' Florida consumer protection act claim.

### *Michigan*

Defendants argue that the IP Plaintiffs' claims under the Michigan Consumer Protection Act,

Mich. Comp. Laws 445.903 ("MCPA") must be dismissed for failure to allege an intent to deceive

on the part of the Defendants, relying on *Rodriguez v. Berrybrook Farms, Inc.*, 1990 U.S. Dist. LEXIS 7678 at * 39 (W.D. Mich. June 21, 1990) (holding that "even when a class action is allowed under the MCPA, an intent to deceive on the part of the defendants must be shown"). *See also In re NMV*, 350 F. Supp. 2d at 189 (dismissing plaintiffs' MCPA claims because  the allegations that defendants conspired to prevent less expensive vehicles from entering the Untied States was not among the unlawful practices listed in the MCPA and failed to allege deception as required under the statute).  The ACAC fails to allege such conduct and the Court dismisses the claim for this reason. Moreover, counsel for the IP Plaintiffs informed the Court at the March 8, 2011 hearing on this matter that they are no longer pursuing any claims that rely on allegations of deceptive conduct and that they have withdrawn their MCPA claim.  *See also* Notice of Withdrawal Of Claims, Dkt. No. 330.

Defendants also argue that the MCPA requires that "[c]laims under the MCPA for fraud or mistake must state the circumstances with [the] particularity" required by Rule 9(b)." *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, No. 07-cv-945, 2009 WL 427375 at * 8 (W.D. Mich. Feb. 20, 2009).  When the claim is based on breach of express or implied warranties, these pleading strictures do not apply but otherwise, the allegations must include the specificity required by Fed. R. Civ. P. 9(b).  This is not such a case.

The Court dismisses the IP Plaintiffs' MCPA claim for failure to allege an intent to deceive and for failure to plead fraud with the requisite particularity.


### *New York*

The IP Plaintiffs claim that Defendants have violated New York's consumer protection law,

N.Y. Gen. Bus. Law § 349(a).  To state a consumer protection act claim under New York General Business Law § 349, IP Plaintiffs must establish that the false or deceptive act occurred in New York and was directed at New York consumers.  "To state a claim [under section 349], a plaintiff must allege both a deceptive act or practice and that such act or practice resulted in actual injury to a plaintiff."  *In re Wellbutrin*, 260 F.R.D. at 164 (citing *Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morrise USA Inc.*, 3 N.Y. 3d 200, 785 N.Y.S.2d 399 (2004)).  "To state a claim for deceptive practices under section 349, a plaintiff must allege (1) that the act was consumer oriented (2) that the act was materially misleading and (3) that the plaintiff was injured as a result of the deceptive practice or act."  *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 180 (W.D.N.Y. 2003).

Under § 349, specific allegations of deceptive conduct are essential to state a claim.  A plaintiff is required to plead with specificity the allegedly deceptive acts or practices that form the basis of a claim under the Consumer Protection Act.  *Leider v. Ralfe*, 387 F. Supp. 2d 283, 295-296 (S.D.N.Y. 2005) ("As the statutory language suggests, a deceptive acts and practices claim requires the use of deception. . . . Mere anticompetitive conduct alone will not suffice.")  *See also In re Automotive Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 554 (E.D. Pa. 2007) (finding that "mere anticompetitive conduct alone does not constitute deceptive conduct under § 349 and that to come within the scope of the statute, the Complaint must allege some additional deception or misrepresentation") (quoting *Leider*, 387 F. Supp. 2d at 295-296).  In *In re Automotive Refinishing*, the court noted that although section 349 had been modeled on section 5 of the Federal Trade Commission Act ("FTCA"), the New York consumer protection statute intentionally omitted that language of the FTCA that covered "unfair" as opposed to "deceptive" conduct: "This omission is significant. A number of courts and commentators have observed that the absence of the reference

36

to unfair competition or unfair practices in § 349 "indicates that anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute." ) (quoting *Leider*, 387 F. Supp. 2d at 295 citing *In re New Motor Vehicles*, 350 F. Supp. 2d at 196-97). *See also Pelman v. McDonald's Corp*., 237 F. Supp. 2d 512, 526 (S.D.N.Y. 2003) (dismissing section 349 claim for failure to identify a single deceptive act); *In re Aftermarket Filters Antitrust Litig*., MDL 1957, 2009 WL 3754041 at * 10 (N.D. Ill. 2009) ("Absent something more, section 349 does not cover price fixing or other antitrust violations. Anti-competitive conduct alone does not constitute deceptive conduct under § 349.").

The IP Plaintiffs do not allege any deceptive conduct and certainly do not allege such conduct with the required particularity even if an allegation of deception could be gleaned from the ACAC. Moreover, the IP Plaintiffs expressly disclaimed, at the hearing on this matter, any further pursuit of any claim under any state law based on deceptive conduct. The Court dismisses the IP Plaintiffs' claim under section 349, the New York consumer protection law, for failure to allege deceptive, consumer-oriented conduct.

### D.   The IP Plaintiffs' Undifferentiated Unjust Enrichment Claims Must be Dismissed

The ACAC fails to identify any specific state unjust enrichment law under which the IP Plaintiffs purport to proceed.[7] State law requirements under unjust enrichment law vary widely. *See, e.g. In re Potash*, 667 F. Supp. 2d at 948 (holding that indirect purchaser plaintiffs could not maintain

---

[7] The Court rejects IP Plaintiffs counsel's attempt, at the hearing on this matter, to in effect amend the ACAC to limit the unjust enrichment claims to "those states in which Plaintiffs also allege a statutory claim." The only matters properly before the Court are the Defendants' motions to dismiss the existing ACAC. The Court will not rule on matters that have been "floated" or orally raised subsequent to the filing of the Defendants' instant motions to dismiss.

an unjust enrichment claim under the laws of Michigan, Kansas or Florida because unjust enrichment in those states requires that plaintiff establish that it conferred a *direct* benefit on the defendant) (citing *Spires v. Hospital Corp. of America*, 289 Fed. Appx. 269, 273 (10th Cir.2008) (noting that Kansas law does not support an "indirect unjust enrichment claim")); *Extraordinary Title Servs. v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009) (affirming dismissal of unjust enrichment claim where plaintiff could not "allege or establish that it conferred a direct benefit" upon defendant); *A & M Supply v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2-3 (Mich. Ct. App. Feb. 28, 2008) (concluding that the unjust enrichment doctrine requires "direct receipt" of a benefit, and was therefore inapplicable to "indirect purchasers"); *New Dimension Dev. v. Orchard*, No. 262565, 2005 WL 2806234, at *6 (Mich. Ct. App. Ct. Oct. 27, 2005) (quoting *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schs.*, 443 Mich. 176, 504 N.W.2d 635 (1993)) ("any indirect benefit defendant derived from plaintiffs was too attenuated to warrant imposing the equitable doctrine of unjust enrichment, which must be 'employed ... with caution,' because it 'vitiates normal contract principles.'").

The Court cannot analyze the IP Plaintiffs' undifferentiated unjust enrichment claims based on the ACAC as pled.  *See In re Chocolate*, 602 F. Supp. 2d at 587(dismissing, with opportunity to amend, plaintiffs' unjust enrichment claims which did not identify the states under whose laws they brought their claims) (citing *TFT-LCD*, 586 F. Supp. 2d at 1124; *SRAM*, 580 F. Supp. 2d at 910; *DRAM II*, 536 F. Supp. 2d at 1145)). The Court dismisses each of IP Plaintiffs' unjust enrichment claims.

### E.    It is Premature to Conclude that the IP Plaintiffs are Not Entitled to Injunctive Relief

The Arctic Glacier and Home City Defendants argue that the IP Plaintiffs' federal antitrust

claim for injunctive relief, which Defendants argue must be limited by the allegations of the Complaint to the time period ended March 6, 2008, should be dismissed because the IP Plaintiffs fail to allege a future "threatened" injury and therefore they are not entitled to injunctive relief under the Clayton Act, 15 U.S.C. § 16. (AG Mot. 16.) Arctic Glacier and Home City argue that because they both pled guilty to conspiratorial conduct in Southeastern Michigan and have agreed to fully and completely comply with the government in the sworn plea agreements, the IP Plaintiffs' suggestion that there remains a continued threat of harm is without merit. The IP Plaintiffs respond that the Complaint, which alleges conduct continuing at least until March 6, 2008, the exact dates being unknown to plaintiffs, cannot not be so limited temporally and that they have sufficiently alleged a continuing harm. (Pls.' Resp. 6.)

"It is clearly established that allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact. Further, this court has recently held that while past illegal conduct might constitute evidence ... regarding whether there is a real and immediate threat of repeated injury, where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Rosen*, 288 F.3d at 929 (internal quotation marks and citations omitted). The IP Plaintiffs claim that the ACAC contains allegations that describe Defendants' ongoing conduct (Compl. ¶ 32) and also describe Defendants' ongoing opportunities to conspire (Compl. ¶¶ 54-55). The Court concludes that this is sufficient at the pleading stage to permit IP Plaintiffs' claim for injunctive relief to go forward.

Defendants argue that any threat of continuing activity has been eliminated by the guilty pleas entered in to by Arctic Glacier and Home City. "A request for injunctive relief requires a showing of a 'likelihood of substantial and immediate irreparable injury', a 'requirement that cannot be met

where there is no showing of any real or immediate threat that the plaintiff will be wronged.'" *In re Plavix Indirect Purchaser Antitrust Litig.*, 06-cv-226, 2011 WL 335034 at * 4 (S.D. Ohio Jan. 31, 2011) (holding that the existence of a permanent injunction barring defendant from selling the drug until plaintiffs' patent expired was not "dispositive" but was relevant to the determination of whether "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 111 (1983)).  First, the Court notes that even accepting Defendants' argument that the guilty pleas are irrefutable proof that Defendants have renounced their illegal ways, it could only accept such an assertion as to conduct described in the pleas, i.e. customer allocation activity in Southeastern Michigan.  Beyond that, the Court agrees with the IP Plaintiffs that the plea agreements do not meet Defendants' burden of establishing that the alleged harm will not be repeated.  *See United States v. Grant*, 345 U.S. 629 (1953) ("When defendants are shown to have settled into a continuing practice or entered into a conspiracy violative of antitrust laws, courts will not assume that it has been abandoned without clear proof. * * * It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.") (internal quotation marks and citations omitted).

        There is no basis on which the Court can reasonably conclude at this pleading stage that the threat of continued conspiratorial conduct in markets other than Southeastern Michigan has been removed.  The Court concludes that the plea agreements, even if the Court did consider them to be dispositive on the issue of Defendants' intent or ability to repeat their admitted illegal conduct, would preclude an award of injunctive relief only as to those areas and activities that are the subject of, and

40

described in, the plea agreements.  The Court will not, at this stage, preclude IP Plaintiffs from attempting to establish a threat of continued harm that could form the basis for injunctive relief.

Defendants also argue that the IP Plaintiffs must be limited to the time period described in their definition of the purported indirect purchaser class.  The IP Plaintiffs respond that they cannot be limited by the allegations as to the class period, and rely on *In re SRAM*, 2009 WL 4263524 at * 7, where the court held that allegations which define a class period will not foreclose a claim for injunctive relief where the complaint alleges ongoing conduct and/or opportunities to conspire.  In certifying a nationwide class for injunctive relief, the court in *In re SRAM* refused to bind plaintiffs to the time frame defining the class:

> IP Plaintiffs allege that the same market conditions that facilitated the conspiracy from 1996 to 2006 [the class time period] continue today. They allege that Defendants' price-fixing resulted from a systematic, repeated pattern of sharing sensitive competitive information which was greatly facilitated by the cross-competitor business relationships that still exist. Thus, there is alleged a significant risk that the conspiracy will persist or reform in the future.

2009 WL 4263524 at * 7.  The Court concludes that the IP Plaintiffs are not constrained from seeking injunctive relief simply because they allege a class period ending on March 6, 2008, where the ACAC indicates that the exact dates of the continuing conspiracy are unknown to Plaintiffs.  (Compl. ¶ 61.)  The Court denies Defendants' motion to dismiss Plaintiffs' claim for injunctive relief.

## F.    The Court Cannot Conclude at This Stage of the Litigation that the IP Plaintiffs' Claims Are Barred by Any of the Applicable Statutes of Limitation

The Arctic Glacier Defendants and Home City argue that the IP Plaintiffs' claim for injunctive relief under the Sherman Act and several of the IP Plaintiffs' state-law claims are barred by applicable statutes of limitation and that the IP Plaintiffs' have not sufficiently alleged fraudulent concealment of those claims.  Defendants incorporate by reference and rely on their statute of

limitation and fraudulent concealment arguments made in their motions to dismiss the direct purchaser claims. (AG Br. 22-23.) For the same reasons that the Court rejected Defendants' statute of limitations/fraudulent concealment arguments in its July 1, 2010 Opinion and Order denying the motions to dismiss the direct purchaser complaint, it does so here and incorporates by reference those portions of its earlier Opinion and Order. *In re Packaged Ice*, 723 F. Supp. 2d at 1017-1019.

At the hearing on this matter, Defendants argued that because the government has closed its criminal investigation into the packaged ice industry, the landscape has changed such that the Court should now rule differently on the issue of fraudulent concealment. Defendants urge the Court to conclude now that Reddy Ice has somehow been vindicated and therefore can not plausibly be alleged to have made any fraudulent or misleading disclosures such as may have supported the Court's earlier ruling on the issue of fraudulent concealment. However, as noted above, in this civil litigation, the Court does not attach dispositive significance to the DOJ's decision not to pursue further criminal charges against these Defendants. The Court cannot conclude, at the pleading stage, that IP Plaintiffs have failed to adequately plead fraudulent concealment.

Nor can the Court, at this pleading stage, conclude that the IP Plaintiffs will be unable to establish the applicability of any state discovery rules that may apply to their state law claims. *See, e.g. In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1524912 at * 3 (D.D.C. July 14, 2000) (applying discovery rule to Kansas antitrust claims); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 342-344 (E.D. Penn. 2004) (applying discovery rule to Kansas, Tennessee, South Carolina, Colorado and Indiana antitrust claims). In *California v. Infineon Technologies AG,* 531 F. Supp. 2d 1124, 1162 (N.D. Cal. 2007), the court agreed with plaintiffs that none of the allegations of the complaint permitted the court to infer with any certainty that the plaintiffs should have been aware

of their claim by June 2002 when the DOJ announced its criminal investigation. Some reasonable amount of time following this announcement, the court reasoned, would have been necessary for plaintiffs to conduct their own investigation of a possible claim. How much time would have been reasonable, the court concluded, could not be determined from the allegations of the complaint. The court denied the motion to dismiss without prejudice, noting that the statute of limitations issue could be revisited on summary judgment should discovery reveal facts of the actual accrual date.

The Court denies Defendants' motion to dismiss on the basis of any applicable statutes of limitation.

### G.   As It Has Done in Three Prior Opinions, The Court Declines to Dismiss the Arctic Glacier Canadian Entities at This Stage of the Proceedings

The Arctic Glacier Canadian Defendants move the Court, again by incorporating by reference its argument on this issue set forth in the motion to dismiss the direct purchaser plaintiffs' complaint, to dismiss them for lack of personal jurisdiction. For the same reasons that the Court rejected Defendants' personal jurisdiction arguments in its July 1, 2010 Opinion and Order denying the motions to dismiss the direct purchaser complaint, it does so here and incorporates by reference those portions of its earlier Opinion and Order. *In re Packaged Ice*, 723 F. Supp. 2d at 1019. At the hearing on this matter, counsel for Arctic Glacier indicated to the Court that Arctic Glacier did not object to the Court's decision to defer ruling on this issue. In the absence of competent affidavit testimony from either party, the Court relies on the jurisdictional allegations of the ACAC and declines to dismiss the Arctic Glacier Canadian Defendants at this time.

## IV.   CONCLUSION

For the foregoing reasons:

(1) the Court **GRANTS** Defendants' motions to dismiss the IP Plaintiffs' claims under the laws of the states of Arizona, Arkansas, District of Columbia, Idaho, Iowa, Kansas, Maine, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin and Wyoming;

(2) the Court **GRANTS** Defendants' motions to dismiss the IP Plaintiffs' claims under the consumer protection laws of Florida, Michigan and New York;

(3) the Court **GRANTS** Defendants' motions to dismiss the IP Plaintiffs' unjust enrichment claims but will allow IP Plaintiffs the opportunity to amend to state unjust enrichment claims under the laws of specified states;

(4) the Court **DENIES** Defendants' motions to dismiss the IP Plaintiffs' claims under the antitrust laws of California, Michigan and New York;

(5) the Court **DENIES** Defendants' motions to dismiss the IP Plaintiffs' claim for injunctive relief under the Clayton Act;

(6) the Court **DENIES** Defendants' motions to dismiss the IP Plaintiffs' claims on the basis of any applicable statute of limitation; and

(7) the Court **DEFERS** ruling on Arctic Glacier's  motion to dismiss the Arctic Glacier Canadian Defendants.

IT IS SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 11, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 11, 2011.


S/Denise Goodine
Case Manager