UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE PACKAGED ICE ANTITRUST
LITIGATION

Case Number: 08-MD-01952
Honorable Paul D. Borman

THIS DOCUMENT RELATES TO:
DIRECT PURCHASER ACTIONS

DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT
WITH ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., AND
ARCTIC GLACIER INTERNATIONAL, INC. AND FOR AUTHORIZATION TO
DISSEMINATE NOTICE

Harold Z. Gurewitz (P14468)
GUREWITZ & RABEN, PLLC
333 West Fort Street, Suite 1100
Detroit, MI 48226
(313) 628-4733

Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Interim Lead and Liaison Counsel for the Direct Purchaser Class

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     PROCEDURAL HISTORY .............................................................................. 2

III.    SUMMARY OF THE ARCTIC GLACIER SETTLEMENT AGREEMENT ................... 2

    (a)   The Settlement Amount ....................................................................... 2

    (b)   Cooperation ......................................................................................... 3

    (c)   Release ................................................................................................. 4

    (d)   Sales by Arctic Glacier Remain in the Case Against the Other
    Defendants. ......................................................................................... 4

    (e)   Rights to Reduce the Settlement Amount or Withdraw From
    the Settlement ..................................................................................... 4

    (f)   Stipulation to Class Certification ........................................................ 5

IV.     PROPOSED TIMETABLE ............................................................................. 5

V.      THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE
    AND ADEQUATE TO AUTHORIZE DISSEMINATION OF CLASS NOTICE ........... 6

    A.   Governing Standards ............................................................................. 6

    B.   The Settlement Meets the Standards for Preliminary Approval Under Rule 23 .... 8

    C.   Consideration of Final Approval Criteria Supports Preliminary Approval ........... 9

      1.   The Likelihood of Plaintiffs' Success on the Merits Weighed
      Against the Amount and Form of the Relief Offered in Settlement
      Supports Approval .......................................................................... 11

      2.   The Risks, Expenses, and Delay of Continued Litigation Favor
      Approval ........................................................................................ 12

      3.   The Judgment of Experienced Counsel Who Have Competently
      Evaluated the Strength of the Claims and the Amount and Character
      of Discovery and Evidence Uncovered Supports Approval ...................... 13

      4.   The Proposed Settlement is Fair to the Settlement Class Members ......... 14

      5.   Objections By Class Members ......................................................... 14

      6.   The Settlement Agreement is the Product of Arm's Length
      Negotiations .................................................................................. 14

      7.   The Settlement is Consistent With the Public Interest ....................... 15

    D.   Preliminary Certification of the Settlement Class for Purposes of
    Disseminating  Notice is Also Appropriate .......................................... 15

      1.   The Proposed Settlement Class Satisfies the Requirements of
      Rule 23(a) ..................................................................................... 15

        (a)   The Settlement Class Meets the Numerosity Requirement ........... 16

        (b)   Common Questions of Law and Fact Exist .................................. 16

        (c)   Plaintiffs' Claims Are Typical of Those of the Settlement
        Class............................................................................................ 17

i

(d)    The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class Members....................................17

2.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3) For Settlement Purposes...........................................................17

3.    Rule 23(g) is Satisfied .............................................................................19

VI.    NOTICE TO THE CLASS ................................................................................19

VII.    CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) ..................................................... 18

*Beattie v. CenturyTel, Inc.,*
511 F.3d 554 (6th Cir. 2007) ........................................................................................ 18, 19

*Berry v. Sch. Dist. of City of Benton Harbor,*
184 F.R.D. 93 (W.D. Mich. 1998) .................................................................................. 8, 10

*Bobbitt v. Acad. of Court Reporting,*
2009 WL 2168833 (E.D. Mich. July 21, 2009) ................................................................. 7

*Carson v. Am. Brands, Inc.,*
450 U.S. 79 (1981) ............................................................................................................. 10

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ............................................................... 16

*Granada Invs. Inc. v. DWG Corp.,*
962 F. 2d 1203 (6th Cir. 1992) ....................................................................................... 8, 15

*Hoving v. Lawyers Title Ins. Co.,*
256 F.R.D. 555 (E.D. Mich. 2009) .................................................................................... 17

*In re Am. Med. Sys., Inc.,*
75 F.3d 1069 (6th Cir. 1996) ............................................................................................. 16

*In re Auto. Refinishing Paint Antitrust Litig.,*
2004 WL 1068807 (E.D. Pa. May 11, 2004) ..................................................................... 8

*In re Cardizem CD Antitrust Litig.,*
218 F.R.D. 508 (E.D. Mich. 2003) ............................................................................. passim

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,*
248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................. 7, 13

*In re Insurance Brokerage Antitrust Litig.,*
579 F. 3d 241 (3rd Cir.2009) .......................................................................................... 18, 19

*In re Linerboard Antitrust Litig.,*
292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................................... 8, 9

*In re Linerboard Antitrust Litig.,*
321 F. Supp. 2d 619 (E.D. Pa. 2004) ................................................................................. 8

*In re Packaged Ice Antitrust Litig.,*
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .......................................................1, 6, 10, 14

*In re Packaged Ice Antitrust Litig.,*
  2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ...................................................................passim

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................................................8, 9

*In re Scrap Metal Antitrust Litig.,*
  527 F.3d 517 (6th Cir. 2008) ...............................................................................17, 18, 19

*In re Southeastern Milk Antitrust Litig.,*
  2010 WL 3521747 (E.D. Tenn., Sept. 7, 2010) ........................................................................18

*In re Telectronics Pacing Sys. Inc.,*
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ..........................................................................passim

*In re Visa Check/MasterMoney Antitrust Litig.,*
  280 F.3d 124 (2d Cir. 2001) ..............................................................................................18

*Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am. v. Gen.*
  *Motors Corp. (UAW),*
  497 F.3d 615 (6th Cir. 2007) ..................................................................................10, 11, 17

*Int'l Union United Auto., Aerospace & Agric. Implement Workers of American*
  *v. Ford Motor Co.,*
  2006 WL 1984363 (E.D. Mich. July 13, 2006) ................................................7, 11, 14, 15, 16

*IUE-CWA v. General Motors Corp.,*
  238 F.R.D. 583 (E.D. Mich. 2006) .......................................................................................11

*Lessard v. City of Allen Park,*
  372 F. Supp. 2d 1007 (E.D. Mich. 2005) ...........................................................................10

*Meijer Inc. v. 3M,*
  2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ..........................................................................8

*Olden v. Gardner,*
  294 Fed. Appx. 210 (6th Cir. 2008) ....................................................................................10

*Senter v. Gen. Motors Corp.,*
  532 F.2d 511 (6th Cir. 1976) ................................................................................................17

*Sheick v. Auto. Component Carrier LLC,*
  2010 WL 4136958 (E.D. Mich. 2010) ..........................................10, 11, 12, 13, 14, 17

*Sprague v. General Motors Corp.,*
    133 F.3d 388 (6th Cir. 1998) ........................................................... 16

*Thacker v. Chesapeake Appalachia, LLC,*
    2009 WL 2407614 (E.D. Ky. Aug. 5, 2009) ..................................... 15

*Van Horn v. Trickey,*
    840 F.2d 604 (8th Cir. 1988) ........................................................... 10

*Williams v. Vukovich,*
    720 F.2d 909 (6th Cir. 1983) ................................................. 8, 10, 12

**RULES**

Fed.R.Civ.P.23(a) ........................................................................ 5, 15

Fed.R.Civ.P.23(a)(1) ......................................................................... 16

Fed.R.Civ. P.23(a)(2) ........................................................................ 16

Fed.R.Civ.P.23(a)(3) ......................................................................... 17

Fed.R.Civ.P.23(a)(4) ......................................................................... 17

Fed.R.Civ.P.23(b) ............................................................................ 16

Fed.R.Civ.P.23(b)(3) ............................................................... 5, 17, 19

Fed. R. Civ. P.23(c)(2)(B) ........................................................... 19, 20

Fed.R.Civ.P.23(e) ............................................................................... 7

Fed.R.Civ.P.23(e)(1) ................................................................... 19, 20

Fed.R.Civ.P.23(e)(1)(C) ...................................................................... 9

Fed. R.Civ.P.23(e)(2) .......................................................................... 7

Fed.R.Civ.P.23(g) ............................................................................. 19

**MISCELLANEOUS**

*Manual For Complex Litig. (Fourth)* §21.632 (2004)............................6, 7

*Manual for Complex Litig. (Second)* §30.44 (1985)................................7

*Manual for Complex Litig. (Third)* §30.42 (1995)................................10

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should preliminarily approve the settlement between Arctic Glacier Income Fund, Arctic Glacier Inc. and Arctic Glacier International, Inc. ("Arctic Glacier") and the Direct Purchaser Plaintiffs ("Plaintiffs") embodied in the Settlement Agreement between Plaintiffs and Arctic Glacier dated March 30, 2011?

2.      Whether the Court should preliminarily certify a direct purchaser Settlement Class for purposes of disseminating notice of the Arctic Glacier settlement?

3.      Whether the Court should approve the forms and methods of class notice?

4.      Whether the Court should schedule a hearing on the fairness of the Arctic Glacier settlement and set related deadlines?

<u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

Fed.R.Civ.P. 23(a)(1)-(4) and (b)(3)

Fed.R.Civ.P. 23(c)(2)(B)

Fed.R.Civ.P. 23(e)

Fed.R.Civ.P. 23(g)

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997)

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996)

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007)

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003)

*Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203 (6th Cir. 1992)

*In re Ins. Brokerage Antitrust Litig.,* 579 F. 3d 241 (3rd Cir. 2009)

*Int'l Union United Auto, Aerospace & Agric. Implement Workers of American v. Ford Motor Co.,* 2006 WL 1984363 (E.D. Mich., July 13, 2006)

*Int'l Union United Auto., Aerospace & Agric. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615 (6th Cir. 2007)

*In re Packaged Ice Antitrust Litig.,* 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re Packaged Ice Antitrust Litig.,* 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.,* 527 F.3d 517 (6th Cir. 2008)

*Sheick v. Auto. Component Carrier LLC, 2010 WL 4136958 (E.D. Mich. 2010)*

*Senter v. Gen. Motors Corp.,* 532 F.2d 511 (6th Cir. 1976)

*Sprague v. Gen. Motors Corp.,* 133 F.3d 388 (6th Cir. 1998)

*In Re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985 (S.D. Ohio 2001)

*Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983)

I.    <u>INTRODUCTION</u> - Plaintiffs,[1] on behalf of themselves and a proposed Settlement Class of direct purchasers of Packaged Ice in the United States have entered into a Settlement Agreement with Arctic Glacier.  Under the terms of the Settlement Agreement, attached hereto as Exhibit 1, Arctic Glacier has agreed to pay $12.5 million, in two installments, and has agreed to provide significant and prompt cooperation to Plaintiffs in connection with the prosecution of their claims.

The Arctic Glacier settlement was reached after commencement of discovery and after this Court gave final approval to a $13.5 million class settlement with Home City Ice Company ("Home City"), and was the result of many months of negotiations.  In connection with the approval process of this settlement, Plaintiffs propose to send claim forms, make a distribution to the Settlement Class members, subject to Court approval, from the combined settlement funds, and apply to the Court for an award of attorneys' fees and expenses.

The Court is familiar with the two step process for consideration of settlement approval pursuant to Fed.R.Civ.P. 23.  *In re Packaged Ice Antitrust Litig.,* 2010 WL 3070161, at *4-5 (E.D. Mich. Aug. 2, 2010).  Plaintiffs now move the Court for a Preliminary Approval Order: (1) finding that the proposed settlement with Arctic Glacier is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class; (2) appointing  Plaintiffs' Interim Lead Counsel and Interim Liaison Counsel as Class Counsel for the Settlement Class; (3) establishing a date for a hearing on final approval of the proposed settlement and Class Counsel's request for attorneys' fees and expenses; (4) approving the forms of class notice and claim form; (5) approving the notice plan and directing that notice be mailed

---

[1] "Plaintiffs" or "Class Representatives" means Alvin's Enterprises, Inc. d/b/a Party King, Suzie's Investments, Inc. d/b/a Checker Drugs and Food, Arkansas Garden Center West, LLC, Arkansas Garden Center North, LLC, Chi-Mar Enterprises, Inc, Kingsway Enterprises, Inc., Polly's Food Service, Inc., Kenco, Inc., and Thomas Beverages Co., Inc. d/b/a Thomas Liquors.

and published; (6) establishing a deadline for filing papers in support of final approval of the proposed settlement and the request for attorneys' fees and expenses; and (7) establishing deadlines for the filing of objections and requests for exclusion by Settlement Class members. Submitted herewith is a proposed Preliminary Approval Order. The proposed Notice and Claim Form and the Summary Notice are attached hereto as Exhibits 2 and 3, respectively.

II.    PROCEDURAL HISTORY- Starting in March, 2008, a number of direct purchaser antitrust class actions were filed against Arctic Glacier, Home City, and Reddy Ice ("Defendants"). The Judicial Panel on Multidistrict Litigation centralized all of the Packaged Ice antitrust actions in this Court. The Court appointed the law firms of Kohn, Swift & Graf, P.C. as Interim Lead Counsel and Gurewitz & Raben, PLLC as Interim Liaison Counsel for the direct purchaser class. On September 15, 2009, Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Complaint"), in which they allege that Arctic Glacier and the other defendants violated the antitrust laws. Arctic Glacier and Reddy Ice filed motions to dismiss the Complaint. The Court denied the motions to dismiss. On February 22, 2011, the Court approved the Home City settlement. On March 30, 2011, the Settlement Agreement with the Arctic Glacier defendants was executed.

III.    SUMMARY OF THE ARCTIC GLACIER SETTLEMENT AGREEMENT – The proposed Arctic Glacier settlement was signed after lengthy negotiations, conducted by Plaintiffs' Interim Lead Counsel and Arctic Glacier's Counsel from the law firm of Jones Day.

        (a)    The Settlement Amount - The Settlement Agreement provides that Arctic Glacier will pay $12.5 million in two installments to an escrow account. The first installment of $2 million is to be paid on the later of July 15, 2011 or 15 days after an order preliminarily approving the settlement is entered. Settlement Agreement, ¶19. The second installment is to be paid on the later of November 1, 2011, or 30 days after entry of the final

judgment order.  Interest is to be paid on the settlement amount, to accrue starting 30 days after March 30, 2011.  *Id.*  The settlement funds are to be invested in United States Government Treasury obligations.

Plaintiffs' Counsel believe that the settlement amount represents the reasonable limit that Arctic Glacier could pay given its financial situation and the control being exerted over it by its lenders.  Arctic Glacier provided information regarding its financial condition and has represented to Plaintiffs that it did not reasonably have the financial ability to pay an amount in settlement greater than the settlement amount.  Plaintiffs' Counsel  reviewed Arctic Glacier's financial information, and had exchanges with Arctic Glacier and its counsel regarding its precarious financial footing, its onerous debt load, and the high degree of lender involvement in its affairs.  Plaintiffs' Counsel concluded that Arctic Glacier did not  reasonably have the financial ability to pay an amount greater than the settlement amount, and that it was in the best interests of the Class to settle on these terms.

The Settlement Agreement with Home City has a most favored nation provision.  It provides that if Plaintiffs were to reach a "Qualifying Settlement" with another defendant and the "Settlement Ratio" of that settlement is less than the "Settlement Ratio" paid by Home City, Home City would be entitled to a refund unless, as here, the settling defendant "does not reasonably have the financial ability to pay an amount greater than the amount calculated using the Home City Settlement Ratio."  *See In re Packaged Ice Antitrust Litig.,* 2011 WL 717519, at *24 (E.D. Mich. Feb. 22, 2011).

(b)   <u>Cooperation</u> - In addition to paying the $12.5 million, Arctic Glacier has agreed to cooperate with Class Counsel in connection with the prosecution of Plaintiffs' claims against the remaining defendants.  *Id.* ¶¶ 27-31.  Within 30 days of the execution of the Agreement, Arctic Glacier is to produce to Plaintiffs all the documents it

3

produced in connection with governmental investigations in the United States into violations of the antitrust laws, and electronic sales and cost data. *Id.* ¶28. Arctic Glacier will also, after preliminary approval, arrange meetings between Counsel for Arctic Glacier and Plaintiffs' Counsel, at which Arctic Glacier's Counsel will identify documents, people and other information relating to the allegations in the action. *Id.* ¶29. After the Effective Date of the settlement, Arctic Glacier has also agreed to use reasonable, good faith efforts to make present and former officers and employees available for interviews, depositions, and trial testimony. *Id.* ¶31. Arctic Glacier also agrees to provide declarations and testimony that may be necessary to establish the admissibility of its documents. *Id.*

> (c)  <u>Release</u>- Upon the occurrence of the Effective Date, Arctic Glacier and the Releasees (as defined in ¶6 of the Settlement Agreement) will be released by the Settlement Class. *Id.* ¶18.

> (d)  <u>Sales by Arctic Glacier Remain in the Case Against the Other Defendants</u> - The proposed settlement will not affect non-settling defendant Reddy Ice's joint and several liability for the alleged conspiracy. Arctic Glacier's sales remain in the case and the non-settling defendant remains jointly and severally liable for damages on those sales. *Id.* ¶34. Thus, the settlement with Arctic Glacier will not limit the Settlement Class' right to recover the full amount of damages from Reddy Ice.

> (e)  <u>Rights to Reduce the Settlement Amount or Withdraw From the Settlement</u> - Paragraph 20 of the Settlement Agreement provides that Arctic Glacier may reduce its settlement payment based on certain thresholds being crossed regarding the percentage of purchases of Packaged Ice from Arctic Glacier during the time period from and including January 1, 2001 to and including March 6, 2008 (the "Settlement Class Period") by Arctic Glacier customers that elect to be excluded from the Settlement Class. Paragraph 20 also

4

provides that Arctic Glacier has the right to withdraw from the settlement if the total dollar amount of purchases by Settlement Class members requesting exclusion from the Settlement Class exceeds a certain percentage of either the total sales by Arctic Glacier, or from the other defendants, during the Settlement Class Period.

(f)     Stipulation to Class Certification - Paragraph 12 of the Settlement Agreement provides that the parties stipulate that the requirements of Fed.R.Civ.P. 23(a) and 23(b)(3) are satisfied and, subject to Court approval, that the following direct purchaser Settlement Class shall be certified for settlement purposes only as to Arctic Glacier:

> All purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates (including all predecessors thereof) at any time during the period from January 1, 2001 to March 6, 2008. Excluded from the Settlement Class are governmental entities and Defendants, including their parents, subsidiaries, predecessors or successors, and Defendants' alleged co-conspirators.

At this time, Plaintiffs seek the Court's preliminary approval of the settlement and authorization to disseminate notice to members of the proposed Settlement Class.  In the motion for final settlement approval, Plaintiffs will move for final certification of the Settlement Class.

IV.     PROPOSED TIMETABLE - The class notice and other procedures required under Fed.R.Civ.P. 23 and the Class Action Fairness Act can be completed to allow for a final approval hearing anytime after July 7, 2011, which is ninety days after the filing of the Preliminary Approval Motion.  Plaintiffs and Arctic Glacier respectfully request the Court to schedule a hearing on final approval of the settlement at the Court's earliest convenience after that date. The proposed Preliminary Approval Order sets forth an orderly procedure and timetable for disseminating notice to the Settlement Class and for final approval: (1) notice to be mailed no later than ten (10) days following the date of the Preliminary Approval Order (the "Notice Date"); (2) Summary Notice to be published in the National Edition of *The Wall Street Journal*

within ten (10) days of the Notice Date and posted on the internet; (3) Plaintiffs' motion for final approval of the settlement and for an award of attorneys' fees and expenses to be filed thirty (30) days prior to the date of the Final Approval hearing (the "Hearing"); (4) any requests for exclusion from the Settlement Class must be postmarked no later than twenty (20) days prior to the Hearing; (5) any objection to the settlement or to the motion for an award of attorneys' fees and expenses must be filed with the Court and served on Class Counsel and counsel for Arctic Glacier no later than twenty (20) days prior to the Hearing; (6) affidavits or declarations that notice to the Settlement Class was made in accordance with the Preliminary Approval Order to be filed ten (10) days prior to the Hearing; and (7) scheduling the final approval hearing.  The parties request the hearing be scheduled as soon after July 7, 2011 as is convenient for the Court.

Plaintiffs will also propose a plan of allocation and distribution of the Arctic Glacier and Home City settlement funds to the Settlement Class members. Plaintiffs' Counsel propose that members of the Settlement Class receive a pro rata share of the settlement funds based on the amount of Packaged Ice they purchased during the Settlement Class Period.  Details of the plan of allocation are set forth in the proposed Notice and the Proof of Claim Form.  The Notice also informs the Settlement Class members that Plaintiffs' Counsel will seek an award of attorneys' fees not to exceed 30% of the settlement funds, and reimbursement of litigation expenses, and that Counsel will file a detailed fee application no later than 30 days prior to the hearing.

V.      THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF CLASS NOTICE

A.      Governing Standards - The procedure for disseminating notice to the class and then conducting a hearing to approve the settlement is well established by courts in the Sixth Circuit and elsewhere and familiar to the Court. *Packaged Ice*, 2010 WL 3070161, at *4-5. The *Manual For Complex Litig. (Fourth)* §21.632 (2004), summarizes what has developed over the years as the common framework for the Court's preliminary evaluation of a proposed class

6

action settlement: "Review of a proposed class action settlement generally involves two hearings. First counsel submits the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the fairness hearing." *See Bobbitt v. Acad. of Court Reporting,* 2009 WL 2168833, at *1 (E.D. Mich. July 21, 2009) (citing, *inter alia, Manual (Fourth))*.

"If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (*quoting Manual for Complex Litig. (Second)* §30.44 (1985)); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.,* 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that the proposed settlement will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483, 495-96 (E.D. Mich. 2008). That determination must await the final hearing where the fairness, reasonableness and

7

adequacy of the settlement is assessed under the applicable final approval factors.[2] *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

"[T]he court first must determine whether the proposed settlement is potentially approvable." *Berry v. Sch. Dist. of City of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998). The purpose of this preliminary review is to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* The court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *In re Telectronics,* 137 F. Supp. 2d at 1026.

> B.      The Settlement Meets the Standards for Preliminary Approval Under Rule 23 -

Plaintiffs and Arctic Glacier have entered into a Settlement Agreement that provides for a $12.5 million cash payment and extensive cooperation obligations on the part of Arctic Glacier. The settlement amount reflects information provided by Arctic Glacier as part of the settlement negotiations and constitutes a meaningful recovery. The $12.5 million settlement amount is comparable to settlements in other antitrust class actions that have been approved. *See, e.g., In re Pressure Sensitive Labelstock Antitrust Litig.,* 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ($8.25 million settlement represented 1.5% of settling defendant's sales during the class period); *Meijer Inc. v. 3M,* 2006 WL 2382718, at *20 (E.D. Pa. Aug. 14, 2006) (settlement of $28.9 million represented 2% of settling defendant's sales to class members); *In re Linerboard Antitrust Litig.,* 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (settlements of $34 million and $92.5 million represented 2.0% and 1.62% of settling defendants' sales approved); *In re Auto. Refinishing Paint Antitrust Litig.,* 2004 WL 1068807 (E.D. Pa. May 11, 2004) (two settlements

---

[2] In *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983), the Sixth Circuit Court set forth factors (discussed *infra*) for the district court to consider when exercising its discretion to determine if the settlement is "fair, reasonable and adequate."

worth $48 million representing 2% of sales). Further, the Court has approved a similar $13.5 million settlement with Home City.

Another important aspect of the settlement is the cooperation that Arctic Glacier has agreed to provide. Cooperation provisions can constitute a "substantial benefit" to the class. *In re Linerboard*, 292 F. Supp. 2d at 643. The cooperation provisions of the Arctic Glacier Settlement Agreement provide just such a substantial benefit to the class. *See Packaged Ice,* 2011 WL 717519, at *10; *In re Labelstock,* 584 F. Supp. 2d at 702.

The parties to the Settlement Agreement engaged in arm's length negotiations over several months, and the proposed Settlement Class is represented by experienced counsel. The proposed settlement is preferable to the possibility of a smaller recovery, or no recovery at all. Because the proposed settlement is within the range of possible approval, Plaintiffs respectfully submit that it merits preliminary approval.

C.    <u>Consideration of Final Approval Criteria Supports Preliminary Approval -</u> The Court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement. Nevertheless, preliminary consideration of the factors the Court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports preliminarily approving the Arctic Glacier settlement and authorizing the dissemination of notice to the Settlement Class.

Fed. R. Civ. P. 23(e)(1)(C) provides that "the court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement is fair, reasonable, and adequate.'" *Packaged Ice*, 2011 WL 717529, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of

the settlement." *In re Telectronics,* 137 F. Supp. 2d at 1026 (citing *Vukovich,* 720 F.2d at 921);

*Packaged Ice,* 2010 WL 3070161, at *4.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits

of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.

14 (1981). There are two reasons for this. First, the object of settlement is to avoid the

determination of contested issues, so the approval process should not be converted into an

abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second,

"[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor

of settlement." *In re Telectronics,* 137 F. Supp. 2d at 1008-09 (*citing Manual (Third)* §30.42).

This is particularly true in the case of class actions. *Berry,* 184 F.R.D. at 97.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized

that the law favors the settlement of class action lawsuits." *Packaged Ice,* 2011 WL 717519, at

*7 (citing, *inter alia, UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007)). A

court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and

reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen

Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich,* 720 F.2d at 921-23);

*Olden v. Gardner,* 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires

consideration of "whether the interests of the class as a whole are better served if the litigation is

resolved by settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508,

522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC,* 2010 WL 4136958, at *14, *15

(E.D. Mich. 2010).

The Sixth Circuit has identified factors relevant in determining whether a settlement is

fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the

amount and form of the relief offered in the settlement; (2) the risks, expenses, and delay of

10

further litigation; (3) the judgment of experienced counsel who have competently evaluated the strengths and weaknesses of their case; (4) the amount of discovery completed and the character of the evidence uncovered; whether the settlement is fair to the unnamed class members; (5) objections raised by class members; whether the settlement is the product of arm's-length negotiations; and (6) whether the settlement is consistent with the public interest. *Packaged Ice*, 2011 WL 717519, at *8; *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Gen. Motors Corp. (UAW)*, 497 F.3d 615, 631 (6th Cir. 2007).

1.   The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in Settlement Supports Approval -

When considering the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)) (citations omitted); *Ford*, 2006 WL 1984363, at *21.

Plaintiffs are optimistic about their ultimate success in this matter. Defendants, however, have a different view, as their motions to dismiss demonstrated. Plaintiffs also believe that Arctic Glacier was prepared to defend this case through trial and appeal. It is represented by highly experienced and competent counsel. Litigation risk is inherent in any litigation, and class actions are no different. So, despite their optimism, Plaintiffs must acknowledge the risk that Arctic Glacier could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating Plaintiffs' potential recovery, as well as the economic uncertainties. As a result, success is not certain.[3]

---

[3] Arctic Glacier International and its executives' plea agreements and guilty pleas relate to a limited geographic area. The Complaint alleges that the defendants participated in a nationwide conspiracy to unreasonably restrain trade.

The risk must be weighed against the settlement consideration: $12.5 million in cash and extensive cooperation by Arctic Glacier, both valuable to the Settlement Class members. Weighing the two tilts the scale toward approval. *See Packaged Ice*, 2011 WL 717519, at *9.

   2. <u>The Risks, Expenses, and Delay of Continued Litigation Favor Approval</u> - "Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem,* 218 F.R.D. at 523 (*quoting Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *In re Telectronics,* 137 F. Supp. at 1013. "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them." *Id.* Plaintiffs are still litigating with Reddy Ice, so it is not appropriate to discuss with any specificity Plaintiffs' Counsel's analysis of the risks of litigation because of the chance that those defendants would seek to use any such disclosures against Plaintiffs going forward. Plaintiffs' Counsel believe that at this point that it is sufficient to say that antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

  The proposed settlement eliminates the risks, including substantial economic risk,[4] expense and delay with respect to a recovery from Arctic Glacier, ensures a substantial payment to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against Reddy Ice. This factor also supports preliminary approval of the proposed settlement.

---

[4] The risk of the Settlement Class receiving less (or nothing) if the litigation continues due to economic factors is an important consideration here. *See, e.g., Packaged Ice*, 2011 WL 717519, at * 11; *Sheick*, 2010 WL 4136958, at *8, *17. Arctic Glacier has already spent in excess of $25 million on the antitrust investigations and litigation, including its $9 million fine, which it is paying in installments because the DOJ concluded it could not pay the $9 million in a lump sum. Arctic Glacier was and remains debt laden. Its debt is at high interest rates. Arctic Glacier's unit price was $1.30 cdn on March 30, 2011, the day before the settlement was announced, down from $11.69 cdn a unit on March 6, 2008, the day the DOJ investigation became public.

3. <u>The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of the Claims and the Amount and Character of Discovery and Evidence Uncovered Supports Approval</u> - In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi*, 248 F.R.D. at 498. In deciding whether a proposed settlement warrants approval, Class Counsel's judgment "that the settlement is in the best interest of the Class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18 (citation omitted)).

Plaintiffs' Counsel have extensive experience in handling class action antitrust and other complex litigation. The Court appointed Kohn, Swift & Graf, P.C. as Interim Lead Counsel and Gurewitz & Raben, PLLC as Interim Liaison Counsel on June 1, 2009. They negotiated this settlement at arm's length over a period of months with well respected and experienced counsel for Arctic Glacier. Plaintiffs' Counsel believe the proposed settlement constitutes the best result obtainable under the circumstances.

Important information about the Packaged Ice conspiracy is available from the following sources: Plaintiffs' Counsel's investigation, the initial document production and Corbin deposition, publicly available information about the DOJ's investigation, material relating to the DOJ charges against Arctic Glacier International and Arctic Glacier officers (Gary Cooley, Frank Larson, and Keith Corbin) and Home City, and information obtained from Home City. Information provided by Arctic Glacier's attorneys in the settlement negotiations also allowed Plaintiffs' Counsel to evaluate the strengths and weaknesses not only of the legal case, but also whether Arctic Glacier could reasonably pay more in settlement. Plaintiffs' Counsel believe that the Arctic Glacier settlement is fair, reasonable, and in the best interests of the Plaintiffs and the

13

Settlement Class.  The opinion of Plaintiffs' Counsel supports both preliminary (and final) approval of the settlement.[5]

        4.    <u>The Proposed Settlement is Fair to the Settlement Class Members</u> - The settlement provides for a payment of $12.5 million, significant monetary relief that will be allocated to the members of the Settlement Class after deduction of Court approved fees and expenses.  Plaintiffs' Counsel propose that the Arctic Glacier and Home City settlement funds be allocated among Settlement Class members based on the dollar amount of their purchases of Packaged Ice during the Settlement Class Period.  In addition, as discussed above, the extensive cooperation called for by the settlement is another substantial benefit to the Settlement Class.

        5.    <u>Objections By Class Members</u>- At this time, the Court cannot assess Factor 6 (objections by class members).  Even if there are objections, their "existence… does not mean that the settlement is unfair." *In re Telectronics,* 137 F. Supp. 2d at 1018.  Further, "the scarcity of objections- relative to the number of class members overall- indicates broad support for the settlement among Class Members." *Sheick*, 2010 WL 4136958 at *22; accord *In re Cardizem,* 218 F.R.D. at 527 ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement").

        6.    <u>The Settlement Agreement is the Product of Arm's Length Negotiations</u> - There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, unless there is evidence to the contrary. *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-*20.

---

[5] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery that must be done to satisfy this factor.  *Packaged Ice*, 2010 WL 3070161 at *5-*6.  Here, not only was the information the Court cited in *Packaged Ice* available, so was additional information obtained in discovery.  Further, preliminary approval will trigger more extensive cooperation obligations on the part of Arctic Glacier.

Plaintiffs' Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they negotiated at all times at arm's length with Arctic Glacier's counsel. Therefore, the presumption also supports preliminary approval of the Arctic Glacier settlement.

       7.    <u>The Settlement is Consistent With the Public Interest</u> - "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205). *Accord Packaged Ice*, 2011 WL 717519, at *12. This factor also supports approval.

*       *       *

Consideration of the above factors supports preliminary approval of the proposed Arctic Glacier settlement.

       D.    <u>Preliminary Certification of the Settlement Class for Purposes of Disseminating Notice is Also Appropriate</u> - At this juncture Plaintiffs are only seeking authorization from the Court to send notice to the Settlement Class members. Plaintiffs will later seek final approval of a class of direct purchasers of Packaged Ice for settlement purposes only. *See Ford*, 2006 WL 1984363, at *3, *18; *In re Cardizem,* 218 F.R.D. at 516-17. As with the preliminary approval of the settlement, Plaintiffs will address the factors for final certification of a Packaged Ice direct purchaser Settlement Class for purposes of the Arctic Glacier settlement only. *See Thacker v. Chesapeake Appalachia, LLC,* 2009 WL 2407614 (E.D. Ky. Aug. 5, 2009) at *3 - *8.[6]

       1.    <u>The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)</u> - Certification of a class requires meeting the requirements of Fed.R.Civ.P. 23(a) and one of the

---

[6] Paragraph 8 of the proposed Rule 54(b) Final Judgment Order (attached as Exhibit D to the Settlement Agreement) ensures that the ability of the non-settling defendant to contest certification of a litigation class will be unimpaired by the certification of a Arctic Glacier settlement only class. *See Packaged Ice*, 2011 WL 717519, at *7.

subsections of Rule 23(b).  *Ford*, 2006 WL 1984363, at *19 (*citing Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998)).

   (a) <u>The Settlement Class Meets the Numerosity Requirement</u> -  Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Here, based on the information provided by defendants in connection with the Home City notice, their customers number in the hundreds of thousands.  Thus, the Settlement Class is too large for joinder to be practicable, satisfying the numerosity requirement.

   (b) <u>Common Questions of Law and Fact Exist</u> - Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "[T]here need be only a single issue common to all members of the class," *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,* 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996)), and "the resolution of [that common issue] will advance the litigation."  *Sprague*, 133 F.3d at 397.

  In the present case, Plaintiffs have identified common questions of law and fact, such as: whether the defendants contracted, combined, or conspired to allocate territories and customers to fix, raise, maintain, or stabilize Packaged Ice prices; the existence and duration of the alleged contract, combination, or conspiracy; whether the contract, combination, or conspiracy caused Packaged Ice prices to be higher than they would have been in the absence of defendants' conduct, whether defendants' conduct caused injury to the business or property of Plaintiffs and members of the Class, whether defendants' conduct violates Section 1 of  the Sherman Act, and the appropriate measure of the amount of damages suffered by the Class.  Complaint ¶ 20.  The requirement of Rule 23(a)(2) is satisfied.

(c)     Plaintiffs' Claims Are Typical of Those of the Settlement Class -
Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the
class.  Plaintiffs' claims arise from the same course of conduct as the claims of the Settlement
Class, the defendants' alleged violations of the antitrust laws.  Plaintiffs and the Settlement Class
are proceeding on the same legal claim, and alleged violation of Section 1 of the Sherman
Antitrust Act.  *See UAW*, 497 F. 3d at 625.  Therefore, Rule 23(a)(3)'s requirement is met.

(d)     The Named Plaintiffs Will Fairly and Adequately Protect the
Interests of the Settlement Class Members- Rule 23(a)(4) requires that the class representative
fairly and adequately protect the interests of the class.  "There are two criteria for determining
adequacy of representation: (1) the proposed class representative must have common interests
with the other class members; and (2) it must appear that the class representative will vigorously
prosecute the interests of the class through qualified counsel."  *Sheick*, 2010 WL 3070130 at *3
*(quoting Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25, (6th Cir. 1976)).

These requirements are met here.  The Plaintiffs' interests are the same as those of the
absent class members because they all seek to prove that defendants violated the antitrust laws.
Plaintiffs' interests are aligned with those of the Settlement Class, and they have retained
qualified and experienced counsel to pursue this action.

2.     The Proposed Settlement Class Satisfies the Requirements of Rule
23(b)(3) For Settlement Purposes -  Class certification under Rule 23(b)(3) is appropriate if
"questions of law or fact common to the members of the class predominate over any questions
affecting only individual members, and… a class action is superior to other available methods
for the fair and efficient adjudication of the controversy."  *In re Scrap Metal Antitrust Litig.,* 527
F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich.
2009).  The predominance requirement is met where "'the issues in the class action that are

17

subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (*quoting In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir. 2001)). Proof of the conspiracy is a common, predominating question. *In re Scrap Metal,* 527 F.3d at 535; *In re Southeastern Milk Antitrust Litig.,* 2010 WL 3521747, at \*5, \*9-\*11 (E.D. Tenn., Sept. 7, 2010). Affirming class certification in *In re Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation...will not vary among class members' . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." *In re Scrap Metal,* 527 F.3d at 535 (emphasis in original).

In this case Plaintiffs are seeking certification of a class for purposes of the Arctic Glacier settlement only. In *In re Insurance Brokerage Antitrust Litig.,* 579 F. 3d 241, 278, 285 (3rd Cir. 2009), the Third Circuit affirmed the certification of settlement classes and settlement approvals by the district court in an antitrust and RICO case that the district court had dismissed three times, the last time with prejudice. The district court preliminarily approved the settlements, notice was disseminated, and the settlements were finally approved. Objectors appealed the certification of the settlement classes and the approval of the settlements. The objectors challenged certification of the settlement classes principally on the ground that the predominance requirement could not be met. The Third Circuit pointed out that there was not going to be a trial,[7] and the impact inquiry could be proven on a classwide basis based on plaintiffs' theory. *Id.* at \*20. Individual issues regarding the amount of damages did not destroy predominance.

---

[7] In *Amchem,* 521 U.S. at 620, the Court explained that, when determining whether the Rule 23(b)(3) requirements were met when asked to certify a settlement only class, the court need not consider the difficulties in managing a trial of the case because the idea is that the settlement will end the litigation without a trial. *See In re Cardizem,* 218 F.R.D. at 517.

*Id.*[8] As in *In re Insurance Brokerage, supra,* for purposes of the Arctic Glacier settlement the requirements of Rule 23(b)(3) are met.

        3.    <u>Rule 23(g) is Satisfied</u>- Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court appointed Kohn, Swift & Graf, P.C. and Gurewitz & Raben, PLLC as Interim Lead and Liaison Counsel and Home City Settlement Class Counsel. They submit that, for the same reasons that the Court appointed them to those positions, it appoint them Class Counsel for the proposed Arctic Glacier Settlement Class.

VI.    <u>NOTICE TO THE CLASS</u> - Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) also requires a notice to clearly state: (1) the nature of the action; (2) the class definition; (3) the claims, issues or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude any member from the class who so requests; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment. The notice proposed for the Arctic Glacier settlement sets forth the required information, and is essentially the same notice that was provided to the Home City Settlement Class members, which the Court found comported with Rule 23 and due process. In addition, the Notice advises Settlement Class members of the proposed plan of allocation and Class Counsel's request for an award of attorneys' fees and expenses.

---

[8] *See In re Scrap Metal,* 527 F.3d at 535-36; *Beattie,* 511 F.3d at 563.

The Notice (attached as Exhibit 2) will be mailed, First Class, postage prepaid, to all Settlement Class members who were mailed the Home City notice and did not have the notice returned as undeliverable. The Summary Notice (attached as Exhibit 3) will be published in the national edition of *The Wall Street Journal*. In addition, Notice will be posted on Kohn, Swift's website on the Internet. Plaintiffs believe that the content and proposed method of dissemination of the Notice and Summary Notice fulfill the requirements of Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(1) and due process. *See Packaged Ice*, 2011 WL 717519, at *5. Therefore, the notice plan should be approved.

VII.    <u>CONCLUSION</u> - Plaintiffs' Counsel believe that the settlement with Arctic Glacier is in the best interests of the Settlement Class members and should be preliminarily approved by the Court for the purpose of sending notice of the settlement to the Settlement Class. Thus, Plaintiffs, on behalf of the settling parties, respectfully request that their Motion be granted.

DATED: April 7, 2011                     Respectfully submitted,


   */s/ Harold Z. Guerwitz*                  */s/ Joseph C. Kohn*
Harold Z. Gurewitz (P14468)              Joseph C. Kohn
GUREWITZ & RABEN, PLLC                   Robert J. LaRocca
333 West Fort Street                     William E. Hoese
Suite 1100                               KOHN, SWIFT & GRAF, P.C.
Detroit, MI 48226                        One South Broad Street, Suite 2100
(313) 628-4733                           Philadelphia, PA 19107
                                         (215) 238-1700

       Interim Lead and Liaison Counsel for the Direct Purchaser Class