UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE PACKAGED ICE ANTITRUST
LITIGATION

Case Number: 08-MD-01952
Honorable Paul D. Borman

THIS DOCUMENT RELATES TO:
DIRECT PURCHASER ACTIONS

## DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., AND ARCTIC GLACIER INTERNATIONAL, INC.

Harold Gurewitz (P14468)
GUREWITZ & RABEN, PLLC
333 West Fort Street
Suite 1100
Detroit, MI 48226
(313) 628-4733

*Interim Liaison Counsel for the
Direct Purchaser Plaintiffs*

Joseph C. Kohn
Robert J. LaRocca
William E. Hoese
Stephen H. Schwartz
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

*Interim Lead Counsel for the Direct
Purchaser Plaintiffs*

September 28, 2011

81896

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF THE ARCTIC GLACIER SETTLEMENT AGREEMENT.................. 2

        A.      The Settlement Amount .................................................................... 2

        B.      Cooperation..................................................................................... 3

        C.      Release ............................................................................................ 4

        D.      Sales by Arctic Glacier Remain in the Case Against the Other Defendant............ 4

        E.      Rights to Reduce the Settlement Amount or Withdraw From the Settlement........ 4

        F.      Stipulation to Class Certification ...................................................... 5

III.    NOTICE............................................................................................................ 5

IV.     CLAIMS PROCESS AND PROPOSED PLAN OF DISTRIBUTION ........................... 6

V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE......... 6

        A.      Governing Standards......................................................................... 6

        B.      The Settlement Meets the Standards for Final Approval Under Rule 23 .............. 7

        C.      Consideration of the Relevant Criteria Supports Final Approval .......................... 8

                1.      The Likelihood of Plaintiffs' Success on the Merits Weighed
                        Against the Amount and Form of the Relief Offered in Settlement
                        Supports Approval ................................................................... 10

                2.      The Risks, Expenses, and Delay of Continued Litigation Favor
                        Approval ................................................................................. 11

                3. & 4. The Judgment of Experienced Counsel Who Have Competently
                        Evaluated the Strength of The Claims and the Amount and
                        Character of Discovery and Evidence Supports Approval ...................... 12

                5. & 6. The Proposed Settlement is Fair to the Settlement Class Members ........ 13

                7.      The Settlement Agreement is the Product of Arm's-Length
                        Negotiations ........................................................................... 14

        D.      Certification of the Settlement Class for Purposes of Effectuating the
                Arctic Glacier Settlement is Appropriate.................................................... 15

                1.      The Proposed Settlement Class Satisfies the Requirements of
                        Rule 23(a)................................................................................ 16

                        (a)     The Settlement Class Meets the Numerosity Requirement .......... 16

                        (b)     Common Questions of Law and Fact Exist ................................. 16

                        (c)     Plaintiffs' Claims Are Typical of Those of the Settlement
                                Class ................................................................................... 17

(d)     The Named Plaintiffs Will Fairly and Adequately Protect
the Interests of the Settlement Class Members ............................. 17

2.     The Proposed Settlement Class Satisfies the  Requirements of
Rule 23(b)(3) For Settlement Purposes..................................................... 18

VI.     CONCLUSION................................................................................................... 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

FEDERAL CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)...................................................................16, 17, 18, 19

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) .....................................................................18, 19

*Berry v. Sch. Dist. of City of Benton Harbor,*
    184 F.R.D. 93 (W.D. Mich. 1998) ....................................................................9

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 (1981)..............................................................................................8

*Granada Invs. Inc. v. DWG Corp.,*
    962 F. 2d 1203 (6th Cir. 1992) .........................................................6, 10, 15

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ...........................................................................17

*In re Automotive Refinishing Paint Antitrust Litig.,*
    2004 WL 1068807 (E.D. Pa., May 11, 2004) ...................................................7

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ........................................................ passim

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,*
    248 F.R.D. 483 (E.D. Mich. 2008) ..................................................................6

*In re Linerboard Antitrust Litig.,*
    321 F. Supp. 2d 619 (E.D. Pa. 2004) ...............................................................7

*In re Packaged Ice Antitrust Litig.,*
    2011 WL 717519 (E.D. Mich., Feb. 22, 2011) ..................................... passim

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ..............................................................7

*In re Prudential Ins. Co.,*
    148 F.3d 283 (3d Cir. 1998).............................................................................16

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) .....................................................................18, 19

*In re Southeastern Milk Antitrust Litig.*,
  2010 WL 3521747 (E.D. Tenn., Sept. 7, 2010) ...................................................18

*In Re Telectronics Pacing Sys. Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................8, 9, 11, 14

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)...............................................................................18

*Int'l Union, United Auto Aerospace & Agric. Implement Workers of America v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich., July 13, 2006) ..............................................9, 10

*IUE-CWA v. General Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) .....................................................................10

*Lessard v. City of Allen Park*,
  372 F. Supp. 2d 1007 (E.D. Mich. 2005)...............................................................9

*Meijer Inc. v. 3M*,
  2006 WL 2382718 (E.D. Pa., Aug. 14, 2006) .......................................................7

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004)..............................................................................13

*Senter v. General Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ..............................................................................17

*Sheick v. Automotive Component Carrier, LLC*,
  2010 WL 4136958 (E.D. Mich., Oct. 18, 2010) .......................................8, 9, 10, 12

*Sprague v. General Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) .........................................................................16, 17

*UAW v. General Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ...............................................................................6

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ...............................................................................9

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ..................................................................... passim

RULES

Fed. R. Civ. P. 23 ................................................................................................. passim

Fed.R.Civ.P. 23(a) ...............................................................................................5, 16

Fed. R. Civ. P. 23(a)(1) ...................................................................................................16

Fed. R. Civ. P. 23(a)(2) .............................................................................................16, 17

Fed. R. Civ. P. 23(a)(3) ...................................................................................................17

Fed. R. Civ. P. 23(a)(4) ...................................................................................................17

Fed. R. Civ. P. 23(b) ........................................................................................................16

Fed. R. Civ. P. 23(b)(3) ...........................................................................................5, 18, 19

Fed.R.Civ.P. 23(c)(2)(B) ...................................................................................................6

Fed.R.Civ.P. 23 (e)(1) .......................................................................................................6

Fed. R. Civ. P. 23(e)(2) ...........................................................................................6, 8, 10

**OTHER AUTHORITIES**

Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.51 (3d ed. 1992) ....................14

<u>STATEMENT OF ISSUES PRESENTED</u>

1.    Whether the class action settlement between Arctic Glacier Income Fund, Arctic Glacier Inc., and Arctic Glacier International, Inc. (collectively, "Arctic Glacier") and the Direct Purchaser Plaintiffs ("Plaintiffs") embodied in the Settlement Agreement Between Direct Purchaser Plaintiffs and Defendants Arctic Glacier Income Fund, Arctic Glacier Inc., and Arctic Glacier International, Inc., dated March 30, 2011 is fair, reasonable and adequate, and should be approved by the Court.

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..........................................................................................14, 16, 17, 18

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) ........................................................................................17, 18

*Granada Invs. Inc. v. DWG Corp.,*
    962 F. 2d 1203 (6th Cir. 1992) ...................................................................................5, 9, 13

*In re Packaged Ice Antitrust Litig.,*
    2010 WL 3070161 (E.D. Mich., Aug. 2, 2010).....................................................5, 8, 12, 15

In re Packaged Ice Antitrust Litig.,
    2011 WL 717519 (E.D. Mich., Feb. 22, 2011) ............................................................ passim

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) ........................................................................................17, 18

*Int'l Union, United Auto Aerospace & Agric. Implement Workers of America v.*
 *Ford Motor Co.,*
    *2006 WL 1984363 (E.D. Mich., July 13, 2006)* ............................................................ passim

*Sheick v. Automotive Component Carrier, LLC,*
    2010 WL 4136958 (E.D. Mich., Oct. 18, 2010) ............................................................ passim

*Sprague v. General Motors Corp.,*
    133 F.3d 388 (6th Cir. 1998) ...............................................................................................15

*UAW v. General Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) ..............................................................................................5, 9

*Williams v. Vukovich,*
    720 F.2d 909 (6th Cir. 1983) .......................................................................................5, 8, 9, 10

I.    <u>INTRODUCTION</u>

Plaintiffs,[1] on behalf of themselves and a proposed Settlement Class of direct purchasers of Packaged Ice in the United States, have entered into a Settlement Agreement with Arctic Glacier.  Under the terms of the Settlement Agreement, attached as Exhibit A, Arctic Glacier has agreed to make a cash payment totaling $12.5 million under a payment schedule negotiated by the parties, and to provide significant and prompt cooperation to Plaintiffs in connection with the prosecution of their claims against the remaining defendant.  Arctic Glacier has made the initial payment of $2.5 million, plus interest, and has begun providing the cooperation required under the Settlement Agreement.

Plaintiffs now move the Court for a Final Judgment Order: (1) finding that the proposed settlement with Arctic Glacier is fair, reasonable and adequate; and (2) certifying the Arctic Glacier Settlement Class.  Attached as Exhibit B is a proposed Final Judgment Order in the form agreed to by Plaintiffs and Arctic Glacier, which the settling parties respectfully request the Court to enter.  Plaintiffs are also filing motions requesting the Court to approve a plan of distribution to the Class members pursuant to a claims procedure, and an award of attorneys' fees and expenses from the settlement funds.

The Court is familiar with the procedural and substantive requirements for approval of a class action settlement under Rule 23, having considered and approved the earlier partial settlement in this litigation between Plaintiffs and The Home City Ice Company ("Home City").  *In re Packaged Ice Antitrust Litig.,* 2011 WL 717519 (E.D. Mich., Feb. 22, 2011) (Dkt. Nos. 328 and 329).  Plaintiffs respectfully submit, for the reasons set forth in detail below, that the

---

[1] Plaintiffs are Alvin's Enterprises, Inc. d/b/a Party King, Suzie's Investments, Inc. d/b/a Checker Drugs & Food, Arkansas Garden Center West, LLC, Arkansas Garden Center North, LLC, Chi-Mar Enterprises, Inc., Kingsway Enterprises, Polly's Food Service, Inc., Kenco, Inc., and Thomas Beverages Co., Inc. d/b/a Thomas Liquors.

81896                                    1

settlement with Arctic Glacier, which provides for a payment of a similar magnitude and comparable cooperation to that in the Home City settlement, also warrants the Court's approval.

II.     SUMMARY OF THE ARCTIC GLACIER SETTLEMENT AGREEMENT

Plaintiffs and Arctic Glacier executed the Settlement Agreement on March 30, 2011, after months of settlement negotiations conducted by Lead Counsel for the Direct Purchasers and Arctic Glacier's counsel from the law firm of Jones Day. Thereafter, on April 7, 2011, Plaintiffs filed a motion for preliminary approval of the Arctic Glacier settlement. (Dkt. No. 351). On July 20, 2011, the Court granted Plaintiffs' motion, authorized dissemination of notice and a claim form to the Class, and scheduled a final fairness hearing for October 28, 2011. (Dkt. No. 383). Per the Court's Orders, notice of the Arctic Glacier settlement and a claim form were mailed to Class members on August 3, 2011, and summary notice was published on August 11, 2011.

A.     The Settlement Amount

The Settlement Agreement (at ¶19) provides that Arctic Glacier will pay $12.5 million in two installments to an escrow account. The first installment of $2.5 million was paid on August 4, 2011. The second installment is to be paid 30 days after entry of the Final Judgment Order. Interest is to be paid on each settlement payment, with interest starting to accrue 30 days after March 30, 2011. *Id.* The settlement funds are to be (and have been) invested in United States Government Treasury securities or United States Treasury money market funds.

Plaintiffs' Counsel believe that the settlement amount is fair and reasonable under the applicable authority given all the risks presented by this complex litigation. Moreover, Counsel believe that the settlement amount represents the limit that Arctic Glacier could reasonably pay given its financial situation and the control being exerted over it by its lenders. During the settlement negotiations, Arctic Glacier provided information regarding its financial condition, its

relationships with its lenders, its attempts to obtain alternative financing, and has represented to Plaintiffs that it did not reasonably have the financial ability to pay an amount in settlement greater than the settlement amount. Plaintiffs' Counsel reviewed Arctic Glacier's financial information, and had exchanges with Arctic Glacier and its counsel regarding its precarious financial footing, its onerous debt load, and the high degree of lender involvement in its affairs. Plaintiffs' Counsel concluded that Arctic Glacier did not reasonably have the financial ability to pay an amount greater than the settlement amount, and that it was therefore in the best interests of the Class to settle on these terms as Arctic Glacier's financial condition has deteriorated significantly since the inception of this case.[2]

B.     Cooperation

In addition to paying $12.5 million, Arctic Glacier agreed to cooperate with Plaintiffs' Counsel in connection with the prosecution of Plaintiffs' claims against the remaining defendant. Arctic Glacier, per the Settlement Agreement, has produced to Plaintiffs the documents that it produced to the Department of Justice. Arctic Glacier has also arranged a meeting between outside counsel for Arctic Glacier and Class Counsel. Settlement Agreement ¶29. Arctic Glacier also agrees to provide declarations and testimony that may be necessary to establish the admissibility of its documents. *Id.* ¶31(a). Arctic Glacier will also use its best, good faith efforts to make present and former officers and employees available for interviews, depositions or trial testimony. *Id.* ¶31(b).

---

[2] Home City and Plaintiffs continue to discuss the effect (if any) of the most favored nation ("MFN") provision in the Home City settlement. If applicable, the MFN may entitle Home City to a refund of a portion of the amount of money that it has paid pursuant to its settlement agreement, and thus affect the funds available for distribution. The Notice of Proposed Settlement of Class Action with Arctic Glacier Inc., Arctic Glacier International, Inc., and Arctic Glacier Income Fund and Proof of Claim Form, Section III, p. 2., attached as Exhibit C, and the Summary Notice, attached as Exhibit D, informed the Settlement Class members of the dispute regarding the MFN.

C.      Release

Upon the occurrence of the Effective Date, the Releasees (as defined in ¶6 of the Settlement Agreement) will be released from the claims in this Action. *Id.* ¶18. The release is appropriately tailored to the antitrust claims asserted in the Complaint and is comparable to the release provided in the Home City settlement.

D.      Sales by Arctic Glacier Remain in the Case Against the Other Defendant

The proposed settlement will not affect the non-settling defendant's joint and several liability for the alleged conspiracy. Arctic Glacier's sales remain in the case and the non-settling defendant remains jointly and severally liable for damages on those sales. *Id.* ¶34. Thus, the settlement with Arctic Glacier will not limit the Settlement Class' right to recover the full amount of damages from the remaining defendant.

E.      Rights to Reduce the Settlement Amount or Withdraw From the Settlement

Paragraph 20 of the Settlement Agreement provides that Arctic Glacier may reduce its settlement payment based on certain thresholds being crossed regarding the percentage of purchases of Packaged Ice from Arctic Glacier during the Class Period by Arctic Glacier customers that elect to be excluded from the Settlement Class. Paragraph 20 also provides that Arctic Glacier has the right to withdraw from the settlement if the total dollar amount of purchases by Settlement Class members requesting exclusion from the Settlement Class exceeds a certain percentage of either the total sales by Arctic Glacier, or by the other defendants, during the Class Period. To date, only a handful of Class members with relatively small purchases have exercised their right to opt-out of the Class, and there does not appear to be a risk that the reduction provision will be triggered.

F.    Stipulation to Class Certification

Paragraph 12 of the Settlement Agreement provides that the parties stipulate that the requirements of Fed.R.Civ.P. 23(a) and 23(b)(3) are satisfied and, subject to Court approval, that the following direct purchaser Settlement Class shall be certified for settlement purposes only as to Arctic Glacier:

> All purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates (including all predecessors thereof) at any time during the period from January 1, 2001 to March 6, 2008. Excluded from the Settlement Class are governmental entities and Defendants, including their parents, subsidiaries, predecessors or successors, and Defendants' co-conspirators.[3]

III.   NOTICE

In accordance with the Order Granting Preliminary Approval (Dkt. No. 383), 208,862 notices were mailed to addresses provided by the Defendants on August 3, 2011.  (Exhibit A to Dkt. No.393).  A copy of the mailed notice is attached as Exhibit C.  The firm responsible for mailing the notices attempted to obtain new addresses for returned notices, and remailed notices to those Settlement Class members for whom updated addresses were obtained.  Also, Summary Notice was published in the National edition of *The Wall Street Journal* on August 11, 2011. (Exhibit B to Dkt. No.393).  A copy of the published notice is attached as Exhibit D.  The notice, Settlement Agreement and Complaint are also available at www.kohnswift.com.[4]

The form, content and methods of dissemination of the notice provided to the Arctic Glacier Settlement Class are virtually identical to the notice provided to the Home City Settlement Class, which the Court found comported with the requirements of Fed.R.Civ.P.

---

[3] The Court conditionally certified the proposed Settlement Class in the Order Granting Preliminary Approval at 2. (Dkt. No. 383).  The Arctic Glacier Settlement Class definition is the same as the Home City Settlement Class definition.

[4] Arctic Glacier provided the requisite Class Action Fairness Act notice.

23(c)(2)(B) and (e)(1), and due process. *Packaged Ice,* 2011 WL 717519, at *5.  Here, too, notice comports in all respects with the requirements of Rule 23 and due process.

IV.     CLAIMS PROCESS AND PROPOSED PLAN OF DISTRIBUTION

In addition to notifying Settlement Class members of the proposed settlement with Arctic Glacier, the notice includes a Claim Form that describes the claims process and how they can obtain their share of the net settlement funds. Class Counsel are filing a separate motion for approval of a *pro rata* plan of distribution, which we submit provides a fair and well-accepted method of distribution to Class members who file timely and valid claims.

V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

A.     Governing Standards

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *Packaged Ice,* 2011 WL 717519, at *7 (citing, *inter alia, UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007)).  This is true even if the settlement does not include every defendant. *Id.*  The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *Packaged Ice*, 2011 WL 717519, at *8; *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483, 495-96 (E.D. Mich. 2008).

In *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983), the Sixth Circuit set forth factors (discussed *infra*) for district courts to consider when exercising their discretion to determine if a settlement is "fair, reasonable and adequate." *See UAW v. General Motors Corp.,* 497 F.3d at 631. These factors in the context of the Arctic Glacier settlement are discussed below.

B.      The Settlement Meets the Standards for Final Approval Under Rule 23

The Settlement Agreement provides for a $12.5 million cash payment and extensive

cooperation obligations on the part of Arctic Glacier.  The settlement amount was agreed to after

extensive arm's-length negotiations, review and analysis of public information and information

provided by Arctic Glacier as part of the settlement negotiations and consultation with economic

experts, and constitutes a meaningful recovery.  The $12.5 million represents approximately

2.2% of Arctic Glacier's United States sales of Packaged Ice during the proposed Settlement

Class Period of January 1, 2001 through March 6, 2008.  This settlement, when analyzed as a

percentage of the commerce allegedly effected by the Arctic Glacier's conduct, is comparable to

and indeed greater than settlements in other antitrust class actions that have been approved by the

courts.  *See, e.g., In re Pressure Sensitive Labelstock Antitrust Litig.,* 584 F. Supp. 2d 697, 702

(M.D. Pa. 2008) ($8.25 million settlement represented 1.5% of settling defendant's sales during

the class period); *Meijer Inc. v. 3M,* 2006 WL 2382718, at *20 (E.D. Pa., Aug. 14, 2006)

(settlement of $28.9 million represented 2% of settling defendant's sales to class members); *In re*

*Linerboard Antitrust Litig.,* 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (settlements of $34 million

and $92.5 million represented 2.0% and 1.62% of settling defendants' sales approved); *In re*

*Automotive Refinishing Paint Antitrust Litig.,* 2004 WL 1068807 (E.D. Pa., May 11, 2004) (two

settlements worth $48 million representing 2% of sales).

Another important aspect of the settlement is the cooperation that Arctic Glacier has

agreed to provide.  The cooperation provisions of the Settlement Agreement provide a substantial

benefit to the class.  *Linerboard,* 292 F. Supp. 2d at 643.  *See also Labelstock,* 584 F. Supp. 2d at

702.  Since the execution of the Settlement Agreement, Arctic Glacier has provided the

documents that it produced to the DOJ, and an outside attorney for Arctic Glacier has met with Plaintiffs' Counsel.

The parties to the Settlement Agreement engaged in arm's-length negotiations over months, and the proposed Settlement Class is represented by experienced counsel who advocate for its approval. The proposed settlement provides the certainty of a meaningful cash payment and extensive cooperation, and it is preferable to the possibility of a smaller recovery, or no recovery at all, if the litigation continues. Because the proposed settlement is within the "range of reasonableness", Plaintiffs respectfully submit that it is fair, reasonable and adequate and merits final approval by the Court.

     C.    <u>Consideration of the Relevant Criteria Supports Final Approval</u>

Under Fed.R.Civ.P. 23(e)(2), "[t]o warrant district court approval, a class action settlement must be fair, reasonable, and adequate." *Sheick v. Automotive Component Carrier, LLC,* 2010 WL 4136958, at \*14 (E.D. Mich., Oct. 18, 2010). *Packaged Ice,* 2011 WL 717519, at \*8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001)(citing *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983)); *Packaged Ice, supra.*

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an

abbreviated trial on the merits.  *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988).  Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."  *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* §30.42 (1995)). This is particularly true in the case of class actions.  *Berry v. Sch. Dist. of City of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998).

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest."  *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d at 921-23). *See Packaged Ice,* 2011 WL 717519, at *8 (a court is not to substitute its judgment for that of the parties and their counsel, and should approve a settlement if it is fair, reasonable and adequate).  This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued."  *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003).  *Accord Sheick,* 2010 WL 4136958, at *14, *15.

The Sixth Circuit has identified a number of factors relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the risks, expenses, and delay of further litigation; (3) the judgment of experienced counsel who have competently evaluated the strengths and weaknesses of their case; (4) the amount of discovery completed and the character of the evidence uncovered; (5) whether the settlement is fair to the unnamed class members; (6) objections raised by class members; (7) whether the settlement is the product of arm's-length negotiations; and (8) whether the settlement is consistent with the public interest. *Int'l Union United Auto., Aerospace & Agric. Implement Workers of America  v. General Motors*

*Corp.,* 497 F.3d at 631 (6th Cir. 2007); *Granada Invs. Inc.,* 962 F.2d at 1205; *Vukovich,* 720 F.2d at 921; *Packaged Ice, supra; Int'l Union, United Auto Aerospace & Agric. Implement Workers of America v. Ford Motor Co.,* 2006 WL 1984363, at *22 (E.D. Mich., July 13, 2006) (citing *In re Cardizem,* 218 F.R.D. at 522). When evaluating the fairness of a settlement, the court may weigh each factor based on the circumstances of the case. *Packaged Ice, supra.* The Arctic Glacier settlement is fair, reasonable and adequate under the relevant criteria, and warrants approval under Rule 23(e)(2).

        1.     The Likelihood of Plaintiffs' Success on the Merits Weighed Against the
                <u>Amount and Form of the Relief Offered in Settlement Supports Approval</u>

     When considering the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick,* 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 594 (E.D. Mich. 2006)) (citations omitted); *Packaged Ice,* 2011 WL 717519, at *8. Plaintiffs are optimistic about their ultimate success in proving the allegations of the Complaint. Defendants, however, vigorously deny that they engaged in the conspiratorial conduct alleged in the Complaint. Absent the settlement, Arctic Glacier would contest virtually all the issues in the case. Arctic Glacier is represented by highly experienced and competent counsel who are prepared to defend this case through trial and appeal. Risk is inherent in any litigation, and class actions are no different. So, despite their optimism about their claims, Plaintiffs must acknowledge the risk that defendants could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating Plaintiffs' potential recovery. The Home City and Arctic Glacier (and its executives') guilty pleas relate to a limited geographic area and time frame. The Complaint alleges that the defendants participated in a nationwide conspiracy to

unreasonably restrain trade. Further, Reddy Ice has reported that the Department of Justice has closed its investigation without taking any action against it. As a result, proof of liability by defendants is vigorously disputed, and the outcome is not certain.

The risks must be weighed against the settlement consideration: $12.5 million in cash and extensive cooperation by Arctic Glacier, both valuable to the Settlement Class members. Weighing risk and uncertainty of litigation against the settlement benefits tilts the scale toward approval. *Packaged Ice,* 2011 WL 717519, at *9.

> 2.      The Risks, Expenses, and Delay of Continued Litigation Favor Approval

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. at 1013. "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them." *Id.* Because Plaintiffs are still litigating with the another defendant, Class Counsel must be circumspect in disclosing their analysis of the risks of litigation. As set forth in Section C.1., *supra,* Class Counsel believe that antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates. Those risks include: whether certification of the proposed litigation Class can be obtained and upheld on appeal; establishing the conspiracy alleged in the Complaint; establishing classwide antitrust "impact"; and proving damages.

In additional, Arctic Glacier's deteriorating financial condition poses an additional risk to the Class. Even if Plaintiffs are successful in litigating their claim, Arctic Glacier is in no

condition to satisfy a significant judgment, and indeed, may not have remained a viable company in the absence of a settlement of these claims.[5]

The proposed settlement eliminates the risks, expense and delay with respect to a recovery from Arctic Glacier, ensures a substantial payment to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the remaining defendant. This factor strongly supports approval of the proposed settlement.

> 3. & 4. The Judgment of Experienced Counsel Who Have
> Competently Evaluated the Strength of The Claims and the
> Amount and Character of Discovery and Evidence Supports Approval

In deciding whether a proposed settlement warrants approval, Class Counsel's judgment "that the settlement is in the best interest of the Class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Sheick*, 2010 WL 4136958, at *18 (citation omitted). Class Counsel believe the proposed settlement constitutes an excellent result.

Class Counsel negotiated this settlement at arm's-length over a period of many months with well respected and experienced counsel for Arctic Glacier. A number of settlement offers from Arctic were rejected before the final agreement was reached. In addition to the negotiations between counsel, Arctic's top executives were made available to Class Counsel to describe Arctic's financial situation. Class Counsel's investigation, review of documents provided in discovery, the deposition of Keith Corbin, publicly available information about the Department of Justice's investigation, the Informations charging Arctic Glacier and certain of its officers (Gary Cooley, Frank Larson, and Keith Corbin) with antitrust violations, Arctic Glacier's and its

---

[5] The risk of the Settlement Class receiving less (or nothing) if the litigation continues due to economic factors is an important consideration here. *See, e.g., Packaged Ice*, 2011 WL 717519, at * 11. Arctic Glacier has already spent in excess of $25 million on the antitrust investigations and litigation, including its $9 million fine, which it is paying in installments because the DOJ concluded it could not pay the $9 million in a lump sum. Arctic Glacier was and remains debt laden. Its debt is at high interest rates. Arctic Glacier's unit price was $.070 cdn on September 27, 2011, down from $11.69 cdn a unit on March 6, 2008, the day the DOJ investigation became public.

officers' plea agreements and guilty pleas and information obtained from Home City, all

provided important information about the Packaged Ice conspiracy.  Information provided by

Arctic Glacier's attorneys in the settlement negotiations also allowed Class Counsel to evaluate

the strengths and weaknesses not only of the case, but also of Arctic Glacier's ability to pay more

in settlement or withstand a judgment.  All of this information helped to form Class Counsel's

opinion that the Arctic Glacier settlement is fair to the Settlement Class.  Class Counsel's

informed judgment that the Arctic Glacier settlement is fair, reasonable, and in the best interests

of the Plaintiffs and the Settlement Class also supports settlement approval.[6]  *Packaged Ice*, 2011

WL 717519 at *11.

### 5. & 6. The Proposed Settlement is Fair to the Settlement Class Members

The settlement provides for a payment of $12.5 million, significant monetary relief that

will be allocated to the members of the Settlement Class after deduction of Court approved fees

and expenses.  Class Counsel are by separate motion proposing that the Arctic Glacier and the

Home City settlement funds be allocated among Settlement Class members *pro rata*, based on

the dollar amount of their purchases of Packaged Ice during the Settlement Class period.  Class

members will be eligible to share in the settlement funds in a fair and well established manner,

and thus they will receive consideration for the release being given to the Defendants.  In

addition, as discussed above, the extensive cooperation called for by the settlement is another

substantial benefit to the Settlement Class.

---

[6] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no set amount of discovery that must be completed in order to satisfy this factor.  *Packaged Ice.*, 2010 WL 3070161, at *6 (quoting *Newby v. Enron Corp.,* 394 F.3d 296, 306 (5th Cir. 2004) (formal discovery not required for preliminary approval so long as there are factual bases on which to premise the settlement and the class interests are not prejudiced by the settlement negotiations); *Packaged Ice*, 2011 WL 717519, at *10-11.  Plaintiffs' Counsel have been reviewing documents produced by Defendants, and nothing that they have found has altered their view that the proposed Arctic Glacier settlement is fair and reasonable, especially given its financial condition.

81896                                              13

The reaction of the Settlement Class members to the terms of the settlement is a factor the Court is to consider. The deadline for objections to the settlement and for opting out of the Settlement Class is October 8, 2011. To date there have been no objections to the settlement and 12 requests for exclusion. Therefore, at this time the Court cannot fully assess objections by Class members. At the current level, the opt-out percentage is minuscule. Class Counsel will update the Court on any objections and opt-outs that are filed. But, even if there are objections, their "existence… does not mean that the settlement is unfair." *Telectronics,* 137 F. Supp. 2d at 1018. Further, "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Cardizem,* 218 F.R.D. at 527. This is especially true when there are sophisticated class members. *Packaged Ice,* 2011 WL 717519, at *11.

7.    The Settlement Agreement is the Product of Arm's-Length Negotiations

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, unless there is evidence to the contrary. *Telectronics,* 137 F. Supp. 2d at 1018 (citing Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."); *Packaged Ice,* 2011 WL 717519, at *12.

Plaintiffs' Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they negotiated at arm's-length with Arctic Glacier's counsel. The settlement negotiations were proper at all times. The arm's-length, good faith negotiating process and opinion of Class Counsel in favor of the settlement support final approval.

8.    The Settlement is Consistent With the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and

class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).  *Accord Packaged Ice*, 2011 WL 717519, at *12. There do not appear to Class Counsel to be any countervailing public interest justifications present here that would suggest any reason not to approve the Arctic Glacier settlement.  This factor also supports approval.

Consideration of the all the above factors supports final approval of the proposed Arctic Glacier settlement.

D.    Certification of the Settlement Class for Purposes of
      Effectuating the Arctic Glacier Settlement is Appropriate

Plaintiffs seek certification of a class of direct purchasers of Packaged Ice for settlement purposes only.  In the Preliminary Approval Order (Dkt. No. 285, at 2), "[f]or purposes of this Proposed Settlement only, and pending final approval of the Proposed Settlement after a Final Fairness Hearing" the Court preliminarily found Rule 23's requirements met and conditionally certified a Settlement Class, as follows:

> All purchasers of Packaged Ice who purchased Packaged Ice in the
> United States directly from any of the Defendants or their
> subsidiaries or affiliates (including all predecessors thereof) at any
> time during the period from January 1, 2001 to March 6, 2008.
> Excluded from the Settlement Class are governmental entities and
> Defendants, including their parents, subsidiaries, predecessors or
> successors, and Defendants' co-conspirators.

Arctic Glacier stipulates to certification of the Settlement Class and such certification for purposes of implementing the settlement is appropriate.  This proposed Class is the same as the Home City Settlement Class certified by the Court for settlement purposes.  *Packaged Ice,* 2011 WL 717519, at *5-*6.

When considering a request to certify a settlement only class, the Court "may take the proposed settlement into consideration when examining the question of certification." *In re Prudential Ins. Co.,* 148 F.3d 283, 308 (3d Cir. 1998). The Supreme Court has determined that "[s]ettlement is relevant to a class certification." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619 (1997). Certain aspects of the certification analysis do not receive the same treatment in the settlement context. As the Supreme Court explained, "[c]onfronted with a request for settlement - only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems...for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620.

      1.    <u>The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)</u>

Certification of a class requires meeting the requirements of Fed.R.Civ.P. 23(a) and one of the subsections of Rule 23(b). *Packaged Ice,* 2011 WL 717519, at *5; *Ford,* 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998)).[7]

      (a)    <u>The Settlement Class Meets the Numerosity Requirement</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The notice was mailed to over 208,000 purchasers identified by the defendants. Thus, the Settlement Class is too large for joinder to be practicable, satisfying the numerosity requirement.

      (b)    <u>Common Questions of Law and Fact Exist</u>

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "[T]here need be only a single issue common to all members of the

---

[7] The ability of the non-settling defendants to contest certification of a litigation class will be unimpaired by the certification of a Arctic Glacier settlement only class. *Packaged Ice.,* 2011 WL 717519, at *7.

class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996), and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397.

      In the present case there are common issues such as whether defendants conspired to allocate territories and customers, whether the conspiracy elevated Packaged Ice prices, and whether the conduct of defendants injured Class members.  Complaint ¶ 20; *Packaged Ice*, 2011 WL 717519, at *6.  The requirement of Rule 23(a)(2) is satisfied.

      (c)    <u>Plaintiffs' Claims Are Typical of Those of the Settlement Class</u>

      Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class.  Plaintiffs' claims arise from the same course of conduct as the claims of the Settlement Class, the defendants' alleged violations of the antitrust laws, and they are proceeding on the same antitrust claim.  *See Packaged Ice, supra; Ford*, 2006 WL 1984363, at *19 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082)).  Therefore, Rule 23(a)(3)'s requirement is met.

      (d)    The Named Plaintiffs Will Fairly and Adequately
                    <u>Protect the Interests of the Settlement Class Members</u>

      Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class.  Rule 23(a)(4)'s provisions are designed to avoid conflicts of interest between the class representatives and the class members.  "To satisfy Rule 23(a)(4), class representatives 'must possess the same interest and suffer the same injury'" as the class members. *Ford, supra*, at *19 (quoting *Amchem*, 521 U.S. at 625-26).  There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel. *E.g., Ford, supra*, at * 19 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525, (6th Cir. 1976)).  To be adequate, the class representatives must be part of the class, suffer the same

injury, and have the same interests as the class members. *Amchem,* 521 U.S. at 625-26. *See Ford*, 2006 WL 1984363, at *18 (quoting *Amchem*, 521 U.S. at 620).

These requirements are met here. The Plaintiffs' interests are the same as those of the absent Class members because they all seek to prove that defendants violated the antitrust laws. Plaintiffs' interests are aligned with those of the Settlement Class, and they have retained qualified and experienced counsel to pursue this action. *Packaged Ice,* 2011 WL 717519, at *6.

2.  The Proposed Settlement Class Satisfies the
    Requirements of Rule 23(b)(3) For Settlement Purposes

For purposes of the Arctic Glacier settlement the requirements of Rule 23 are met. Class certification under Rule 23(b)(3) is appropriate if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008). The predominance requirement is met where "'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole,…predominate over those issues that are subject only to individualized proof.'" *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (quoting *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir. 2001)). Proof of the conspiracy is a common, predominating question. *E.g., Scrap Metal*, 527 F.3d at 535; *In re Southeastern Milk Antitrust Litig.,* 2010 WL 3521747, at *5, *9-*11 (E.D. Tenn., Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'… Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." *Scrap Metal,* 527 F.3d at 535 (emphasis in original). Individual issues

regarding the amount of damages do not destroy predominance. *Scrap Metal,* 527 F.3d at 535-36; *Beattie,* 511 F.3d at 563.

The proposed Settlement Class is also superior to other means available for fairly and efficiently adjudicating this action. Rule 23(b)(3) lists factors the court should consider in deciding superiority. Here, superiority is demonstrated because the Settlement Class members have not exhibited an interest in individually controlling the prosecution of separate actions, and all the direct purchaser antitrust cases have been centralized in this District.[8]

Here, as with the Home City Settlement Class, certification for settlement purposes is appropriate. *Packaged Ice,* 2011 WL 717519, at \*7.

VI.   CONCLUSION

The settlement with Arctic Glacier is the result of extensive good faith negotiations, after thorough factual investigation and legal analysis, and is, in the opinion of Class Counsel, who are experienced in these matters, fair, reasonable, and adequate to the proposed Settlement Class. Accordingly, Class Counsel believe that the settlement with Arctic Glacier is in the best interests of the Settlement Class members and should be approved by the Court. Further, for purpose of settlement, the Arctic Glacier Settlement Class meets the requirements of Rule 23 and should be certified. Therefore, Plaintiffs respectfully request that their Motion for Final Approval of Proposed Settlement with Arctic Glacier Income Fund, Arctic Glacier Inc., and Arctic Glacier International, Inc. be granted.

---

[8] Manageability is not a factor when considering a settlement only class. *Amchem,* 521 U.S. at 620.

81896                                          19

DATED: September 28, 2011                  Respectfully submitted,


                                            /s/ *Joseph C. Kohn*
                                           Joseph C. Kohn
                                           Robert J. LaRocca
                                           William E. Hoese
                                           Stephen H. Schwartz
                                           KOHN, SWIFT & GRAF, P.C.
                                           One South Broad Street, Suite 2100
                                           Philadelphia, PA 19107
                                           (215) 238-1700

                                           Harold Gurewitz (P14468)
                                           GUREWITZ & RABEN, PLLC
                                           333 West Fort Street
                                           Suite 1100
                                           Detroit, MI 48226
                                           (313) 628-4733


        *Interim Lead and Liaison Counsel for the Direct Purchaser Plaintiffs*


81896                                20