UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE PACKAGED ICE ANTITRUST
LITIGATION

Case No. 08-MDL-1952

Paul D. Borman
United States District Judge

INDIRECT PURCHASER ACTION

---

<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS THE INDIRECT PURCHASERS' CONSOLIDATED CLASS
ACTION COMPLAINT</u>

This matter is before the Court on Defendants Reddy Ice Holdings, Inc. and Reddy Ice Corporation's ("collectively Reddy Ice") Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 376) and the joint motion of Defendants The Home City Ice Company ("Home City") and Arctic Glacier Income Fund, Arctic Glacier Inc. and Arctic Glacier International, Inc. ("collectively Arctic Glacier") to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 375). The Indirect Purchaser Plaintiffs filed a joint brief in opposition to both motions to dismiss. (Dkt. No. 378.) Both Reddy Ice (Dkt. No. 389) and Home City and Arctic Glacier (Dkt. No. 388) filed replies. The Court held a hearing on October 28, 2011. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the Defendants' motions to dismiss.

**INTRODUCTION**

On March 11, 2011, this Court issued an Opinion and Order partially dismissing the Indirect Purchaser Plaintiffs' ("IP Plaintiffs") Amended Consolidated Class Action Complaint (the

"ACAC"). *In re Packaged Ice Antit. Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011). On May 25, 2011, the IP Plaintiffs filed a Consolidated Class Action Complaint (the "CCAC"). This matter is now before the Court on Defendants' motions to dismiss the CCAC under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the motions.

## I.   BACKGROUND

### A.   The Packaged Ice Litigation and the Court's Prior Partial Dismissal of Certain Indirect Purchaser Claims

This action is the lead case in the consolidated class action *In Re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952. In this multidistrict litigation involving 68 consolidated actions, Plaintiffs are both direct purchasers (retail stores and gas stations who purchased from Defendants) and indirect purchasers (individuals who purchased from retail stores and gas stations) of Packaged Ice from Defendants in the United States.

The IP Plaintiffs alleged, in their September 15, 2009 ACAC, that the Reddy Ice Defendants, the Arctic Glacier Defendants and Defendant Home City conspired to allocate customers and markets throughout the United States, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The ACAC sought injunctive relief under the Clayton Act, 15 U.S.C. § 16, and also sought compensatory damages (trebled where permitted) as well as punitive, exemplary and statutory damages under the antitrust and consumer protection laws of 30 (thirty) different states, a disgorgement of profits, and costs and attorneys' fees. The IP Plaintiffs also sought certification of a nationwide class of indirect purchasers of Defendants' packaged ice pursuant to Federal Rule of Civil Procedure 23.

2

On March 11, 2011, this Court issued an opinion and order granting in part and denying in part the Defendants' initial motions to dismiss the IP Plaintiffs' ACAC. (Dkt. No. 334.) In that order, the Court granted Defendants' motions to dismiss all claims based on the laws of states in which no named Plaintiff resided or was alleged to have been injured, *i.e.* all claims under the laws of the states of Arizona, Arkansas, District of Columbia, Idaho, Iowa, Kansas, Maine, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin and Wyoming. The Court further granted Defendants' motions to dismiss the IP Plaintiffs' claims under the consumer protection laws of Florida, Michigan and New York based upon various pleading deficiencies, and dismissed all of the IP Plaintiffs' undifferentiated state-law unjust enrichment claims. The Court further denied Defendants' motions to dismiss the IP Plaintiffs' claims under the antitrust laws of California, Michigan and New York, denied Defendants' motions to dismiss the IP Plaintiffs' claim for injunctive relief, denied Defendants' motions to dismiss based on any applicable statute of limitations and deferred ruling on Arctic Glacier's motion to dismiss the Canadian Arctic Glacier entities.

**B.    The Filing of the IP Plaintiffs' Consolidated Class Action Complaint**

Following this Court's March 11, 2011 Opinion and Order, Defendants were required to respond to what remained of the ACAC on or before March 25, 2011. The parties began discussions regarding Plaintiffs' intentions to file an amended complaint and Defendants' obligations to respond to the existing partially-dismissed ACAC.[1] (Dkt. No. 379, Declaration of Matthew S. Wild, July 15,

---

[1] Both parties refer the Court to correspondence exchanged among counsel in relation to the filing of an "amended" Amended Consolidated Class Action Complaint, and the scheduling of responses to that amended filing. Copies of the relevant correspondence are attached to the Declaration of

3

2011, Ex. 2.) The correspondence indicates that the parties disagreed over whether any amended complaint could add new plaintiffs. Ultimately, without either party conceding their position on the addition of new plaintiffs, the discussions culminated in a stipulated order presented to the Court by the parties on March 25, 2011, which gave IP Plaintiffs until April 26, 2011 to file an amended complaint, relieved Defendants of their obligation to answer or otherwise respond to the partially-dismissed ACAC, and gave the Defendants 30 days to answer or otherwise respond to any new amended complaint, reserving Defendants' right to object on "any and all grounds." (Dkt. No. 340.) The Court entered the Stipulated Order on March 28, 2011. (Dkt. No. 341.)

Per the Stipulated Order, Plaintiffs filed an Amended Consolidated Class Action Complaint on April 26, 2011. (Dkt. No. 355.) Subsequent to the filing of that amended complaint, additional tag-a-long indirect purchaser actions were filed in Kansas, Arkansas and Tennessee, which Defendants brought to the attention of the MDL Panel and which were transferred to this Court for consolidation with the instant MDL proceeding. (Wild Decl. Ex. 1, 16-17; Reddy Ice Reply Br. 2; Dkt. Nos. 356, 371 Conditional Transfer Orders 5 and 6.) Pursuant to further discussions among counsel regarding the newly-filed tag-a-long cases, IP Plaintiffs opted to further amend their complaint, in part to incorporate, at Reddy Ice's request, the newly-filed Kansas tag-a-long action. Thereafter, the parties entered into, and presented to the Court for entry, a second stipulation regarding "the filing of and responding to the new amended consolidated complaint and any other pending indirect purchaser complaints," which relieved Defendants of their obligation to respond to the April 26, 2011 amended complaint, permitted IP Plaintiffs to "promptly" file the instant

_____

Matthew S. Wild, July 15, 2011. (Dkt. No. 379.) The parties do not dispute the authenticity of the documents attached to the Wild Declaration and the correspondence speaks for itself.

CCAC (a copy of which was attached to the stipulation and had previously been circulated to defense counsel), and reserved Defendants' right to challenge the CCAC within 30 days of its filing "on any and all grounds." (Wild Decl. Ex. 1, 16; Dkt. No. 366.) On May 25, 2011, this Court entered the stipulated order, with slight modifications, striking the parties agreement to begin limited discovery. (Dkt. No. 367.)

On May 25, 2011, the IP Plaintiffs filed their CCAC. (Dkt. No. 367.) The CCAC attempts to correct several pleading deficiencies noted by the Court in its March 11, 2011 Opinion and Order by adding named Plaintiffs who allege that they reside in, or have purchased packaged ice from the Defendants in, those states under whose laws IP Plaintiffs seek relief and by adding more specific allegations as to the purchases allegedly made by various named IP Plaintiffs. In addition to the previously-named IP Plaintiffs who allegedly reside and purchased ice from the Defendants in California, Michigan and New York, the CCAC adds named IP Plaintiffs who allegedly reside and purchased ice in North Carolina, Minnesota, Iowa, Arizona, New Mexico, Nebraska, Massachusetts and Kansas. The CCAC further adds claims under the laws of Maine, Nevada and Wisconsin based on purchases allegedly made in those states by named IP Plaintiffs who reside in other states. The CCAC drops claims that previously were asserted in the ACAC under the unfair competition laws of Florida, Indiana and Arkansas and further drops all previously asserted unjust enrichment claims. In sum, the IP Plaintiffs now seek to proceed under the antitrust/unfair competition laws of sixteen states and for injunctive relief under the Clayton Act. The also seek to certify a nationwide class.

With a few notable exceptions, the allegations of the CCAC fairly closely track those of the ACAC, which were discussed in detail in the Court's March 11, 2011 Opinion and Order and will not be repeated here. First, the CCAC adds several Plaintiffs in an effort to cure the standing

deficiencies of the ACAC. The addition of these Plaintiffs, and their corresponding state law claims, is discussed at length below in section IIIB. Second, as to each named IP Plaintiff, the CCAC adds specific allegations regarding when (i.e. during the class period), where (i.e. in which state) and from whom (i.e. which Defendant) the named individuals purchased packaged ice. (CCAC ¶¶ 6-23.) The CCAC has expanded allegations regarding the convictions of Arctic Glacier's officers, Keith Corbin, Frank Larson and Gary Cooley, and has added allegations regarding several alleged state attorney's general investigations of Reddy Ice and Arctic Glacier. (CCAC ¶¶ 48, 49-58.) The CCAC contains additional facts regarding statements allegedly made under oath by Martin McNulty in the context of the criminal proceedings against Defendants. (CCAC ¶59.) The CCAC adds new allegations which refer to filings in the Direct Purchaser antitrust case that provide details regarding alleged recordings of conversations among several officers and employees of the Defendant ice companies allegedly discussing the allocation of territories. (CCAC ¶ 62.) The CCAC also quotes allegations made in a related case, *Chamberlain v. Reddy Ice Holdings, Inc.*, 08-cv-13451 (E.D. Mich. 2008), asserting that certain confidential witnesses were privy to discussions regarding the alleged unlawful market allocation agreements. (CCAC ¶ 63.) Finally, the CCAC adds allegations regarding Arctic Glacier Inc.'s role in the conspiracy based upon disclosures made by Messrs. Corbin, Larson and Cooley that they were in fact employed by Arctic Glacier Inc., and not Arctic Glacier International, during the acts alleged in the CCAC.

### C.   The Instant Motions to Dismiss the CCAC

The Arctic Glacier Defendants and Home City, in their joint motion to dismiss the CCAC, argue that: (1) IP Plaintiffs failed to seek leave of court to add new IP Plaintiffs in the CCAC and that such leave should be denied if sought; (2) IP Plaintiffs fail to allege sufficient facts in the CCAC

6

to support state law claims in states where no named Plaintiff purchased ice as a resident of those states; and (3) Plaintiffs fail to satisfy the standing requirements under Nebraska law. The joint motion also incorporates by reference various arguments previously rejected by this Court in its March 11, 2011 Opinion and Order. The Reddy Ice Defendants make these same arguments in their separately-filed motion and, in addition, argue that: (1) IP Plaintiffs fail to plead sufficient facts to sustain a conspiracy claim against Reddy Ice; (2) the allegations of the CCAC are insufficient to allege that Defendants' conduct had the requisite impact on commerce or on people of certain states; and (3) IP Plaintiffs have dropped any claims asserted under Arkansas law.

## II.   STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits dismissal for "lack of jurisdiction over the subject matter." Lack of subject matter jurisdiction may be asserted at any time, either in a pleading or in a motion. Fed. R. Civ. P. 12(b)(1); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (holding that to survive a motion to dismiss, a complaint must contain "either direct or indirect allegations respecting all material elements to sustain a recovery under some viable legal theory"). "Where subject matter jurisdiction is challenged pursuant to [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir.1990)).

### B.   Federal Rule of Civil Procedure 12(b)(2)

Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Court has discretion to make a

determination as to the existence of personal jurisdiction without an evidentiary hearing but plaintiff must, by affidavit, set forth specific facts demonstrating that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458-1459 (6th Cir. 1991).   A court must consider the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff. *Id.* at 1458.   Where there has been no evidentiary hearing, the plaintiff need only present a *prima facie* case in support of jurisdiction. *Id.* at 1458.

### C.   Federal Rule of Civil Procedure 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.   When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).   But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).   "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 555 (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009):

8

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1949. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965) (emphasis in original). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted).

9

## III.    ANALYSIS

### A.    Plaintiffs Need Not Seek Leave of Court to File Their CCAC

As an initial matter, the Court agrees with IP Plaintiffs that, having twice stipulated to the IP Plaintiffs filing an amended complaint, which Defendants were well aware would attempt to add new IP Plaintiffs, Defendants cannot now object to the filing of that amended complaint without leave of Court. The Court is unpersuaded by Defendants' contention that the May 26, 2011 "Stipulation of the Parties Regarding Scheduling," which clearly by its terms contemplated the IP Plaintiffs filing a newly-amended complaint that attempted to add new named IP Plaintiffs, was simply a "scheduling" stipulation and did not purport to address an agreement as to the filing of a further amended complaint. This contention is belied by the parties' correspondence, which manifests a clear intent on the part of all counsel to permit the filing of such a complaint, reserving the right to challenge any such amended complaint on any and all grounds. Indeed, counsel for Reddy Ice reached out to IP Plaintiffs' counsel regarding a series of tag-a-long cases that had been filed and were likely to be consolidated with this action through the MDL transfer process, inquiring whether IP Plaintiffs' counsel intended to bring the new tag-a-long actions into IP Plaintiffs' pending action. (Wild Decl. Ex. 1, p. 16.)

It simply cannot logically be inferred from the parties' correspondence that Defendants, despite stipulating to the filing of the amended complaint, actually intended to later object to the IP Plaintiffs' filing that amended complaint without leave of Court. Defendants' contention that IP Plaintiffs were required to seek leave of Court before filing the CCAC is baseless. Despite Defendants' assertion to the contrary, this Court was silent in its previous Opinion and Order as to IP Plaintiffs' right to amend the Complaint to add new IP Plaintiffs. Had Defendants declined to

10

stipulate to the filing of the CCAC, Plaintiffs no doubt would have sought leave from this Court. That Defendants agreed to the filing of the CCAC, rather than forcing the IP Plaintiffs to seek leave of Court, does not, however, affect Defendants' right to challenge the pleading based on "any and all grounds," a right which they clearly reserved in both stipulated orders. The Court previously issued an Order denying Defendants' objection to the filing of the CCAC on this ground. (Dkt. No. 398.)

**B.     Plaintiffs Cannot Retroactively Create Subject Matter Jurisdiction By Adding New Plaintiffs to Assert Claims that this Court Previously Dismissed Based on Lack of Subject Matter Jurisdiction**

In its prior Opinion and Order, this Court held that IP Plaintiffs did not have standing to assert claims under the laws of states in which they neither resided nor claimed to have purchased packaged ice and dismissed all claims asserted under the laws of those states. IP Plaintiffs now attempt to resurrect those claims by adding parties whom they allege did make relevant purchases in many of those states and whom they allege do, therefore, have standing to assert claims under the laws of those states. While it is true, as IP Plaintiffs allege, that defective allegations of jurisdiction may be amended to reflect facts that existed at the time a complaint was filed but were improperly or inadequately pleaded, the ability to amend to correct allegations of jurisdiction does not permit a party to retroactively create jurisdiction that did not exist at the time a complaint was filed.

This Court previously held that, at the time the IP Plaintiffs filed their ACAC, they did not have standing to pursue claims under the laws of states in which none of them alleged to have resided or purchased packaged ice. In the CCAC, accepting the Court's prior ruling that they lack standing to assert such claims, IP Plaintiffs seek to add new parties to assert those claims in IP Plaintiffs' stead. While it may be appropriate under certain circumstances to permit parties to allege

11

additional facts to support the standing as to existing plaintiffs, amending to add new parties who assert claims that the IP Plaintiffs never had, and still do not have, must fail. As to the majority of states under whose laws IP Plaintiffs seek to proceed in the CCAC, IP Plaintiffs are not attempting to correct or clarify jurisdictional facts as they existed at the time they filed the ACAC but rather are attempting to cure jurisdictional deficiencies by adding new parties to assert claims that the IP Plaintiffs admittedly have no standing to assert.

1. **IP Plaintiffs will not be permitted to amend the ACAC to add new plaintiffs for the purpose of creating subject matter jurisdiction where none existed at the time they filed their ACAC.**

"[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1283 (5th Cir. 1981). None of the IP Plaintiffs has standing to assert a claim against Defendants under the laws of jurisdictions in which they did not reside and/or purchase packaged ice. They cannot cure this lack of standing by adding plaintiffs who, unlike the original IP Plaintiffs, may have standing to assert such claims. Simply put, these IP Plaintiffs were never entitled to bring claims under the laws of states in which they suffered no injury and cannot be permitted to cure that deficiency by adding new plaintiffs who may have.

Defendants rely on a number of cases in their motions to dismiss which IP Plaintiffs have failed to adequately distinguish. The Sixth Circuit's opinion in *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002) is illustrative. Zurich brought an action as Lear Corporation's subrogee in relation to a fire that occurred at a warehouse subleased to defendant Logitrans, who did work for Lear at the subleased property. Days before trial was to begin, Logitrans first asserted that Zurich

12

was not Lear's true subrogee and sought to bar Zurich from offering evidence at trial or appearing before the jury. Zurich did not deny that it was not the true subrogee, but responded by filing a motion to substitute American Guaranty, the true subrogee, as the real party in interest. The district court denied the motion and the Sixth Circuit affirmed. The Sixth Circuit reasoned that because Zurich was never the true subrogee, Zurich never had standing to pursue the claim against Logitrans and therefore had no standing to move to substitute American Guaranty, the true subrogee: "Article III standing is a jurisdictional requirement that cannot be waived, and such may be brought up at any time in the proceeding. Fed. R. Civ. P. 12(h)(3). Whereas Zurich American admittedly has not suffered injury in fact by the defendants, it had no standing to bring this action and no standing to make a motion to substitute the real party in interest. Accordingly, the district court's denial of Appellants' Rule 17(a) motion to substitute and the subsequent dismissal of the action must be affirmed." 297 F.3d at 531.

Similarly persuasive is the Fifth Circuit's opinion in *Summit Office Park*. Summit and the putative class members it sought to represent were indirect purchasers of rebar materials who filed suit seeking damages under the Sherman Antitrust Act. While their suit was pending, the United States Supreme Court decided *Illinois Brick*,[2] which barred federal antitrust claims for damages by indirect purchasers. The district court granted the defendants' motion to dismiss based on *Illinois Brick* and also denied plaintiffs' motion to amend the complaint to add direct purchasers as plaintiffs to proceed with a direct purchaser action. The district court held that Fed. R. Civ. P. 15 did not contemplate the substitution of an entirely new cause of action, a new class, and new plaintiffs by the original plaintiff. 639 F.2d at 1280. Affirming the district court, the Fifth Circuit reasoned:

---

[4] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

"[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." 639 F.2d at 1282. *See also Thomas v. Metropolitan Life Ins.* Co., 631 F.3d 1153, 1158-60 (10th Cir. 2011) (affirming district court's denial of motion to amend class action complaint to add plaintiffs who had standing to assert a securities fraud claim where the original class representatives had no standing to bring a securities fraud claim); *Stapp v. Broadwing, Inc.*, No. 07-cv-00970, 2009 WL 530100, at *2 (S.D. Ohio Feb. 27, 2009) ("[W]hile 28 U.S.C. § 1653 does allow for defective allegations of jurisdiction to be corrected by amendment, it does not allow amendments to correct defective facts.").

In the instant case, IP Plaintiffs, whom the Court has held have standing to bring claims under the antitrust laws of Michigan, New York and California, do not and never have had standing to bring claims under the laws of states in which they did not reside and/or purchase packaged ice. By way of the instant proposed CCAC, they attempt to assert a whole host of new state law claims by adding plaintiffs who claim to have suffered injury in those states. IP Plaintiffs, through the CCAC, "seek[] not to remedy technically inadequate jurisdictional allegations [permissible under 28 U.S.C. § 1653], but rather to substitute new causes of action over which there would be jurisdiction [impermissible under 28 U.S.C. § 1653]." *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 512 (5th Cir. 1985). IP Plaintiffs are not attempting to cure defective allegations of jurisdiction but rather seek to retroactively create subject matter jurisdiction by adding plaintiffs to assert new claims that the IP Plaintiffs have no standing to pursue. "The Court cannot allow Plaintiffs to amend the Complaint to create jurisdiction retroactively." *Stapp*, 2009 WL 530100, at *3 (citing *Zurich, supra* at 531.)

14

Even assuming that under different circumstances, subject matter jurisdiction could be exercised over these claims, this is clearly not such a case. As counsel for the IP Plaintiffs explained to the Court at the hearing on this matter, these proposed new plaintiffs are not represented by counsel for the IP Plaintiffs, they have their own counsel and intend to maintain the separate identities of their state-law based class action claims as the case proceeds. The proper course for these proposed new plaintiffs in this MDL litigation is to file their claims in the appropriate forums and to permit the MDL consolidation process to operate as intended. Whether their cases, once filed, will be appropriate for consolidation with this action for pre-trial purposes under the MDL rules is an issue to be decided at a later time.

As the transferee Court in this MDL proceeding, this Court will ultimately be obligated to remand all consolidated cases to their transferor districts at the conclusion of pre-trial proceedings. *Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26, 36-37 (1998) (noting that cases transferred pursuant to 28 U.S.C. § 1407 "shall be remanded by the panel at or before the conclusion of such pretrial proceedings *to the district court from which it was transferred*") (citing 28 U.S.C. § 1407) (emphasis in original). "Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over." *Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liab. Litig.*, 785 F. Supp.2d 925, 930 (C.D. Cal. 2011) (quoting *In re Korean Air Lines Co. Antit. Litig.*, 642 F.3d 685, 700 (9th Cir. 2011)). Were the Court to permit the addition of these Plaintiffs, the Court would be without options at the time of remand as these proposed Plaintiffs' claims have no "home," i.e. no transferor court. While an MDL court has "substantial discretion" with regard to consolidated cases, they do "not have the

15

power to override the application of substantive legal standards." *Id.* at *5. The Court cannot simply "assimilate" these proposed Plaintiffs' claims into this MDL action.

This issue was addressed by another MDL court in *In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litig.*, MDL No. 33-1439, 2008 WL 4763029 (D. Oregon Oct. 28, 2008). Although the court "was troubled by plaintiffs' unilateral addition of state law class actions . . . that had not been pending in federal court or elsewhere and were not transferred to [the] court through the MDL process," it was not called upon to address the issue, through a motion to dismiss or otherwise, at the time the claims were added. *Id.* at *3-4. Six years into the litigation, the court revisited the issue of subject matter jurisdiction and concluded that it lacked jurisdiction over "plaintiffs' claims under Colorado, Minnesota, Illinois and New Mexico law [which] were not transferred to [the] court through proper MDL procedures but, rather, were simply added by fiat, [and] had no "home federal court" to which [the court] could eventually remand them." *Id.* at *3. The court dismissed the four added claims, finding no authority that would support a transferee court's exercise of subject matter jurisdiction over claims not transferred through the MDL process. *Id.* at *5.

Similarly here, IP Plaintiffs cannot simply add "by fiat" plaintiffs asserting new claims separate and distinct from the claims that IP Plaintiffs have standing to assert. At the hearing on this matter, counsel for IP Plaintiffs indicated that they "thought they were achieving efficiencies" and "making it easier for everyone" by simply adding these proposed new plaintiffs' claims to their existing complaint. In so doing, however, they have ignored basic Article III principles and have bypassed the appropriate MDL process for consolidation of these plaintiffs' claims.

Accordingly, the Court GRANTS Defendants' motions to dismiss Count III (on behalf of

16

proposed plaintiff Goode under the laws of North Carolina), Count IV (on behalf of proposed

plaintiff Herron under the laws of Minnesota),Count VIII (on behalf of proposed plaintiff

Palombella under the laws of Tennessee), Count XI (on behalf of proposed plaintiff Prentice under

the laws of Arizona), Count XII (on behalf of proposed plaintiffs Groves and Strauss under the laws

of New Mexico), Count XIII (on behalf of proposed plaintiff Deloss under the laws of Iowa), Counts

XIV and XV(on behalf of Plaintiff Croom under the laws of Nebraska) and Count XVI (on behalf

of Plaintiff Sweeney under Massachusetts law) of the CCAC.

> **2.    To the extent that the CCAC adds jurisdictional facts that were in existence as
> to the named IP Plaintiffs, but not adequately pleaded at the time of the filing
> of the ACAC, IP Plaintiffs will be permitted to allege such facts to support new
> claims.**

In its March 3, 2011 Opinion and Order, from which all parties have quoted selectively, this

Court held that IP Plaintiffs' allegations as to injury suffered in states other than their home states

were insufficient to withstand challenge under *Twombly* and *Iqbal*. The Court rejected IP Plaintiffs'

efforts to assert injury in each and every state whose laws they sought to invoke with a single

paragraph in the ACAC which alleged: "Plaintiffs purchased packaged ice indirectly from one or

more of the defendants at retail establishments throughout the United States, including but not

limited to their home states." (Compl. ¶ 13.) The Court held as follows:

> The Court concludes that this sole allegation, stated in a conclusory manner in
> paragraph 13 of the ACAC, cannot withstand a *Twombly* challenge to the sufficiency
> of the allegations of injury suffered by these IP Plaintiffs in states other than their
> home states. These named IP Plaintiffs apparently would have the Court infer that
> they roved the United States during the class period, purchasing packaged ice along
> the way, covering among them each of the 30 states whose laws they seek to invoke
> in their claims. This is simply not plausible. The allegation on which they rely –
> "including but not limited to their home states" – gives no suggestion in which of the
> states, other than their home states, they might have made such purchases. There
> simply is not enough factual matter asserted regarding injury allegedly suffered by

17

these IP Plaintiffs in their non-home states to plausibly suggest a viable claim in those states. . . . The IP Plaintiffs' claims under the antitrust and consumer protection act claims of states in which they do not reside do little more than name the preserve on which they intend to hunt. While their reference to injury suffered "in their home states" may be sufficient as to the states in which they reside, appending the phrase "not limited to" does not win them the day as to the remaining 26 states, none of which the IP Plaintiffs mention by name in their injury allegations in the ACAC.

*In re Packaged Ice Litig.*, 779 F. Supp. 2d 642, 658-59 (E.D. Mich. 2011) (internal quotation marks and citation omitted).

Contrary to Defendants' suggestion otherwise, the Court did not purport to limit IP Plaintiffs to claims of injury suffered within their states of residence. Specifically, the Court held that "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Id.* at 657. The Court did not exclude the possibility that an IP Plaintiff could state a claim based on injury suffered in a state in which he or she did not reside but in which he or she nonetheless allegedly purchased packaged ice and suffered injury. In fact, several courts have held that the state of purchase is the relevant state for purposes of assessing and redressing antitrust injury. *See, e.g. In re Wellbutrin XL Antit. Litig.*, No. 08-2433, 2011 WL 3563835, at *5 (E.D. Pa. Aug. 15, 2011) (recognizing that antitrust violations are "essentially tortious acts" and finding that the place of purchase represents a significant place of contact); *In re Flonase Antit. Litig.*, __F. Supp. 2d__, 2011 WL 4464823, at *9-10 (E.D. Pa. Sept. 26, 2011) (applying the law of the state of purchase).

The Court expresses no opinion at this stage of the proceedings whether, as to any particular IP Plaintiff's alleged purchase of packaged ice, the place of purchase or the place of residence is the proper locus for purposes of assessing antitrust injury. It is sufficient to observe at this stage of the proceedings that the CCAC sufficiently alleges that IP Plaintiffs made specified purchases from

specified Defendants, at specified times in the states of Michigan, New York, Wisconsin, California, Nevada and Maine. It is only the laws of these states under which IP Plaintiffs will be permitted to proceed. Through the CCAC's expanded allegations as to these states, IP Plaintiffs are not attempting to assert claims under the laws of states in which they cannot claim to have been injured, nor are they attempting to cure a lack of subject matter jurisdiction by substituting new plaintiffs or seeking to consolidate existing actions outside the MDL process – IP Plaintiffs' claims are here before this Court and have a "home." In this respect, the addition of allegations by the IP Plaintiffs pertaining to their own purchases of packaged ice in states as to which they attempted, in the ACAC, to allege antitrust injury, constitutes an amendment to cure defective allegations of jurisdiction (permissible under 28 U.S.C. § 1653) and not the addition of allegations to create jurisdiction retroactively where none previously existed (not permissible under section 1653).

Nor is the Court persuaded by Defendants' contention that the IP Plaintiffs' additional allegations as to these claims fail to satisfy the basic pleading requirements of *Twombly* and *Iqbal*. The Court does not find it inherently implausible that an IP Plaintiff might reside in one state and vacation in another state, making his or her more significant purchases of packaged ice in the latter. Nor is it implausible that a single IP Plaintiff may have resided in, and purchased packaged ice in, more than one state during the class period. In conjunction with the general allegations of the CCAC alleging the anticompetitive effects of Defendants' alleged behavior on the price of packaged ice in each and every state where members of the conspiracy sold packaged ice, these allegations are sufficient, at the pleading stage, to state a claim for relief. Defendants cite no authority to support their claim that IP Plaintiffs must identify, at this stage of proceedings, the names of the retail establishments at which they made their purchases or the precise dates of those purchases. This is

19

the subject for class discovery, which can be handled quickly and efficiently through straightforward discovery requests.

To be sure, greater detail will be required of the named IP Plaintiffs going forward, and these allegations may face additional challenge after some discovery.[3] But the Court is not called upon to address those issues in ruling on the instant motions to dismiss. Accordingly, the Court DENIES Defendants' motions to dismiss Count II (on behalf of IP Plaintiffs Acker, Simasko and Stanford under Michigan law), Count V (on behalf of IP Plaintiffs Buttars and Mancusi under New York law)[4], Count VI (on behalf of IP Plaintiff Stanford under Wisconsin law), Count VII (on behalf of IP Plaintiff Feeney under California law), Count IX (on behalf of IP Plaintiff Feeney under Nevada

---

[3] The Court notes that in its prior Opinion and Order, as here, it addresses these standing issue at this pleading stage. The Court's holding that IP Plaintiffs have adequately alleged that they purchased packaged ice, and suffered injury, in certain defined states whose class members they now seek to represent, speaks only to IP Plaintiffs' burden at this pleading stage. The Court expresses no opinion as to whether, at a later stage of the proceedings where IP Plaintiffs will be required to support these allegations with sufficient evidence, they will be able to sustain that higher burden and support their standing allegations. *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n.31 (1979) ("Although standing generally is a matter dealt with at the earliest stages of litigation, usually on the pleadings, it sometimes remains to be seen whether the factual allegations of the complaint necessary for standing will be supported adequately by the evidence adduced at trial."); *In re Terazosin Hydrochloride Antit. Litig.*, 220 F.R.D. 672, 680 (S.D. Fla. 2004) (concluding, in multidistrict litigation alleging that manufacturers of hypertension drug violated numerous state antitrust laws, that certain plaintiff putative class representatives, who survived the Article III standing inquiry at the pleading stage, did not have Article III standing to proceed as class representatives where the record evidence did not sustain plaintiffs' burden of proof at the class certification stage); In *In re Flonase Antit. Litig.*, __ F. Supp. 2d __, 2011 WL 4464823, at *3 (E.D. Pa. Sept. 26, 2011) ( holding that plaintiffs, who had sufficiently pleaded standing in states where they were located or where they purchased Flonase or reimbursed for purchases of Flonase, faced a different and much higher burden at the summary judgment stage).

[4] IP Plaintiffs will not be permitted to add a new plaintiff, Palombella, to support the allegations of Count V.

law), and Count X (on behalf of IP Plaintiffs Buttars and Feeney under Maine law).[5]

## IV.   CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.  IP

Plaintiffs will be permitted to proceed on Counts I (for injunctive relief), II (under Michigan law),

V (under New York law), VI (under Wisconsin law), VII (under California law), IX (under Nevada

law) and X (under Maine law) of the CCAC. The remaining Counts of the CCAC are dismissed

without prejudice.

The Court further ORDERS that the parties proceed immediately with bifurcated discovery,

related solely to class certification, and submit to the Court a Proposed Order setting forth deadlines

by which such class discovery shall be conducted and completed.[6]

IT IS SO ORDERED.

Dated:  12 -12 - 11

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court is granting Defendants' motions to dismiss Counts XIV and XV (on behalf of
Plaintiff Croom under Nebraska law) on other grounds, it need not address Defendants' arguments
that these claims fail to satisfy separate standing requirements under Nebraska law.

[6] Arctic Glacier and Home City, in their joint motion, and Reddy Ice in its motion, incorporate by
reference all of the arguments made in their previously filed, and partially denied, motions to
dismiss. (Jt. Mot. 11-12; Reddy Ice Mot. 4 n. 5.) The Court declines to re-address these arguments,
which incorporate multiple pages of prior briefing that put Defendants far beyond the page limit
allotted for the instant motions to dismiss.  Similarly, the Court rejects Reddy Ice's argument that
the CCAC contains insufficient allegations of conspiracy. (Reddy Ice Mot. 4-5.)  As the Court
discussed in its prior Opinion and Order, these allegations sufficiently plead a conspiracy. *In re
Packaged Ice Antit. Litig.*, 779 F. Supp. 2d 642, 659 (E.D. Mich. 2010). The IP Plaintiffs have
sufficiently alleged the elements of a conspiracy in the CCAC as amended, which only strengthens
prior allegations, specifically with reference to Reddy Ice's participation in the conspiracy. *See*
CCAC ¶ 62.