UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE PACKAGED ICE ANTITRUST
LITIGATION                                     Case No. 08-MDL-01952

                                               Paul D. Borman
THIS ORDER RELATES TO:                         United States District Judge
DIRECT PURCHASERS ACTION
_____/

OPINION AND ORDER
(1) GRANTING DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH REDDY ICE HOLDINGS, INC. AND REDDY ICE
CORPORATION (ECF NO. 467) AND
(2) GRANTING DIRECT PURCHASER PLAINTIFFS' COUNSEL'S MOTION FOR AWARD
OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES,
AND INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES (ECF NO. 468)

This matter is before the Court on Direct Purchaser Plaintiffs' Motion for Final Approval of

Proposed Settlement with Reddy Ice Holdings, Inc. and Reddy Ice Corporation (ECF No. 467) and

Direct Purchaser Plaintiffs' Counsel's Motion For an Award of Attorneys' Fees, Reimbursement of

Expenses and Incentive Awards to the Class Representatives (ECF No. 468). A Final Fairness

Hearing was held on October 19, 2012. For the reasons that follow, the Court GRANTS the motion

for final approval of the Reddy Ice settlement and GRANTS the motion for an award of fees,

expenses and incentive awards.

**INTRODUCTION**

This action is the lead case in the consolidated class action *In re Packaged Ice Antitrust*

*Litig.*, No. 08-MDL-1952 (E.D. Mich. 2008). In this multidistrict litigation involving some 68

consolidated actions, Plaintiffs are both direct purchasers (retail stores and gas stations who

purchased directly from Defendants) and indirect purchasers (individuals who purchased from retail

1

stores and gas stations) of packaged ice from Defendants in the United States.

 This Opinion and Order relates to the Direct Purchaser action, which alleges that Defendants Reddy Ice Holdings, Inc. and Reddy Ice Corporation ("Reddy Ice"), Defendants Arctic Glacier Income Fund, Arctic Glacier, Inc. and Arctic Glacier International, Inc. ("Arctic Glacier") and Defendant Home City Ice Company ("Home City") conspired to allocate customers and markets throughout the United States, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The Direct Purchaser Plaintiffs now move for final approval of a settlement agreement with the Reddy Ice Defendants, the last remaining Defendant in the Direct Purchaser action, and for an award of attorneys' fees, reimbursement of expenses and incentive awards for class representatives.[1]

## I. BACKGROUND

###  A. The Facts Giving Rise to the Reddy Ice Settlement

 The Background Facts of this Litigation are thoroughly set forth in this Court's prior Opinions and Orders approving the Direct Purchaser Plaintiffs' settlements with the Home City Ice Company, *In re Packaged Ice*, No. 08-mdl-1952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) (*Packaged Ice II*) and with the Arctic Glacier Defendants, *In re Packaged Ice*, No. 08-mdl-1952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) (*Packaged Ice III*).  The Direct Purchaser Plaintiffs now seek this Court's approval of a proposed settlement with the remaining Defendant in the Direct Purchaser Action, Reddy Ice.  Reddy Ice has paid $750,000 to settle the Direct Purchaser claims and has agreed additionally to pay the cost of settlement notice.

---

[1]  Direct Purchaser Plaintiffs Alvin's Enterprises, Inc. d/b/a Party King, Suzie's Investments, Inc. d/b/a Checker Drugs and Food, Arkansas Garden Center West, LLC, Arkansas Garden Center North, LLC, Chi-Mar Enterprises, Inc., Kingsway Enterprises, Polly's Food Service, Inc., Kenco, Inc. and Thomas Beverages Co., Inc. d/b/a Thomas Liquors have been appointed as the class representatives for the Proposed Settlement Class.

On April 12, 2012, Reddy Ice filed a notice of filing bankruptcy in the United States Bankruptcy Court for the Northern District of Texas, staying this action against the Reddy Ice Defendants, *In re Reddy Ice Holdings, Inc. and Reddy Ice Corp.*, No. 12-32349 (N.D. Tex. Bankr. 2012).  (Notice of Filing, ECF No. 443.)  At the time that Reddy Ice filed for bankruptcy in the Northern District of Texas, the Direct Purchaser Plaintiffs were pursuing their claims in this Court against Reddy Ice, having received cooperation agreements from the two other Defendants, Home City Ice Company and the Arctic Glacier Defendants, through earlier settlement agreements.[2] Defendants had produced to the Direct Purchaser Plaintiffs over 800,000 pages of documents and the Direct Purchaser Plaintiffs were working with economic experts in preparation for class certification motions and damages models.

---

[2]  Pursuant to the payment terms of the Direct Purchaser Plaintiffs' Settlement Agreement with Arctic Glacier, Arctic Glacier agreed to pay $12.5 million in two installments.  *Packaged Ice III*, 2011 WL 6209188, at *3.  The first installment of $2.5 million was paid on August 4, 2011.  In the original Settlement Agreement, the second installment of $10 million was to be paid on the later of November 1, 2011 or 30 days after this Court entered its Final Order approving the AG Settlement Agreement.  By an Amendment dated October 26, 2011, the Direct Purchaser Plaintiffs and Arctic Glacier agreed to modify the date on which the second installment payment would be due to "the later of April 2, 2012 or thirty (30) days after entry of the final judgment order" approving the AG Settlement.  *Id*.

On February 23, 2012, the Arctic Glacier Defendants filed for bankruptcy protection in the United States District Court for the District of Delaware under Chapter 15 of the United States Bankruptcy Code.  *In re Arctic Glacier Int'l, Debtors in a Foreign Proceeding*, No. 12-10605 (Dist. Del. Bankr. 2012).  The Arctic Glacier bankruptcy proceedings were commenced and have proceeded in an action under Canada's *Companies Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, currently pending before Madam Justice Spivak in the Court of Queen's Bench of Winnipeg.  At the time that Arctic Glacier filed for bankruptcy protection, the Settlement Agreement between the Direct Purchaser Plaintiffs and the Arctic Glacier Defendants was only partially performed, with the $10 million second installment still due under the Settlement Agreement.

At the instant Final Fairness Hearing on October 19, 2012, Mr. Kohn, counsel for the Direct Purchaser Plaintiffs, informed the Court that it was his understanding that the claim of the Direct Purchasers under the Arctic Glacier Settlement Agreement had been accepted by the Canadian bankruptcy court and that the parties were hopeful that a distribution of the settlement payment (plus interest) would be made some time in December, 2012.

Following Reddy Ice's bankruptcy filing, Lead Counsel for the Direct Purchasers, Kohn Swift, engaged bankruptcy counsel to represent the interests of the Direct Purchaser Plaintiffs in the Texas bankruptcy proceedings.  Kohn Swift had previously engaged the firms of Carson Fischer, P.L.C. in Bloomfield, Hills, Michigan, Saul Ewing L.L.P. in Wilmington, Delaware and Dickinson Wright L.L.P. in Toronto, Canada in connection with the earlier-filed Arctic Glacier bankruptcy proceedings.  These firms also assisted in the representation of the Direct Purchaser Plaintiffs in the Reddy Ice bankruptcy proceedings, along with the Texas firm of Munsch Hardt Kopf & Harr, P.C. which was involved in the day to day litigation of the Reddy Ice bankruptcy proceedings.  In the bankruptcy proceedings, one of the class representatives, Thomas Beverages Co., d/b/a Thomas Liquors, was appointed as a member of the Reddy Ice Official Committee of Unsecured Creditors and actively participated on the Committee, representing the interests of the Direct Purchaser Plaintiffs.

Prior to the proposed settlement, pursuant to the Joint Plan of Reorganization of Reddy Ice Holdings, Inc. and Reddy Ice Corporation (the "Plan"), the Direct Purchaser Plaintiffs and the proposed Settlement Class were classified in the Class 8A Reddy Corporation General Unsecured Claims and 8B Reddy Holdings General Unsecured Claims.  The Class 8B claims were entitled to a *pro rata* share of $300,000 under the Plan and the Class 8A claims were entitled to no distribution. Had this proposed settlement not been negotiated, the Direct Purchaser Plaintiffs would have filed claims and objections in the bankruptcy proceedings.  During the negotiations for the proposed Settlement Agreement with the Direct Purchaser Plaintiffs, Kohn Swift was informed by counsel for Reddy Ice that Reddy Ice intended to file an objection in the Bankruptcy Court to disallow the Direct Purchaser Claims entirely.  Eventually, the parties reached the instant proposed Settlement

4

Agreement, negotiating at length during the months of April and May, 2012.

The Settlement Agreement was executed on May 10, 2012. On May 18, 2012, on Reddy Ice's motion, the Bankruptcy Court held a hearing and found that the settlement was reasonable and in the best interests of Reddy Ice's estate and its creditors and authorized Reddy Ice to enter into the settlement. Following the bankruptcy court's approval, the Direct Purchaser Plaintiffs filed a motion in this Court seeking preliminary approval of the Reddy Ice Settlement. (ECF No. 447.) Subsequently, this Court held a telephone hearing with counsel for Reddy Ice and the Direct Purchaser Plaintiffs regarding the proposed Notices submitted in connection with the motion for preliminary approval, which resulted in the Court's July 11, 2012 Order requiring the filing of revised Notices. (ECF No. 459.) On July 12, 2012, the Direct Purchaser Plaintiffs filed revised Notices, compliant with the Court's July 11, 2012 Order. (ECF No. 460.)

On July 24, 2012, this Court held a hearing on the motion for preliminary approval and on July 25, 2012, issued an Order granting preliminary approval and authorizing dissemination of the revised Notices. (ECF No. 463.) Per the Court's July 25, 2012 Order, Notice of the Settlement Agreement was mailed to class members who previously had filed claims in connection with the prior settlements with Home City and Arctic Glacier and Notice was also published in *The Wall Street Journal* and made available on a dedicated website on the Internet. (ECF No. 466, Notice of Filing Affidavits of Mailing and Publication.) On September 19, 2012, Direct Purchaser Plaintiffs filed the instant motions for final approval of the settlement agreement (ECF No. 467) and a separate motion requesting attorneys' fees, reimbursement of costs and expenses and incentive payments for class representatives (ECF No. 468).

### B.    The Principal Terms of the Settlement Agreement

Under the Settlement Agreement, Reddy Ice agreed to pay and has paid the Direct Purchasers $750,000, and agreed also to reimburse the Direct Purchasers for Notice costs in an amount not to exceed $140,000.  (ECF No. 467, Ex. A, Settlement Agreement ¶¶ 21, 23.)  Released parties, as defined in paragraph 9 of the Settlement Agreement, will be released as described in paragraph 20 of the Settlement Agreement from all claims, known and unknown, resulting from the purchase of Packaged Ice in the United States from Reddy Ice during the class period.  *Id.* ¶¶ 9, 20.

The Settlement Class does not release Arctic Glacier from any claims made against Arctic Glacier in the Canadian or Delaware bankruptcy proceedings.  Also not released are the claims of indirect purchasers or claims based on product defects.  *Id.* ¶ 20.  The Settlement Agreement also provides that, in the event that this Court does not approve the Settlement Agreement or the decision to approve it is overturned on appeal, Reddy Ice and the Direct Purchaser Plaintiffs will each have the option to rescind the Settlement Agreement, and reserve all rights to proceed, including in the bankruptcy proceedings.  In such an event , the Settlement Amount, minus notice costs, shall be returned to Reddy Ice.  *Id.* ¶¶ 20, 26.  The Settlement Agreement also provided that in the event that Reddy Ice consummates an acquisition of Arctic Glacier, Reddy Ice shall pay an additional $250,000 to the Settlement Fund.  *Id.* ¶ 22.  This eventuality, as we now know, did not occur as Arctic Glacier was purchased by H.I.G. Capital Partners when it emerged from bankruptcy.

The Settlement Agreement stipulates that all of the requirements of Federal Rule of Civil Procedure 23 have been met and stipulates to a Settlement Class of all purchasers of Packaged Ice who purchased directly from any of the Defendants or their subsidiaries or affiliates during the class period, i.e. January 1, 2001 to March 6, 2008, excluding certain Reddy Ice entities and governmental

6

agencies.  *Id.* ¶ 16.

## II.   NOTICE

The Direct Purchaser Plaintiffs, in compliance with this Court's July 25, 2012 preliminary approval order, mailed Notices to class members who had previously submitted claims in connection with the Home City and Arctic Glacier settlements on August 3, 2012 and also published Notice on August 13, 2012 in *The Wall Street Journal*.  (ECF No. 466, Notice of Filing Affidavits of Mailing and Publication.)  The Court finds that the method, form and content of the class notice by mail and publication satisfies Fed. R. Civ. P. 23(e) notice requirements.  "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing."  3 Newberg on Class Actions, § 8.32 (4th ed.2010).

The Court concludes that mailing notice to those class members who previously submitted timely and valid claim forms was the best and most practicable notice under the circumstances. Class members had two previous notices in connection with the Home City and Arctic Glacier settlements that informed class members of the litigation and of their rights with regard to participating in the settlement of the litigation or opting out.  Specifically, in connection with Arctic Glacier settlement, the notice informed class members that in order to participate in the proceeds of the Arctic Glacier settlement, or of any future settlement in the litigation, class members had to submit a claim by November 26, 2011.  Mailing notice of the Reddy Ice settlement to those members who previously had responded with a timely claim was "reasonably calculated, under all the circumstances, to apprise [the Class Members] of the pendency of the action and afford them an

7

opportunity to present their objections." *UAW v. General Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) (citations omitted).  To date, no objections to the Reddy Ice settlement have been filed and no persons or entities have opted-out.

## III.    ANALYSIS

The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.  *IUE–CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions").  "The evaluation and approval of a class settlement is committed to the sound discretion of the district court" and the district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'"  *IUE–CWA*, 238 F.R.D. at 593, 594. "In exercising that discretion, the Court may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Int'l Union v. Ford Motor Co.*, No. 05–74730, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006) (internal quotation marks and citations omitted). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA*, 238 F.R.D. at 594 (internal quotation marks and citations omitted); *Sheick v. Automotive Component Carrier LLC*, No. 09–14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010) ("In assessing a proposed settlement, the district court judge 'may not substitute his or her judgment for that of the litigants and their counsel' and 'should approve a class settlement if, following a hearing, the court

determines that the settlement 'is fair, reasonable, and adequate.'") (quoting *IUE–CWA*, 238 F.R.D. at 593). "Settlement embodies a bargained give and take between the litigants that is presumptively valid about which the Court should not substitute its judgment for that of the parties." *Ford Motor*, 2006 WL 1984363, at *21 (internal quotation marks and citation omitted).

### A.     Final Certification of the Reddy Ice Settlement Class

Certification of a class must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of Federal Rule of Civil Procedure 23(b).  *Ford Motor*, 2006 WL 1984363, at *18 (citing *Sprague v. General Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998)). The Court discussed each of the relevant factors in its prior Orders finally approving the Home City and Arctic Glacier Settlement Agreements, which approved the same class as proposed here for purposes of those settlement.  *See In re Packaged Ice II*, 2011 WL 717519, at *5-6; *In re Packaged Ice III*, 2011 WL 6209188, at *8-10.  For the same reasons that this Court concluded that the Home City and Arctic Glacier settlement classes, which are defined in the same manner as the proposed Reddy Ice Settlement Class, met the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), the Court concludes that the Reddy Ice Settlement Class meets the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance and superiority.  *See In re Packaged Ice II*, 2011 WL 717519, at *5-6; *In re Packaged Ice III*, 2011 WL 6209188, at *8-10.

### B.     The Reddy Ice Settlement is Fair, Reasonable and Adequate

The Sixth Circuit has identified a number of factors that may be relevant in determining whether a settlement is fair, reasonable and adequate: "(1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the

amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest." *UAW*, 497 F.3d at 631. "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Ford Motor*, 2006 WL 1984363, at *22.

Consideration of the factors most relevant to the instant case leads the Court to conclude that, given the complexity of the litigation, the multitude of factual and legal hurdles which are presented by Reddy Ice's recent bankruptcy and the probable status of the Direct Purchaser claims in the bankruptcy proceedings, the Reddy Ice Settlement Agreement falls within the range of reasonableness, fairness and adequacy required under Fed. R. Civ. P. 23.

**1.      The likelihood of Plaintiffs' success on the merits weighed against the amount and form of relief offered in the settlement supports approval.**

In determining whether the relief offered in a settlement outweighs the plaintiffs' chances of ultimate success on the merits, the Court "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion." *IUE–CWA*, 238 F.R.D. at 594. The Court "is not to decide whether one side is right or even whether one side has a better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute." *UAW*, 497 F.3d at 632.

Reddy Ice's debts have been discharged in bankruptcy and the Direct Purchaser Plaintiffs' claims would have been one of hundreds of other unsecured creditor claims and would have involved a costly claims process in bankruptcy with little chance of recovering anything. The $750,000 in cash must be considered more valuable to the class members than an unsecured claim in bankruptcy. This factor weighs in favor of approval of the settlement.

      **2.**      **The complexity, expense and likely duration of the litigation favor approval.**

As discussed above, the Direct Purchaser Plaintiffs' claims were classified as unsecured in the Reddy Ice bankruptcy proceedings and Reddy Ice intended to file an objection seeking to challenge the Direct Purchaser Plaintiffs' claims altogether. Without the settlement, the Direct Purchaser Plaintiffs likely faced a costly battle in the bankruptcy court with little hope of receiving anything close to the $750,000 that they received in cash through the settlement agreement. Even more so than with Arctic Glacier, whose financial health was in question but who had not yet filed for bankruptcy at the time of the settlement with the Direct Purchaser Plaintiffs, the Court is convinced that in this case, something was better than nothing. This factor weighs in favor of final approval of the Reddy Ice settlement.

      **3.**      **The opinions of class counsel.**

The Court appointed Kohn, Swift & Graf, P.C. as Interim Lead counsel and Gurewitz & Raben, PLLC as interim liaison counsel after thorough review of their credentials and abilities which are discussed in greater detail in the Court's June 1, 2009 Opinion and Order Appointing Interim Class Counsel. (ECF No. 175.) Class Counsel's judgment that settlement is in the best interests of the class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick*, 2010 WL 4136958, at *18 (citation omitted). Upon learning of Reddy Ice's filing for bankruptcy protection, Class counsel promptly sought the advice of competent and experienced bankruptcy counsel to assist in navigating those waters. Counsel represent to the Court that the proposed settlement with Reddy Ice is the best result that could have been obtained under the circumstances. The Court finds that this factor weighs in favor of final approval of the Reddy Ice settlement.

4.      **There have been no objections by absent class members.**

To date, as with the Home City and the Arctic Glacier settlements, there have been no objections filed to the Reddy Ice settlement agreement.  There also have been no opt-outs in this Reddy Ice Settlement.  "[U]nanimous approval of the proposed settlement [ ] by the class members is entitled to nearly dispositive weight in the court's evaluation of the proposed settlement."  *In re Linerboard Antit. Litig*., 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004).  This factor weighs in favor of final approval of the Reddy Ice Settlement Agreement.

5.      **The Reddy Ice settlement agreement has no hint of collusion and is in the public interest.**

As the Court noted with respect to both the Home City and Arctic Glacier settlements, there is no evidence of collusion between Kohn Swift and Reddy Ice counsel.  *In re Packaged Ice III*, 2011 WL 6209188, at *14.  Likewise, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Id*. at *15 (citing *In re Cardizem CD Antit. Litig*., 218 F.R.D. 508, 530 (E.D. Mich.  2003)).  There appears no countervailing public interest here that would caution against approval of the Reddy Ice settlement.  Accordingly, this factor weighs in favor of final approval of the Reddy Ice Settlement Agreement.

C.      **The Proposed Plan of Distribution is Reasonable**

As the Court explained in *In re Packaged Ice III*, several courts have approved the *pro rata* method for distribution of the Settlement Funds in antitrust cases:

> Of the distribution methods proposed, we think the pro rata or proportional method is the most appropriate here. The Class Plaintiffs alleged that they paid inflated prices for brand name prescription drugs. Assuming the truth of this allegation, for purposes of distribution only, each class member's damages are in direct proportion to the amount of brand name prescription drugs each purchased. Each class member,

12

therefore, is entitled to damages measured as follows: its purchases of brand name prescription drugs as a percentage of all class members' brand name prescription drug purchases for the relevant time period. We note that courts have utilized the pro rata distribution method in several prior price-fixing class actions. *See, e.g., In re Airline Ticket Commission Antitrust Litig.*, 953 F. Supp. 280, 284–85 (D. Minn.1997) (proposed pro rata distribution plan was "cost-effective, simple and fundamentally fair."); *In re Corrugated Container Antitrust Litig.*, 556 F. Supp. 1117, 1129 (S.D. Tex.1982) (approval of class action settlement that provided for pro rata distribution based upon valid claims of allowable purchases), *aff'd*, 687 F.2d 52 (5th Cir.1982). . . . We think this method will provide the most accurate measure of the damages suffered by each class member and, for this reason, we endorse the pro rata distribution method.

*In re Packaged Ice III*, 2011 WL 6209188, at *16 (quoting *In re Brand Name Prescription Drugs Antit. Litig.*, No. 94 C 897, 1999 WL 639173, at *4 (N.D. Ill. Aug.17, 1999)).

The Court reiterates that the proposed Plan of Distribution, under which the Reddy Ice Settlement Funds will be distributed, is fair, reasonable and adequate.

### D.      The Request for Attorneys' Fees, Costs and Expenses and Incentive Awards

An award of attorneys' fees in common fund cases need only be "reasonable under the circumstances." *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The Court must consider and discuss the relevant factors that determine reasonableness, which include: ' "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'" *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (holding that a district court's award of attorneys' fees in a common fund case need only be reasonable under the circumstances but remanding for an on-the-record discussion of these factors) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.1996)).

In its prior Opinion and Order granting final approval of the Direct Purchaser Plaintiffs' settlement agreement with Arctic Glacier, the Court also addressed class counsel's request for attorneys' fees, ultimately awarding $6,753,461 in attorneys' fees. *In re Packaged Ice III*, 2011 WL 6209188, at *21; ECF Nos. 421, 422. Class counsel now request a fee of $225,000, which is 30% of the $750,000 settlement amount resulting from the Reddy Ice settlement. As the Court noted in its previous Opinion and Order, the "the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions." 2011 WL 6209188, at *19 (collecting cases). Class counsel points out that if its requested $225,000 is awarded, the total fees awarded would be 26% of the aggregate $26.75 million in settlement funds, an overall percentage even below the commonly approved 30% figure. (ECF No. 468, Fees Mot. 6.)

Considering the factors identified by the Sixth Circuit as significant in assessing the reasonableness of a requested fee award, the Court concludes that the $225,000, which represents only fees generated by Kohn Swift and Gurewitz Raben (ECF No. 468, Exs. A-1, A-2), is reasonable. Counsel have secured a valuable benefit for the class in recovering $750,000 from a bankrupt defendant; the lodestar check supports the award since the requested amount of $225,000 is a fraction of the lodestar (since the initial fee petition in connection with the Home City and Arctic Glacier settlements, Lead and Liaison Counsel have expended an additional 1408.50 hours for a lodestar for $600,675.50); the risk of non-payment, or in this case no recovery in bankruptcy, is real and likely; the complexity of the litigation remains high; and the skill and experience of counsel in this Direct Purchaser action has been commendable. The Direct Purchaser Plaintiffs have rarely approached the Court with motion practice or discovery disputes and have handled settlements with all three Defendants in an orderly and timely fashion. The Court finds no basis to deviate from, or

14

to award Class Counsel less than, the prevailing and commonly accepted fee award amount in complex cases of this type.  Accordingly, the Court approves the request for $225,000 in attorneys' fees.

### E.    Request for Litigation Expenses

The Direct Purchaser Plaintiffs additionally seek an additional $100,000 as reimbursement for litigation costs and expenses that were incurred in addition to the funds ($750,000) approved by the Court for future litigation expenses, nearly all of which has been disbursed.[3]  These expenses

---

[3] At the October 19, 2012 Final Fairness Hearing, the Court requested the Direct Purchaser Plaintiffs to submit additional information concerning payments to the four bankruptcy law firms that represented the interests of the Class Members in the Arctic Glacier and Reddy Ice Bankruptcy proceedings in Delaware, Canada and Texas.  The Court also requested Interim Lead Counsel to provide a schedule of the expenditures made from the $750,000 expense fund approved by the Court in connection with the first Direct Purchaser settlement with Home City.  On November 2, 2012, Direct Purchaser Plaintiffs submitted further detail as to both the hours spent and the hourly rates of all attorneys involved in the bankruptcy proceedings and a breakdown of all expenditures from the $750,000 expense fund that have been made since the last (Fourth) report was submitted to the Court.  (ECF No. 475, Interim Lead Counsel's Supplemental Submission in Connection with the Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Costs and Expenses.)

The four bankruptcy firms, Carson Fischer P.L.C., Saul Ewing LLP, Munsch, Hardt, Kopf & Harr, P.C., and Dickinson Wright LLP Toronto, submitted individual declarations detailing the nature of the work they performed, the hours spent by each individual attorney in the firm and the hourly rates of each attorney who worked on the case.  (ECF No. 475, Exs. A-D.)  Carson Fischer was involved in both the Arctic Glacier and the Reddy Ice bankruptcy proceedings in Delaware, Canada and Texas.  Carson Fischer's lodestar for the work they performed is $79,060.00 (145.6 hours), of which they have already been paid $61,231.75.  Carson Fischer's expenses total $854.14.  (ECF No. 475, Ex. A, Oct. 24, 2012 Declaration of Joseph M. Fischer.)  Saul Ewing was involved in both the Arctic Glacier and the Reddy Ice bankruptcy proceedings in Wilmington, Winnipeg and Dallas.  Saul Ewing's lodestar for work performed is $49,331.50 (79.4 hours), of which $27,259.50 has already been paid.  Saul Ewing incurred no expenses.  (ECF No. 475, Ex. B, Oct. 24, 2012 Declaration of Mark Minuti.)  Munsch, Hardt was involved in the Reddy Ice bankruptcy and was the principal counsel representing the Direct Purchaser Class in those Texas proceedings.  Munsch, Hardt's lodestar is $171,176.00 (396 hours) and their expenses are $2,971.94.  They have been fully paid.  (ECF No. 475, Ex. C, Oct. 29, 2012 Declaration of Raymond J. Urbanik.)  Dickinson Wright (Toronto) was principal counsel for the Direct Purchaser Class in the Canadian Arctic Glacier bankruptcy proceedings.  Dickinson Wright's lodestar is CAD 251,546.75 (475.90 hours),with expenses of CAD 9,768.41 and taxes of CAD 33,970.97, with expenses of CAD 9,768.41.

15

are set forth in detail in the attachment to Joseph Kohn's Declaration and include travel, telephone,

printing, postage, federal express, westlaw, IT services and outstanding invoices from three law

firms who assisted in the bankruptcy proceedings but do not work on a contingency basis. The

majority of the payment for fees to these bankruptcy firms was disbursed from the $750,000

litigation expense fund approved by the Court in connection with the Home City settlement. *See*

*supra* discussion at note 3. According to Interim Class Counsel, the request for $100,000

reimbursement of litigation expenses does not fully cover all of the expenses actually incurred in

connection with achieving the two bankruptcy settlements. The Court concludes that these expenses

are fair and reasonable and approves the request for reimbursement of $100,000 for payment of the

expenses itemized in the September 19, 2012 Declaration of Joseph Kohn. (ECF No. 468, Mot. for

Fees and Expenses, Ex. A ¶ 5.)

### F.   Request for Incentive Payments for Certain Class Representatives

---

Dickinson Wright negotiated an agreement to be paid CAD 100,000 from Arctic Glacier's assets leaving a balance due of CAD 195,286.13. (ECF No. 475, Ex. D, Oct. 24, 2012 Declaration of Michael A. Weinczok.)

   Interim Lead counsel submits that the payments made to these bankruptcy law firms are properly viewed as expenses (and thus correctly treated as disbursements from the $750,00 litigation expense fund approved by the Court in connection with the Home City settlement) incurred on behalf of the Class, rather than as attorneys' fees, because the firms were hired by Interim Lead Counsel on an hourly basis and their fees were in no way contingent on the result obtained in the case. If there had been no recovery from either Arctic Glacier or Reddy Ice, Class Counsel would still have been obligated to pay these firms for their services. To date, Kohn Swift has requested disbursements totaling $748,839.84, $390,960.19 of which represents Interim Lead Counsel's Fifth request for disbursement from the fund and largely consists of attorneys fees owing to the four bankruptcy firms who assisted in the Arctic Glacier and Reddy Ice bankruptcies. (ECF No. 475, Ex. E, Nov. 2, 2012 Declaration of Joseph Kohn.) The Court agrees and has no objection to these requested disbursements, which, even if treated as attorneys' fees, would still place the total fee award in this case around 28% of the total $26.75 million in settlements with the three Defendants, well within the 30% cap placed on fees in the notices to the Class and within the range of reasonable fees approved by courts in cases of this kind.

In *In re Cardizem*, *supra*, the court considered and awarded incentive payments to class representatives that the court found were "well deserved" given the class representatives devotion of time and effort in producing documents and attending depositions, all to the general benefit of the class. 218 F.R.D. at 535. The court in *In re Cardizem* found that the total of the incentive awards amounted to a small fraction of the total settlement fund, less than .002%. So too here. The request is for a total of $50,000 in incentive awards - $5,000 to eight of the class representatives who provided information to counsel concerning the industry along with purchase records and other documents, and $10,000 to Thomas Beverages, who took on the added responsibility of serving on the Reddy Ice Unsecured Creditors Committee - equates to less than .002% of the total $26.75 million in total settlement funds. Importantly, the Notice to the Class advised that Class Counsel would seek incentive awards in these amounts and no Class Members objected. This request seems reasonable and the Sixth Circuit has implied that incentive awards may be appropriate in common fund cases. *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003) (denying incentive awards in a non-common fund case but recognizing that "there may be circumstances where incentive awards are appropriate" and citing several common fund cases).

## IV.    CONCLUSION

Like the Home City and Arctic Glacier settlements that precede it, the Direct Purchaser Plaintiffs' Settlement Agreement with Reddy Ice is fair, reasonable and adequate and the proposed Settlement Class meets the requirements for certification under Fed. R. Civ. P. 23. Accordingly, the Court GRANTS the Direct Purchaser Plaintiffs' Motion for Final Approval of Proposed Settlement Agreement with Reddy Ice. (ECF No. 467.)

The Court also GRANTS the motion for an award of attorneys' fees in the amount of

$225,000, expenses in the amount of $100,000 and incentive awards to the Class Representatives totaling $50,000. (ECF No. 468.)

**IT IS SO ORDERED**.

**Rule 54(b) Final Judgment Order Re: Reddy Ice Holdings, Inc. and Reddy Ice Corporation**

The Court, having considered Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendants Reddy Ice Holdings, Inc. and Reddy Ice Corporation (collectively "Reddy Ice") and having held a duly-noticed Final Fairness Hearing on October 19, 2012, and for the reasons stated more fully in the preceding Opinion and Order, IT IS ORDERED THAT:

1.      The Court has jurisdiction over the subject matter of this action.

2.      Terms used in this Final Order and Judgment that are defined in the Settlement Agreement between the Plaintiffs and the Settlement Class on the one hand and Reddy Ice on the other dated May 10, 2012, unless otherwise defined herein, have the same meanings in this Final Judgment Order as in the Settlement Agreement.

3.      The Court finds, as more thoroughly discussed in the preceding Opinion, that the Settlement Agreement was attained following an extensive investigation of the facts.  It resulted from vigorous arm's-length negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions.  The Settlement Agreement also was entered into after Reddy Ice had filed a petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Texas.

4.      The Court finds, as more thoroughly discussed in the preceding Opinion, that due and adequate notice was provided pursuant to Rule 23 of the Federal Rules of Civil Procedure to all members of the Settlement Class certified herein, notifying the Settlement Class of, *inter alia*, the

18

pendency of the above-captioned action and the proposed settlement with Reddy Ice. The Notice

provided was the best notice practicable under the circumstances and included individual notice by

first class mail to Settlement Class members who have submitted a timely claim pursuant to the

claims procedure previously approved by the Court, as well as notice published in the national

edition of *The Wall Street Journal* and on the Internet. The Notice fully complied in all respects

with the requirements of Federal Rule of Civil Procedure 23 and due process.

5.     The Court certifies the following Settlement Class (the "Settlement Class"):

> All purchasers of Packaged Ice who purchased Packaged Ice in the
> United States directly from any of the Defendants or their
> subsidiaries or affiliates (including all predecessors thereof) at any
> time during the period from January 1, 2001 to March 6, 2008.
> Excluded from the Settlement Class are governmental entities and
> Defendants, including their parents, subsidiaries, predecessors or
> successors, and Defendants' co-conspirators.

6.     The Court finds, as discussed more thoroughly in the preceding Opinion, that

certification of the Settlement Class is appropriate because:

> a.     The Settlement Class is so numerous that joinder of all
> members is impracticable, satisfying the requirement of Rule
> 23(a)(1);

> b.     There are questions of law or fact common to the Settlement
> Class, satisfying the requirement of Rule 23(a)(2);

> c.     Alvin's Enterprises, Inc. d/b/a Party King, Suzie's
> Investments, Inc. d/b/a Checker Drugs and Food, Arkansas
> Garden Center West, LLC, Arkansas Garden Center North,
> LLC, Chi-Mar Enterprises, Inc., Kingsway Enterprises,
> Polly's Food Service, Inc., Kenco, Inc. and Thomas
> Beverages Co., Inc. d/b/a Thomas Liquors ("Plaintiffs") are
> appointed Class Representatives for the Settlement Class.
> Plaintiffs' claims are typical of the claims of the Settlement
> Class, satisfying the requirement of Rule 23(a)(3);

> d.     The Plaintiffs will fairly and adequately protect the interests

19

of the Settlement Class, satisfying the requirements of Rule 23(a)(4);

e.    For purposes of settlement only, questions of law or fact common to the members of the Settlement Class predominate over questions affecting only individual members and a class action is superior to other methods available for the fair and efficient adjudication of the controversy, satisfying the requirements of Rule 23(b)(3).

7.    The Court finds, as more thoroughly discussed in the preceding Opinion, that the Settlement Agreement is fair, reasonable and adequate to the Settlement Class and the Settlement Agreement with Reddy Ice is hereby approved pursuant to Federal Rule of Civil Procedure 23(e).

8.    All claims of Plaintiffs and the Settlement Class that were asserted against Reddy Ice in the Consolidated Amended Class Action Complaint are dismissed with prejudice, and, except as provided for in the Settlement Agreement, without costs.

9.    Pursuant to the provisions of paragraph 20 of the Settlement Agreement, the Released Parties shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, damages, liabilities of any nature, including costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise in nature, that Releasors, or any one of them, ever had, now has, or hereafter can, shall or may have directly, representatively, derivatively or in any other capacity against the Released Parties or any of them, whether known or unknown, suspected or unsuspected, in law or equity, on account of or arising out of or resulting from the purchase of Packaged Ice in the United States from Reddy Ice during the Class Period or from conduct that occurred prior to the date of this Settlement Agreement concerning the sale of Packaged Ice in the United States, based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Consolidated Amended Class Action

20

Complaint filed in this Action, and which arise under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* (the "Released Claims"); provided, however, that nothing herein shall release any claims made against Arctic Glacier or any of its predecessors, successors or related companies, including any and all claims of the Settlement Class against Arctic in the CCAA proceedings in Canada or in the bankruptcy proceedings in the Bankruptcy Court for the District of Delaware, claims made by indirect purchasers of Packaged Ice as to their indirect purchases, or any product defect or similar claim between the parties relating to Packaged Ice.  Expressly excluded from this Release is Released Parties' obligation to make the Settlement Payment, the Additional Payment referenced in Paragraph 22 of the Settlement Agreement and to pay the Notice Costs referenced in Paragraph 23 of the Settlement Agreement.  Notwithstanding the foregoing, and for the avoidance of doubt, the effectiveness of the releases and discharge in the Settlement Agreement or pursuant to the Reddy Ice Bankruptcy Plan shall not affect the Plaintiffs' right, in the event that the Settlement Agreement is not approved by the District Court or if such approval is overturned on appeal, to participate in the Claims Process as defined and described in Paragraph 25 of the Settlement Agreement.  In such event, and for further avoidance of doubt, the Plaintiffs shall not participate in the Reddy Holdings General Unsecured Claim Settlement Payments (as that term is defined in the Plan).

10.     Reddy Ice shall have no obligation for attorneys' fees, costs or expenses, including but not limited to, expenses of administering and distributing the Settlement Fund, which expenses are to be paid out of the Settlement Fund subject to further Order of this Court.

11.     This Order and the Final Judgment do not settle or compromise any claims by

21

Plaintiffs or the Settlement Class against any other Defendant or person or entity other than the Released Parties and all rights against any other Defendants or other person or entity are specifically reserved. The sales of Packaged Ice to members of the Settlement Class by Reddy Ice shall remain in this action against the other Defendants as a basis for damage claims and shall be part of any joint and several liability claims against any other Defendant or other person or entity other than the Released Parties.

12.      Nothing in this Final Judgment Order or the Settlement Agreement and no aspect of the Settlement Agreement or negotiation thereof is or shall be deemed or construed to be an admission or concession of any violation of any statute or law or of any liability or wrongdoing by Reddy Ice or of the truth of any of the claims or allegations in any of the complaints in the Action or any other pleading, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, other than to enforce the terms of this Final Judgment Order, or the Settlement Agreement.

13.      The Court further finds that the escrow account described in the Settlement Agreement is a qualified settlement fund ("QSF") pursuant to the Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

14.      Without affecting the finality of this Final Order and Judgment, the Court retains jurisdiction for the purposes of, among other things, implementing and enforcing the Settlement Agreement, entering orders regarding the disbursement of the Settlement Fund and any other matters that may arise in connection with the effectuation of the Settlement Agreement.

15.      The court expressly finds, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay, and expressly directs the entry of Final Judgment as to Reddy Ice.

**IT IS SO ORDERED**.




S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 13, 2012

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 13, 2012.


S/Denise Goodine
Case Manager

23